UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BAYSIDE COMMUNITY HOSPITAL**<br>**200 Hospital Drive**<br>**Anahuac, Texas 77574**<br><br>　　　　**Plaintiff,**<br><br>v.<br><br>**MICHAEL O. LEAVITT, IN HIS**<br>**CAPACITY AS SECRETARY OF THE**<br>**DEPARTMENT OF HEALTH AND**<br>**HUMAN SERVICES,**<br>**200 Independence Avenue, S.W.**<br>**Washington, D.C. 20201**<br><br>　　　　**Defendant.** | §<br>§<br>§<br>§<br>§<br>§<br>§　　File No.  1:07-CV-01562 (EGS)<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**AMENDED COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE
AGENCY DECISION ON MEDICARE REIMBURSEMENT**

## I.　　INTRODUCTION

　　1.　　Plaintiff, Bayside Community Hospital ("Plaintiff" or "Hospital"), brings this action for an order compelling the Secretary of the Department of Health and Human Services ("Secretary" or "Defendant") to reimburse the Hospital for Medicare payments it is due in accordance with the plain language of Section 1820(c)(2)(B) of the Social Security Act, Section 9320(k) of the Omnibus Budget Reconciliation Act of 1986, and the Secretary's own regulation 42 C.F.R. § 412.113(c).  While payment to hospitals under the Medicare program is complex, the issue in this case is relatively simple.  The Hospital has been wrongfully denied Medicare Program payments for its fiscal years 2002, 2003, and 2004 based upon the Secretary's arbitrary refusal to reimburse the Hospital under a special "pass-through" payment methodology available

to critical access hospitals (such as the Plaintiff) for the costs of acquiring the services of a certified registered nurse anesthetist ("CRNA").

2.      Under the federal Medicare Program, "rural" providers are entitled to receive reimbursement for the reasonable costs of obtaining the services of a CRNA (this is referred to as CRNA "pass-through" payment, because the payment is exempt from the prospective payment system generally applicable to hospitals for Medicare purposes).  At issue in this case is whether the Hospital, which has been designated a critical access hospital ("CAH") for Medicare program purposes, is "rural" for purposes of obtaining CRNA pass-through reimbursement for its costs associated with obtaining CRNA services at its facility.

3.      After a hearing before the Centers for Medicare & Medicaid Services' ("CMS") Provider Reimbursement Review Board ("PRRB") on the written record submitted by the parties, the PRRB held in favor of the Hospital, determining that the Provider is a rural hospital for purposes of obtaining CRNA pass-through reimbursement under regulation 42 C.F.R. § 412.113(c), and that the Intermediary's denial of pass-through reimbursement to the Provider was improper, and "would frustrate the intent of Congress, as well as that expressed by [the Centers for Medicare & Medicaid Services] in its own regulations."  However, the Secretary reversed the PRRB's decision, justifying his decision with post-hoc rationalizations that conflict with the plain language of the applicable statutes, as well as clearly expressed Congressional and regulatory intent.  For these reasons, the Secretary's reversal of the PRRB's decision was arbitrary, capricious, and an abuse of his discretion.

4.      The arbitrary decision of the Secretary has forced the Hospital to expend additional resources, which would better be utilized for providing health care, to obtain an order

from this Court directing the Secretary to follow the plain language of the statutes and his own regulation in place during the relevant time period.

## II.    PARTIES

5.    The Plaintiff, Bayside Community Hospital (Medicare Provider Number 45-0164), is a small, 14-bed critical access hospital ("CAH") located in Anahuac, Texas. The Provider is located in a rural census tract of the Houston, Texas Metropolitan Statistical Area. Due to its location in a rural census tract of a metropolitan statistical area, the Hospital was "redesignated as rural" pursuant to Sections 1820(c)(2)(B) and 1886(d)(8)(E) of the Social Security Act, and designated a "critical access hospital" by the Medicare program.

6.    At all times relevant herein, the Plaintiff operated a "critical access hospital" as defined in 42 U.S.C. § 1395x(mm)(1) and was a "provider of services" participating in the Medicare Program within the meaning of 42 U.S.C. § 1395x(u) and 42 C.F.R. § 489.2(b)(7).

7.    The Defendant, Michael O. Leavitt, Secretary of the Department of Health and Human Services ("Secretary" or "Defendant"), or his predecessors in office, is the federal officer responsible for the administration of the Medicare Program pursuant to the Social Security Act. The Secretary has delegated administration of the Medicare Program to the Centers for Medicare & Medicaid Services.

## III.    JURISDICTION AND VENUE

8.    This is a civil action brought to obtain judicial review of a final decision rendered by the Administrator of CMS. The Plaintiff Hospital is seeking reversal of the CMS Administrator's July 6, 2007 decision, which reversed the PRRB's finding that the Hospital was entitled to CRNA pass-through reimbursement.

9.     This action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. § 1395 et seq.), which establishes the Medicare program (the "Medicare Program"), and the Administrative Procedure Act, 5 U.S.C. §§ 551-559, 701-706 (the "APA").

10.    This Court has jurisdiction to review a decision rendered by the Administrator of CMS, acting as delegate of the Secretary, pursuant to 42 U.S.C. §1395oo(f). The same statute also provides for venue in this Court. This Court has authority to grant the relief requested under 42 U.S.C. § 1395oo(f) and the APA.

### IV.   STATUTORY AND REGULATORY BACKGROUND RELATING TO THE MEDICARE REIMBURSEMENT AND APPEAL PROCESS

11.    Title XVIII of the Social Security Act (the "Act") establishes the Medicare Program, which provides hospital and medical insurance coverage to most persons over 65 years of age and to certain disabled persons. Under the Act, an eligible Medicare beneficiary is entitled to have payment made by the Medicare Program on his or her behalf for, inter alia, inpatient and outpatient hospital services provided to the beneficiary by a hospital participating in the Medicare Program as a provider of services.

12.    The agency responsible for administering the Medicare Program is the Centers for Medicare & Medicaid Services (hereafter, "CMS"). CMS has delegated its administrative duties to a number of regional agents called "fiscal intermediaries." Fiscal intermediaries act as the middleman between CMS and providers and are responsible for certain duties such as auditing providers' annual Medicare cost reports, issuing Notices of Program Reimbursement to providers, and making other decisions as to the amount of payment that a provider will receive from the Medicare Program.

13.    Under the Medicare regulatory scheme, providers are permitted to appeal fiscal intermediaries' final determinations to the PRRB pursuant to 42 U.S.C. § 1395oo(a) and 42

4

C.F.R. § 405.1835. The Administrator of CMS may reverse, affirm, or modify the decision issued by the PRRB. 42 U.S.C. § 1395oo(f).

14.     A hospital has the right to obtain judicial review of any final decision of the PRRB, or any reversal, affirmance, or modification of the PRRB's decision by the Secretary. <u>Id.</u>

### V.     CRITICAL ACCESS HOSPITALS

15.     In 1997, Congress created the Medicare Rural Hospital Flexibility Program, which expanded the existing Essential Access Community Hospital Program. Both of these programs were established by Congress to address health care access issues in rural areas. Special payment provisions exist for the various types of rural hospitals due to Congressional concerns that these hospitals would suffer under the prospective payment system generally applicable to providers under the Medicare Program. Under the Medicare Rural Hospital Flexibility Program, states were permitted to designate certain types of facilities as "critical access hospitals" ("CAHs"). To be eligible for CAH status, a facility had to be a rural public or non-profit hospital located more than 35 miles from any other hospital or CAH. 42 U.S.C. § 1395i-4(c)(2)(B).

16.     With respect to the requirement that a hospital be "rural" in order to gain CAH designation, the Social Security Act ("Act") requires that the hospital be located in a rural area (as defined in section 1886(d)(2)(D)) or be "treated as being located in a rural area pursuant to section 1886(d)(8)(E)" of the Act. <u>Id</u>. at § 1395i-4(c)(2)(B)(i). This latter mechanism is referred to as the "rural reclassification" provision.

17.     The rural reclassification provision located at Section 1886(d)(8)(E) of the Act requires the Secretary to treat a hospital that is "located in a rural census tract of a metropolitan statistical area" as though it is located in the rural area (as defined in paragraph (2)(D)) of the state in which the hospital is located." 42 U.S.C. § 1395ww(d)(8)(E). In other words, a hospital

5

that is redesignated as rural pursuant to Section 1886(d)(8)(E) is considered to be "rural" under Section 1886(d)(2)(D).  Section 1886(d)(2)(D), in turn, simply defines a "rural area" as "any area outside [an urban area or large urban area] or similar area."  42 U.S.C. § 1395ww(d)(2)(D).

18.    The legislative history of the law that created the "rural reclassification" provision for CAHs indicated that "[h]ospitals qualifying under this section shall be eligible to qualify for <u>all</u> categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers."  House & Senate Conference Agreement on Medicare, Medicaid, and SCHIP Provisions, Pub. L. No. 106-113 Sec. 401 (Nov. 29, 1999) (emphasis added).

19.    There is no dispute in this case regarding the fact that the Hospital is a critical access hospital, nor is there any dispute that the Hospital was "redesignated as rural" pursuant to Section 1886(d)(8)(E) of the Act due to its location in a rural census tract of a metropolitan statistical area.  The sole issue is whether the Hospital is entitled to receive the pass-through reimbursement for CRNA services that is available to "rural" hospitals.

## VI.    CRNA PASS-THROUGH REIMBURSEMENT FOR RURAL HOSPITALS

20.    This case involves the "CRNA pass-through payment," which is a special reimbursement mechanism available to rural providers.  42 C.F.R. § 412.113(c).  Pass-through payment refers to the fact that a rural provider is entitled to reimbursement for the reasonable costs of obtaining the services of a certified registered nurse anesthetist ("CRNA"), rather than receiving reimbursement for such services through a fee schedule payment generally applicable for such services under Medicare.

21.    From the inception of the Medicare Program until 1983, hospitals were entitled to reimbursement for services furnished to Medicare beneficiaries based upon the "reasonable costs" they actually incurred.  42 U.S.C. §§ 1395f(b)(1), 1395x(v).  In 1983, in an effort to create

6

incentives for more efficient delivery of hospital care, Congress amended the Act to provide for the payment of operating costs of inpatient hospital services on a prospective basis, rather than on the basis of reasonable costs. Title VI of the Social Security Act Amendments of 1983 (Pub. L. 98-21), codified at 42 U.S.C. § 1395ww. Under the prospective payment system ("PPS") adopted by Medicare in 1983, hospital and other health care providers are reimbursed their inpatient operating costs on the basis of prospectively determined national and regional rates for each patient discharge rather than on reasonable operating costs for providing the services.

22. Under PPS, payments are made to hospitals via lump sum amounts assigned based upon a patient's diagnosis and discharge. See Social Security Amendments of 1983, Pub. L. No. 98-21 § 601(e); 42 U.S.C. § 1395ww(d). These lump sum prospective payments are set to approximate the average cost of caring for a patient with a particular diagnosis in an efficiently-run hospital. Thus, hospitals caring for Medicare patients receive a standard reimbursement amount for that patient (subject to certain geographic and other adjustments), regardless of the actual costs of caring for that patient. See 42 U.S.C. § 1395ww(d); 42 C.F.R. Part 412.

23. However, Congress has created certain exceptions to the prospective payment system, including that which is at issue in this case: the exception that allows rural hospital to obtain reasonable cost (or "pass-through") reimbursement for the cost of obtaining CRNA services. This was accomplished through the Family Support Act of 1988, which added a new subsection (k) to section 9320 of the Omnibus Budget Reconciliation Act of 1986, which originally authorized the continuation of pass-through payment status for CRNA services to hospitals "located in a rural area (as defined for purposes of section 1886(d) of the Social Security Act)." Pub. L. No. 100-485 (Oct. 13, 1988).

24. Although the law continuing the availability of pass-through payment to rural hospitals (the Family Support Act of 1988) stated that pass-through payments are available to "hospitals" located in rural areas, CMS later specified that although CAHs are not technically "hospitals" under the Act's statutory definitions, it "consider[ed] CAHs to be 'hospitals' for purposes of extending eligibility for CRNA pass through payments to them."  66 Fed. Reg. 39,922 (Aug. 1, 2001).

25. CMS created regulation 42 C.F.R. § 412.113(c) to implement the CRNA pass-through payment. The regulation permits a hospital to receive pass-through payment for CRNA services if "the hospital or CAH is located in a rural area as defined in Sec. 412.62(f) and is not deemed to be located in an urban area under the provisions of Sec. 412.64(b)(3)."  42 C.F.R. § 412.113(c)(2)(i)(A). Section 412.62 of the C.F.R., in turn, defines "rural area" as "any area outside an urban area."  42 C.F.R. § 412.62(f). The Secretary's application of this regulation is at the heart of the dispute in this case.

## VII. FACTS SPECIFIC TO THIS CASE

26. The Plaintiff Hospital operates a 14-bed acute care facility in Anahuac, Texas, in Chambers County, Texas. On March 1, 2001, the Hospital was designated a "critical access hospital" by the Medicare program. The Hospital's fiscal year runs from October 1 to September 30. The Hospital's fiscal years ending ("FYE") September 30, 2002, 2003, and 2004 are at issue in this case.

27. The Hospital was eligible for CAH status by virtue of the statutory rural reclassification provision mandating that providers located in rural census tracts of metropolitan statistical areas be treated as being located in a rural area, as defined by Section 1886(d)(2)(D) of the Act.  *See* 42 U.S.C. §§ 1395i-4(c)(2)(B)(i), 1395ww(d)(8)(E).

28.     In spite of its CAH status and CMS's instruction that CRNA pass-through payments are available to CAHs under the regulations, the Hospital's fiscal intermediary refused to grant CRNA pass-through reimbursement to the Hospital, based on its contention that the Hospital is not "located in a rural area as defined in Sec. 412.62(f)." In other words, the fiscal intermediary contended that while CAHs actually physically located in rural areas are entitled to CRNA pass-through reimbursement, CAHs that have been "redesignated as rural" are not, in spite of Congress's explicit statement that such "redesignated as rural" providers are entitled to <u>all</u> classifications and designations available to rural hospitals. The Hospital timely appealed this denial to the Secretary's Provider Reimbursement Review Board ("PRRB"), pursuant to 42 C.F.R. § 405.1835 et seq. The PRRB held a hearing on this issue on March 8, 2006.

29.     The Secretary's Provider Reimbursement Review Board ("PRRB") reversed the fiscal intermediary's denial, holding that the Hospital must be reimbursed for CRNA services pursuant to the pass-through payment methodology set forth at 42 C.F.R. § 412.113(c). <u>See</u> Provider Reimbursement Review Board Decision 2007-D33, Bayside Community Hopsital (Anahuac, TX) vs. Blue Cross Blue Shield Association/Trailblazer Health Enterprises, LLC (May 10, 2007) ("PRRB Dec."). The PRRB found that the term "rural" has the same meaning in the CRNA statute as it does in Section 1886(d) of the Act—the same statutory definition utilized for purposes of the CAH statute. <u>Id.</u> The PRRB also stated that "CMS' rationale for the denial of the pass-through payments to CAHs would frustrate the intent of Congress as well as that expressed by CMS in its own regulations." <u>Id.</u>

30.     The CMS Administrator overturned the PRRB's decision, on the basis that the Hospital is "not physically located in a rural area as defined in the regulations at 42 C.F.R. 412.62(f)." <u>See</u> Decision of the Administrator, Bayside Community Hospital vs. Blue Cross

Blue Shield Association/Trailblazer Health Enterprises, LLC (July 6, 2007) ("Admin. Dec."). In making this determination, the Administrator ignored both the plain language of the laws governing both CAHs and CRNA pass-through payments, and the intent of both Congress and CMS in implementing the CRNA pass-through payment scheme. Essentially, the Secretary's interpretation of the regulations results in treatment of the Hospital as rural for CAH purposes, but not for CRNA pass-through purposes, in spite of the fact that both purposes utilize the same definition of "rural" contained at Section 1886(d) of the Act. The Secretary's arbitrary refusal to apply certain Congressional mandates to the Hospital is contrary to the Administrative Procedure Act.

31. In September of 2007, the Hospital learned that there is a critical access hospital in California that is located in a rural census tract of a metropolitan statistical area that requested, and was granted, CRNA pass-through reimbursement. See Appendix A to the Plaintiff's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment. Like the Hospital, the California hospital was "redesignated as rural" pursuant to Section 1886(d)(8)(E) of the Social Security Act. On October 17, 2007, the Hospital brought it to the attention of the Secretary, in hopes that the Secretary would realize that he has not applied his policy consistently, and that further litigation might be avoided. In spite of his knowledge of the dissimilar treatment of the California hospital, the Secretary has refused to change his position with respect to the Hospital in this case, stating that his policy would not change.

31. Having exhausted its administrative remedies, the Hospital now comes before this Court seeking relief. The Hospital brings the present action accordance with its rights under Section 1878(f) of the Social Security Act and 42 C.F.R. § 405.1877, which provide for appeals

of final administrative decisions of the Secretary of Health and Human Services. 42 U.S.C. § 1395oo(f).

## VIII. VIOLATIONS OF LAW AND BASES FOR REVERSAL OF THE ADMINISTRATOR'S DECISION

32. The Hospital asserts that the CMS Administrator's decision is in error and has wrongly denied the Hospital Medicare reimbursement to which it is entitled.

33. CMS, the Secretary's delegate to operate the Medicare Program, has failed to properly apply the plain language of the statutes governing CAHs and CRNA pass-through reimbursement: 42 U.S.C. §§ 13959i-4, 1395ww(d)(2)(D), 1395ww(d)(8)(E), and Section 9320(k) of the Omnibus Budget Reconciliation Act of 1986. CMS' decision to deny the Hospital CRNA pass-through reimbursement is contrary to both the laws governing CAHs and the CRNA pass-through payment scheme, as well as Congressional intent with respect to the application of CRNA pass-through reimbursement to rural providers. This Court may set aside agency action that is arbitrary, capricious, an abuse of discretion, or not in accordance with law, pursuant to 5 U.S.C. § 706(2).

34. The Secretary's reliance upon a vague regulatory definition of "rural" in an attempt to circumvent the clear mandate of various laws and statutes violates the basic administrative law principle that the Secretary cannot interpret and apply a regulation in a manner that is inconsistent with plain statutory language or Congressional intent. By doing so, the Secretary has violated the Administrative Procedures Act, and his actions must be set aside pursuant to 5 U.S.C. § 706(2).

35. The Secretary's differential treatment of the Hospital in this case and the similarly situated hospital in California with respect to eligibility for CRNA pass-through reimbursement

constitutes a violation of the Hospital's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

      **WHEREFORE**, the Plaintiff respectfully requests:

      a.    That this Court vacate the Secretary's action on the basis that it is:

          (i)    arbitrary, capricious, an abuse of discretion, and not in accordance with the law; and

          (ii)    unsupported by substantial evidence in the record; and

          (iii)    a violation of the Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

      b.    That this Court hold in accordance with the PRRB's decision in this case and remand this case to the Secretary with an order compelling a determination that the Hospital is "rural" and therefore entitled to receive CRNA pass-through reimbursement;

      c.    That this Court order the Secretary to pay Plaintiff Hospital interest on the payment resulting from the Court's order in accordance with 42 U.S.C. § 1395oo(f)(2); and

      d.    That this Court grant to Plaintiff such other relief in law and/or equity as the Court may deem just and proper.

Respectfully submitted,

By _____/s/_____
Frederick W. Chockley, III
D.C. Bar No. 366800
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036
Telephone: 202.861.1680
Fax: 202.861.1783
fchockley@bakerlaw.com

Gregory N. Etzel
D.C. Bar No: TX0039
Texas Bar No. 00793705
BAKER & HOSTETLER LLP
1000 Louisiana, Suite 2000
Houston, Texas 77002
Telephone: 713.646.1316
Fax: 713.751.1717
getzel@bakerlaw.com

ATTORNEYS FOR PLAINTIFF

102062151.2