## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BAYSIDE COMMUNITY HOSPITAL** | § | |
| **200 Hospital Drive** | § | |
| **Anahuac, Texas 77574** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **File No.  1:07-CV-01562 (EGS)** |
| | § | |
| **MICHAEL O. LEAVITT, IN HIS** | § | |
| **CAPACITY AS SECRETARY OF THE** | § | |
| **DEPARTMENT OF HEALTH AND** | § | |
| **HUMAN SERVICES,** | § | |
| **200 Independence Avenue, S.W.** | § | |
| **Washington, D.C. 20201** | § | |
| | § | |
| **Defendant.** | § | |

## <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Fed. R. Civ. P. 56(b) and Rules 7(h) and 56.1 of this Court, the Plaintiff in the above-captioned action respectfully moves the Court for an order granting summary judgment in its favor on the grounds that there are no material facts in dispute and Plaintiff is entitled to judgment as a matter of law.  The basis for granting summary judgment in this matter, as well as the legal and factual grounds supporting the Plaintiff's Motion, are set forth in the Plaintiff's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment, which is being filed in connection with Plaintiff's Motion.

DATED this 5th day of May, 2008.

Respectfully submitted,


By: _____/s/_____
    Ambika J. Biggs
    D.C. Bar No. 501225
    BAKER & HOSTETLER LLP
    1050 Connecticut Avenue, N.W., Suite 1100
    Washington, D.C. 20036
    (202) 861-1619
    (202) 861-1783 Fax
    abiggs@bakerlaw.com

    Gregory N. Etzel
    D.C. Bar No: TX0039
    Texas Bar No. 00793705
    BAKER & HOSTETLER LLP
    1000 Louisiana, Suite 2000
    Houston, Texas 77002
    Telephone: 713.646.1316
    Fax: 713.751.1717
    getzel@bakerlaw.com

    Frederick W. Chockley, III
    D.C. Bar No. 366800
    BAKER & HOSTETLER LLP
    1050 Connecticut Avenue, N.W., Suite 1100
    Washington, D.C. 20036
    (202) 861-1680
    (202) 861-1783 Fax
    fchockley@bakerlaw.com


    ATTORNEYS FOR PLAINTIFF

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BAYSIDE COMMUNITY HOSPITAL** | § | |
| **200 Hospital Drive** | § | |
| **Anahuac, Texas 77574** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **File No.  1:07-CV-01562 (EGS)** |
| | § | |
| **MICHAEL O. LEAVITT, IN HIS** | § | |
| **CAPACITY AS SECRETARY OF THE** | § | |
| **DEPARTMENT OF HEALTH AND** | § | |
| **HUMAN SERVICES,** | § | |
| **200 Independence Avenue, S.W.** | § | |
| **Washington, D.C. 20201** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

*Page*

I.    INTRODUCTION ................................................................................................1

II.   Legal and Historical Background ......................................................................3

    A.    Historical Payment for Hospitals and CRNAs Under the Medicare
        Program....................................................................................................4

        1.    Transition from the Reasonable Cost Reimbursement System to the
                Prospective Payment System ........................................................4

        2.    The Continuation of CRNA Reasonable Cost Reimbursement
                After PPS ....................................................................................5

    B.    The Medicare Rural Hospital Flexibility Program and the Establishment of
        "Critical Access Hospitals"......................................................................7

        1.    The Balanced Budget Act of 1997 .............................................8

        2.    The Balanced Budget Refinement Act and the Expansion of the
                Definition of "Rural Area" for CAHs ........................................9

    C.    Application of CRNA Pass-Through Payments to CAHs .....................11

    D.    The Medicare Payment Appeals Process and the PRRB ......................12

III.  Statement of the Case......................................................................................13

    A.    The Hospital Was Designated a Critical Access Hospital By the Secretary .........13

    B.    The Hospital Requested CRNA Pass-Through Reimbursement But Its
        Intermediary Denied the Hospital's Request .......................................13

    C.    The PRRB Held That the Hospital Is Eligible for CRNA Pass-Through
        Reimbursement .....................................................................................14

    D.    The Secretary Reversed the Decision of the PRRB...............................14

IV.   Standard of Review.........................................................................................15

V.    Argument .........................................................................................................16

    A.    Summary of Argument ..........................................................................16

    B.    The Hospital is "Rural" Under the Plain Language of the Statute ........18

        1.    Chevron Review Under the APA...............................................18

        2.    A Hospital "Deemed Rural" is "Rural" By Unambiguous Statutory
                Definition ..................................................................................19

        3.    The Legislative History Instructs That a Hospital "Deemed Rural"
                is "Rural" For All Purposes ......................................................22

    C.    The Secretary's Attempt to Rely on the Definition of "Rural" in His
        Regulation at 42 C.F.R. 412.62(f) is Not Entitled to Deference............25

    D.    The Secretary's Regulations are Invalid to the Extent That They Are
        Contrary to the Statute and Congressional Intent .................................28

    E.    The Secretary's Argument That the CRNA Pass-Through Law is Outside
        the Scope of PPS is Inapposite..............................................................30

    F.    The Secretary's Actions are Arbitrary and Capricious .........................31

        1.    The Secretary's Interpretation Treats Rural Hospitals Differently............31

        2.    The Secretary's Interpretation Treats "Deemed Rural" Hospitals as
                "Rural" For Some Purposes, But Not For Others .....................31

        3.    The Secretary Has Treated Similarly Situated Hospitals Differently........32

    G.    The Secretary's Action Violates the Equal Protection Clause...............33

VI.   Conclusion ......................................................................................................34

## I.    INTRODUCTION

This is an action for judicial review of agency action taken by the Defendant Secretary of Health and Human Services ("Secretary"), specifically, his arbitrary refusal to follow the plain language of the statutes governing a Medicare payment to rural hospitals for their costs of obtaining anesthesia services provided by certified registered nurse anesthetists ("CRNAs"). The Plaintiff, Bayside Community Hospital ("Hospital" or "Plaintiff"), is a small, 14-bed hospital in Anahuac, Texas and is a specially designated "critical access hospital" under the Medicare Program serving remote areas of the Southeast Texas coastal area. As its "critical access" designation implies, the Hospital provides necessary hospital services to Medicare beneficiaries (and other patients) in remote areas who would not otherwise have access to hospital services. At issue in this case is whether the Hospital is entitled to receive special "reasonable cost" reimbursement for the costs of CRNA services that Congress made available to hospitals located in rural areas. And while this issue arises from the otherwise complex Medicare program, it may be resolved by a straightforward application of clear statutory language and basic logic.

Indeed, the Court's decision in this case may be reduced to a simple syllogism:

1)  The Secretary has determined that the Hospital meets the definition of "rural" set forth in section 1886(d) of the Social Security Act (the "Act")[1] for purposes being designated as a "critical access hospital."

2)  The law governing the special "reasonable cost" reimbursement for CRNA services applies to hospitals meeting the definition of "rural" set forth in section 1886(d) of the Act.

---

[1]    Section 1886(d) of the Act is codified at 42 U.S.C. § 1395ww(d). For ease of reference to publications by the Secretary and to the Administrative Record ("A.R.") below, citations to the Act shall be used to refer to the operative statutory provisions discussed in the narrative portions of this Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Memo"). Citations will be provided to the codified version where different provisions of the Act are initially referenced.

> 3) Therefore, the Hospital must be entitled to receive reasonable cost reimbursement for the services of its CRNAs because the Secretary has determined that the Hospital is rural under section 1886(d) of the Act.

The first two parts of the syllogism are undisputed in the administrative record and indisputable from the plain text of the law, respectively, and the conclusion naturally follows from them.

With respect to the first premise, to become a critical access hospital ("CAH"), a hospital must meet the definition of "rural" set forth at section 1886(d) of the Act. 42 U.S.C. § 1395i-4(c)(2)(B) (the "CAH statute"). Section 1886(d) of the Act contains a provision added by Congress in 1999 (section 1886(d)(8)(E)) that deems certain remotely situated "urban" hospitals (such as the Hospital in this case) to meet the definition of rural contained in section 1886(d). Thus, all CAHs are "rural" by statutory definition.[2] The Secretary, applying the plain language of the CAH statute, determined that the Hospital was deemed "rural" and designated it as a CAH in the Medicare program. A.R. at 94, 150.

As for the second premise, in 1988, a law was passed specifying that hospitals located in rural areas, "as defined for purposes of section 1886(d) of the Act," would be permitted to receive reasonable cost reimbursement for the cost of obtaining the services of CRNAs for their facility. See Family Support Act of 1988, Pub. L. No. 100-485, § 608(c), 102 Stat. 2343, 2412 (hereinafter the "CRNA pass-through law"), A.R. at 125-27. Thus, rural hospitals are eligible for the special CRNA reasonable cost reimbursement by virtue of the plain language of the law.

Based on these premises, logic dictates the conclusion that, if the Hospital is by definition a rural provider, and if rural providers are eligible for CRNA reasonable cost reimbursement, then the Hospital must be eligible for CRNA reasonable cost reimbursement. Indeed, this was

---

[2] This was admitted by the Secretary's representative in the administrative hearing before the Provider Reimbursement Review Board below: "…if you were going to say is there such a thing as an urban critical access hospital, the answer is no." A.R. at 39.

the unanimous finding of the Secretary's own Provider Reimbursement Review Board ("PRRB"), which held that the Hospital was a "rural" hospital eligible for special CRNA reasonable cost reimbursement.  A.R. at 20-25.  It is a simple and clear legal analysis.

Yet despite its simplicity, the Secretary disputes the conclusion without denying the premises.  He stands by his decision below, which would treat the Hospital as rural for CAH designation purposes and urban for purposes of payment for CRNA services despite utilizing the same statutory definition for making both determinations.  Using this fundamentally flawed logic, the Secretary's Administrator of the Center for Medicare and Medicaid Service ("CMS Administrator") reversed the PRRB's decision, and held that while the Hospital was indeed "rural" for purposes of obtaining CAH status, it was not "rural" for purposes of CRNA reasonable cost reimbursement.  A.R. at 2-9.  The Secretary based his reversal of the PRRB upon his narrow interpretation of several of his own regulations, while ignoring the plain language of the statutes (and Congressional history surrounding those statutes) upon which those regulations are based.

Faced with significant reductions in reimbursement (and thereby reduced access to services of CRNAs), the Hospital has been forced, at great expense, to seek this Court's reversal of the Secretary's arbitrary and capricious decision to overturn his PRRB.  The Hospital is confident that the Court will follow the plain language of the applicable statutes at issue and the Congressional intent behind them, and in so doing order the Secretary to reimburse the Hospital for the reasonable costs of obtaining the services of its CRNAs.

## II.     LEGAL AND HISTORICAL BACKGROUND

While this case, at its heart, is quite simple and involves only a narrow aspect of hospital reimbursement under the Medicare program, there is significant historical background that is important to understanding and properly analyzing the specific issue before the Court (i.e.

3

whether the Hospital is entitled to receive reasonable cost reimbursement for the services of its CRNAs). The Hospital therefore offers the following historical and legal context in order to assist the Court in its consideration of the issue presented.

### A. HISTORICAL PAYMENT FOR HOSPITALS AND CRNAs UNDER THE MEDICARE PROGRAM

#### 1. Transition from the Reasonable Cost Reimbursement System to the Prospective Payment System

Title XVIII of the Social Security Act established the Medicare program, which provides hospital and medical insurance coverage to most persons over 65 years of age and to certain disabled persons. 42 U.S.C. § 1395 et seq. The Secretary has delegated his authority to administer the Medicare program to the Centers for Medicare & Medicaid Services ("CMS"), formerly the Health Care Financing Administration ("HCFA"). The Medicare program covers hospital services furnished by a participating "provider of services." CMS contracts with "fiscal intermediaries" or "intermediaries" (typically an insurance company) to administer the payment functions of the Medicare program. 42 U.S.C. § 1395h.

Originally, the Medicare program reimbursed hospitals the lesser of "reasonable cost" or "customary charges." 42 U.S.C. § 1395f(b)(1). Under this "reasonable cost" payment scheme, each participating hospital was essentially reimbursed for the actual costs that it incurred in providing services to Medicare beneficiaries. Services of CRNAs employed by hospitals were considered part of the actual operating costs reimbursed to the hospital under the reasonable cost scheme, and CRNAs were not allowed to independently bill for their services. See 57 Fed. Reg. 33,878, 33,879 (July 31, 1992).

In 1983, to address rising health care costs, Congress enacted a prospective payment system for the operating costs of inpatient hospital services. Social Security Act Amendments of 1983, Title VI, 42 U.S.C. § 1395ww. Under the prospective payment system, or "PPS,"

hospitals are paid standardized rates for each patient discharge that are categorized into hundreds of diagnosis related groups ("DRGs") based on the patient's condition.  See, e.g., 42 C.F.R. § 412.2(a).  In other words, depending on a patient's diagnosis, under the PPS, a hospital receives a pre-determined fixed payment amount for the services provided to that patient during his/her stay regardless of the actual operating costs associated with that patient.

In implementing the PPS, Congress recognized that hospitals in different areas of the county may not have identical cost structures and therefore required the Secretary to take into account in its standardized PPS payment amounts averages for each region, and for all hospitals located in urban or rural areas within each region.  See 42 U.S.C. §1395ww(d)(2)(D).  In connection with this requirement, Congress adopted specific statutory definitions of the terms "region," "urban," and "rural":

> For purposes of this subsection, the term "region" means one of the nine census divisions, comprising the fifty States and the District of Columbia, established by the Bureau of the Census for statistical and reporting purposes; the term "urban area" means an area within a Metropolitan Statistical Area (as defined by the Office of Management and Budget) or within such similar area as the Secretary has recognized under subsection (a) by regulation; the term "large urban area" means, with respect to a fiscal year, such an urban area which the Secretary determines (in the publications described in subsection (e)(5) before the fiscal year) has a population of more than 1,000,000 (as determined by the Secretary based on the most recent available population data published by the Bureau of the Census); and the term "rural area" means any area outside such an area or similar area…

42 C.F.R. § 1395ww(d)(2)(D)(ii) (emphasis added).

## 2.    The Continuation of CRNA Reasonable Cost Reimbursement After PPS

After the implementation of PPS in 1983, payments for the services of CRNAs employed by hospitals were temporarily excluded from the definition of operating costs under PPS, and thereby reimbursed to hospitals under a reasonable cost methodology.  See H.R. Conf. Rep. No. 99-1012, at 321 (1986).  The costs of CRNA services were excluded and allowed to "pass

5

through" the PPS reimbursement scheme because CRNAs were not permitted at that time to submit bills directly to the Medicare program and thus there was no alternative way for such services to be reimbursed.[3]  See 57 Fed. Reg. at 33,879.  After a series of legislative enactments, a fee schedule was developed for the direct reimbursement of CRNAs and the reasonable cost "pass-through" payment for CRNAs was eliminated, with one exception that applied to hospitals located in rural areas.  See 42 U.S.C. § 1395l(I).

The Family Support Act of 1988 added a new subsection (k) to section 9320 of the Omnibus Budget Reconciliation Act of 1986,[4] which new subsection enacted a continuation of pass-through reimbursement for CRNA services to hospitals "located in a rural area (as defined for purposes of section 1886(d) of the Social Security Act)."  See Family Support Act of 1988, Pub. L. No. 100-485, § 608, 102 Stat. 2343, 2412 (1988), A.R. at 125-27.  Pass-through reimbursement for CRNA services at rural hospitals was extended indefinitely by section 6132 of the Omnibus Budget Reconciliation Act of 1989.  Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239 § 6132.  As the Secretary recognized in an official agency publication, the purpose of the pass-through legislation is to provide small rural hospitals with low surgical volumes with relief from the difficulties they might otherwise have in furnishing CRNA services for their inpatients.  66 Fed. Reg. 39,827, 39,922 (Aug. 1, 2001), A.R. at 129.  The CRNA pass-through law, by its express terms, adopted the definition of "rural" from the statute establishing the PPS, i.e., section 1886(d) of the Act.  In other words, if a hospital met the definition of rural under the PPS statute, it would necessarily meet the definition of rural under

---

[3] The reasonable cost reimbursement for CRNA services is frequently referred to as the "CRNA pass-through payment" for this reason.
[4] The Omnibus Budget Reconciliation Act of 1986 allowed for the direct payment of CRNA services on or after January 1, 1989, and eliminated the "pass-through" reimbursement for CRNA services.

the CRNA pass-through law.  Thus, the definition of "rural area" adopted by Congress for purposes of determining eligibility for CRNA pass-through reimbursement is entirely dependent upon the definition of "rural area" under the PPS.  While CRNA pass-through reimbursement itself does not arise under the PPS statute at section 1886(d), the determination of a facility's rural status does.

CMS's regulation at 42 C.F.R. § 412.113(c) implements the CRNA pass-through law.  The regulation requires that "the hospital or CAH is located in a rural area as defined in section 412.62(f) and is not deemed to be located in an urban area under the provisions of section 412.64(b)(3)."  42 C.F.R. § 412.113(c)(2)(i)(A), A.R. at 135.  CMS's regulation at 42 C.F.R. § 412.62(f), in turn, establishes the "geographic classifications" for purposes of computing urban and rural averages for standardized amounts under the PPS as required by section 1886(d) of the Act, and defines "rural area" as "any area outside an urban area."[5]

### B.    THE MEDICARE RURAL HOSPITAL FLEXIBILITY PROGRAM AND THE ESTABLISHMENT OF "CRITICAL ACCESS HOSPITALS"

Congress recognized the difficulties faced by small rural hospitals under the PPS, and has enacted specific legislation designed to provide support to these necessary hospitals in the nation's infrastructure.  The present case involves one type of rural hospital designation, the "critical access hospital" designation, which allows such facilities to be exempt from the PPS and reimbursed based on their reasonable costs.

---

[5]    The language of 42 C.F.R. § 412.62(f) implements the definition of "rural area" set forth in section 1886(d)(2)(D)(ii) of the Act (excerpted above).  As described below, however, the definition of "rural area" under section 1886(d)(2)(D) is subject to the provisions of section 1886(d)(8)(E), which requires that other hospitals not meeting the definition in section 1886(d)(2)(D) are nevertheless "deemed rural" for purposes of that section.

1.    **The Balanced Budget Act of 1997**

In the Balanced Budget Act of 1997 ("BBA 1997"), Congress amended section 1820 of the Act to establish the "Medicare Rural Hospital Flexibility Program," dramatically expanding the previously enacted Essential Access Community Hospital program ("EACH Program"), which was created to address health care access issues in rural areas.  See 58 Fed. Reg. 30,630, 30,665 (May 26, 1993); see also 62 Fed. Reg. 45,966, 45,970 (Aug. 29, 1997).  Under the provisions of these amendments to section 1820 of the Act, to be eligible to become a critical access hospital, or CAH, a facility had to be a rural public or non-profit hospital located in a state that had established a Medicare rural hospital flexibility program, and had to be located more than a 35-mile drive from any other hospital or CAH.  See 42 U.S.C. § 1395i-4(c)(2)(B).  CAHs are exempt from the Medicare prospective payment system and as of January 1, 2004, are instead reimbursed by the Medicare program for 101% of reasonable costs.  42 C.F.R. § 413.70(a).

For purposes of determining the rural status of a facility, section 1820(c)(2)(B)(i) of the Act, as adopted in the BBA 1997, utilized the definition of "rural area" contained in section 1886(d)(2)(D) of the Act.  42 U.S.C. § 1395i-4(c)(2)(B).  As discussed above, section 1886(d)(2)(D) of the Act defines the term "rural area," together with the terms "urban area" and "large urban area," for purposes of establishing certain standardized rates for facilities located in such geographic areas for payment under the Medicare PPS set forth generally in section 1886(d) of the Act.  42 U.S.C. § 1395ww(d).  Thus, under the provisions of the BBA 1997, a facility determined to be "rural" according to the PPS statute at section 1886(d) of the Act would also be considered rural for purposes of the Medicare Rural Hospital Flexibility Program, and thus eligible to qualify as a CAH.

2.     **The Balanced Budget Refinement Act and the Expansion of the Definition of "Rural Area" for CAHs**

The Balanced Budget Refinement Act of 1999 made significant changes to the law impacting CAHs, amending both section 1820 and section 1886(d) of the Act.  Medicare, Medicaid, and SCHIP Balanced Budget Refinement Act, Pub. L. No. 106-113, Title IV § 401 113 Stat. 1501A-323, 1501A-369 of the Act (the "BBRA 1999"), A.R. at 118-19.  First, section 401(a) of the BBRA 1999 amended section 1886(d)(8) of the Act by adding a new paragraph (E), which required the Secretary to treat any PPS hospital located in an urban area as being located in the rural area of the State in which the hospital is located if the hospital met the applicable statutory criteria.  See 42 U.S.C. § 1395ww(d)(8)(E).  Section 1886(d)(8)(E) of the Act states that:

> (i)  For purposes of this subsection, not later than 60 days after the receipt of an application…from a subsection (d) hospital described in clause (ii), the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located.

> (ii)  For purposes of clause (i), a subsection (d) hospital described in this clause is a subsection (d) hospital that is located in an urban area (as defined in paragraph (2)(D)) and satisfies any of the following criteria:

> > (I) The hospital is located in a rural census tract of a metropolitan statistical area…[6]

42 U.S.C. § 1395ww(d)(8)(E) (emphasis added).  The legislative history of the BBRA 1999 indicated that "[h]ospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers."  H.R. Conf. Rep. No. 106-479, at Title IV § 401

---

[6]   There are other methods for being deemed rural under the provisions of 42 U.S.C. § 1395ww(d)(8)(E), but this is the only one involved in this case.  It is undisputed that the Hospital met this requirement.  See A.R. at 150.

(1999) (emphasis added), A.R. at 121.   Moreover, as the emphasized portion of section 1886(d)(8)(E)(i) set forth above indicates, Congress left <u>no discretion</u> for the Secretary ("shall treat the hospital as being located in a rural area") provided one of the statutory criteria was met. The BBRA 1999, therefore, allowed certain urban facilities to be deemed rural such that they could qualify for certain Medicare programs available only to "rural" hospitals.

Indeed, section 401(b)(2) of the BBRA 1999 made a conforming change to the CAH criteria at section 1820(c)(2)(B)(i) of the Act.  42 U.S.C. § 1395i-4(c)(2)(B)(i), A.R. at 108, 119. The BBRA 1999 amended the Medicare Rural Hospital Flexibility Program, such that a state may designate a facility as a CAH if the facility:

> is a hospital that is located in a county (or equivalent governmental unit) in a rural area (as defined in section 1886(d)(2)(D)) <u>or is treated as being located in a rural area</u> pursuant to section 1886(d)(8)(E), and that…

<u>Id.</u>  In other words, the "rural deeming" mechanism adopted by the BBRA 1999 is incorporated directly into the statutory definition of a CAH.

The Secretary explicitly adopted this "deemed rural" requirement into his regulations governing the "conditions of participation" in the Medicare Program for CAHs.  The regulation at 42 C.F.R. § 485.610, which is entitled "Condition of Participation: Status and Location" recognizes that the Medicare participation standard, "location in a rural area or treatment as rural," is met if the CAH meets one of three requirements, among which is "CAH is located within a [MSA]…but is being treated as being located in a rural area in accordance with § 412.103 of this Chapter."  42 C.F.R. § 485.610(b).  The internally referenced regulation at 42 C.F.R. § 412.103, in turn, implemented the statutory "deeming" process for urban hospitals seeking rural status as required by section 401(a) of the BBRA 1999.  <u>See</u> 42 C.F.R. § 412.103.

Thus, although CAHs are not PPS hospitals, and are reimbursed under a reasonable cost methodology, determining whether or not such facilities are "rural" is dictated by the definition contained in the PPS statute at section 1886(d).

### C.    APPLICATION OF CRNA PASS-THROUGH PAYMENTS TO CAHs

Though CRNA pass-through reimbursement was clearly authorized for hospitals meeting the definition of "rural" in the PPS statute, the use of the term "hospital" in the authorizing regulations at 42 C.F.R. § 412.113(c) required additional analysis by the Secretary before such payments could be extended to CAHs.  Section 1861(e) of the Act defines "hospital" for purposes of the Medicare program and contains the following provision: "[t]he term 'hospital' does not include, unless the context otherwise requires, a critical access hospital..."  42 U.S.C. § 1395x(e).  This initially created an issue with respect to the application of CRNA pass-through reimbursement to CAHs, which are clearly the type of low surgical volume rural facilities that were designed to be assisted by such payment.  As described by the Secretary in his August 1, 2001 Federal Register discussion after the adoption of the BBRA 1999 (and expansion of the definition of rural):

> We pointed out in the May 4 proposed rule that, although § 412.113(c) [the CRNA pass-through payment regulation] does not specifically extend eligibility for the pass-through payment for CRNAs to CAHs, some CAHs have pointed out that they are similar to the rural hospitals that are eligible for this payment, in that they also furnish low volumes of surgical procedures requiring anesthesia and could face the same problem of potentially inadequate payment for CRNA services if they are not allowed to qualify for the pass-through payment.  We share this concern.

66 Fed. Reg. at 39,922, A.R. at 129.  The Secretary further indicated that section 1861(e) of the Act allowed for a more expansive definition of the term "hospital" in certain contexts, thereby specifically permitting CAHs to be classified as hospitals for certain purposes. Id.  Finally, the Secretary declared that, "in accordance with section 1861(e) of the Act and in light of the context

of the pass-through legislation cited above, we consider CAHs to be 'hospitals' for purposes of extending eligibility for CRNA pass thought payments to them."  Id.

Thus, the continuation of pass-through reimbursement for CRNAs pursuant to section 9320(k) of the Omnibus Budget Reconciliation Act of 1986 (as amended by section 608 of the Family Support Act of 1988) for a "hospital located in a rural area (as defined for purposes of section 1886(d) of the Social Security Act)" includes a CAH by the express recognition of the Secretary in the Federal Register and the amendment of the CRNA "pass-through" payment regulation at 42 C.F.R. § 412.113(c) to include CAHs.  The Secretary's "contextual" analysis under section 1861(e) concluding that the term "hospital" included a CAH for purposes of the CRNA pass-through payment in no way affected the definition of "rural area" under the CRNA pass-through law.  Such definition remained fixed within the CRNA pass-through law, incorporating by reference the geographic classification system contained in the full text of section 1886(d) of the Act.

### D.    THE MEDICARE PAYMENT APPEALS PROCESS AND THE PRRB

Having set forth the legal background concerning the general applicability of CRNA pass-through reimbursement to CAHs, it is necessary to reflect upon the rights a provider under the Medicare Program may have to challenge a determination with which it disagrees.  A CAH, like any other hospital, is permitted to appeal any "final determination" of its fiscal intermediary to the Provider Reimbursement Review Board, or PRRB.  42 U.S.C. § 1395oo(a).  The PRRB is an administrative tribunal appointed by the Secretary to adjudicate certain Medicare payment disputes involving providers.  42 U.S.C. § 1395oo(h).  The PRRB's jurisdiction attaches to an appeal if the hospital: (i) "is dissatisfied with a final determination of the organization serving as its fiscal intermediary…as to the amount of total program reimbursement due the provider," (ii)

has an amount in controversy of $10,000 or more, and (iii) files its request for hearing with the PRRB within 180 days of the date of the final determination.  42 U.S.C. § 1395oo(a).

The PRRB conducts hearings and issues written decisions based upon the record made at the hearing, the record made in support of the intermediary's determination, and any other relevant evidence.  42 C.F.R. § 405.1871.  The CMS Administrator has the authority to review and reverse decisions of the PRRB.  42 C.F.R. § 1875.  A hospital is entitled to judicial review of an adverse final decision by either the PRRB or the CMS Administrator.  42 U.S.C. § 1395oo(f); 42 C.F.R. § 405.1877.

## III.    STATEMENT OF THE CASE

### A.    THE HOSPITAL WAS DESIGNATED A CRITICAL ACCESS HOSPITAL BY THE SECRETARY

Bayside Community Hospital is a 14-bed hospital located in Anahuac, Texas.  A.R. at 149.  Anahuac is located in Chambers County, in a rural census tract of an urban metropolitan statistical area.  Id.  By virtue of the statutory provisions adopted by the BBRA 1999 and discussed above, the Hospital was certified as a CAH by the Secretary effective March 1, 2001.  A.R. at 94, 150.

### B.    THE HOSPITAL REQUESTED CRNA PASS-THROUGH REIMBURSEMENT BUT ITS INTERMEDIARY DENIED THE HOSPITAL'S REQUEST

Upon obtaining its CAH status, the Hospital notified its fiscal intermediary, TrailBlazer Health Enterprises, LLC ("Intermediary")[7] of its request to receive reasonable cost reimbursement for the services of CRNAs obtained under arrangement for its fiscal years 2002,

---

[7]    In the area where the Hospital is located, the TrailBlazer Health Enterprises is the subcontractor under contract to administer Medicare payment on behalf of Blue Cross & Blue Shield Association.  A.R. at 149.  BCBSA and TrailBlazer are together referred to herein as "Intermediary."

2003, and 2004, pursuant to 42 C.F.R. § 412.113(c). A.R. at 97. The Hospital's request was denied by the Intermediary on the basis that, while the Hospital was indeed "a rural area for the purpose of qualifying for the CAH designation," such rural designation "has no bearing on whether they are 'rural' for purposes of 412.113(c)(A) [the CRNA pass-through payment regulation]." A.R. at 97. The Hospital timely appealed the Intermediary's final determination denying the Hospital's request for CRNA pass-through reimbursement to the PRRB, arguing that it was by definition a rural hospital and entitled to the payment.

### C.    THE PRRB HELD THAT THE HOSPITAL IS ELIGIBLE FOR CRNA PASS-THROUGH REIMBURSEMENT

On March 8, 2006, a telephonic hearing was held before the PRRB. A.R. at 26. On May 10, 2007, after the hearing and a review of the parties' written submissions, the PRRB found in favor of the Hospital. A.R. at 20-25. The PRRB held that "the term 'rural' has the same meaning in the CRNA statute (Public law 100-485) as it does in section 1886(d) of the Act," and that it was Congress's intent that "urban hospitals that are redesignated and treated as rural hospitals would receive 'all categories and designations available to rural hospitals' which would include pass-through payments for CRNA services." A.R. at 24. As a result, the Board held that the Hospital was eligible for CRNA pass-through reimbursement under 42 C.F.R. § 412.113(c) because to find otherwise "would frustrate the intent of Congress as well as that expressed by CMS in its own regulations." A.R. at 24.

### D.    THE SECRETARY REVERSED THE DECISION OF THE PRRB

On July 9, 2007, the CMS Administrator (acting as a delegate of the Secretary) reversed the PRRB's decision in favor of the Hospital, holding that in spite of the fact that the Provider was "rural" under section 1886(d)(8)(E) of the Act for CAH purposes, "the Provider was not entitled to Medicare pass-through payments for CRNA services since it is not physically located

in a rural area as defined in the regulations at 42 CFR 412.62(f)."  A.R. at 8.  Review of the

Administrator's Decision, which constitutes the final decision of the Secretary, is now properly

before this Court based on the Hospital's Complaint for judicial review pursuant to 42 U.S.C. §

1395oo(f).

## IV.    STANDARD OF REVIEW

In reviewing the Secretary's final decision, the Court's standard of review is governed by

the "applicable provisions" of the Administrative Procedure Act ("APA").    42 U.S.C. §

1395oo(f); St. Elizabeth's Medical Center of Boston, Inc. v. Thompson, 396 F.3d 1228, 1232

(D.C. Cir. 2005).  The applicable provisions of the APA state that the reviewing court shall:

> (2) hold unlawful and set aside agency action, findings, and conclusions found
> to be—
>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in
>> accordance with law;
>
> …
>> (E) unsupported by substantial evidence in a case…reviewed on the
>> record of an agency hearing provided by statute…

5 U.S.C. §706.

Substantial evidence "means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" taking into account "whatever in the record fairly detracts

from its weight."  AT&T Corp. v. FCC, 86 F.3d 242, 247 (D.C. Cir. 1996).

As the Supreme Court has held, "the 'deference owed to an expert tribunal cannot be

allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency

of major policy decisions properly made by Congress.'  Accordingly, while reviewing courts

should uphold reasonable and defensible constructions of an agency's enabling Act, they must

not 'rubber-stamp…administrative decisions that they deem inconsistent with a statutory

mandate or that frustrate the congressional policy underlying a statute.'"  Bureau of Alcohol,

Tobacco and Firearms v. Federal Labor Relations Authority, 464 U.S. 89, 97 (1983).  Thus, the

reviewing court must subject the agency's decision to searching, careful, and close judicial scrutiny. See Biloxi Reg'l Med. Ctr. v. Bowen, 835 F.2d 324, 250-53 (D.C. Cir. 1987). As the Supreme Court has described:

> The arbitrary and capricious standard entails a careful, searching inquiry as to whether:
>
> The agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view of the product of agency expertise.

Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Finally, a reviewing court may uphold agency action only on the basis articulated by the agency in its decision, not on post-hoc rationalizations offered by the agency or its counsel in litigation. See, e.g., Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168-169 (1962); Biloxi Reg'l Med. Ctr., 835 F.2d at 348 n. 12, 351 n. 18.

## V.    ARGUMENT

### A.    SUMMARY OF ARGUMENT

The Secretary's decision to reverse the PRRB is arbitrary, capricious and contrary to law. The plain language of the CRNA pass-through law mandates that CRNA reasonable cost reimbursement is available to hospitals in rural areas, as defined by section 1886(d) of the Act. Section 1886(d), in turn, includes subsection 1886(d)(8)(E), which requires that hospitals in rural census tracts of metropolitan statistical areas be treated as rural. Indeed, the Secretary certified the Hospital as a CAH, and thereby deemed the Hospital "rural" under section 1886(d) of the Act. A.R. at 94. Moreover, Congress specified at the time of the passage of the BBRA 1999 that a hospital "deemed rural" must be treated as rural for all purposes. The Secretary's present

decision to consider the Hospital "urban" for purposes of CRNA pass-through reimbursement defies the statute, the legislative policy, and the Secretary's own prior findings.

Relying upon the language of its own regulations, the Secretary contends that hospitals deemed rural pursuant to section 1886(d)(8)(E) of the Act are not eligible for CRNA pass-through reimbursement. The Secretary's decision ignores the plain language of the CRNA pass-through law, as well as basic rules of statutory construction and the stated intent of Congress. Under the rules governing judicial review of agency action, the plain language of the statute and Congress's intent governs. Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984) ("Chevron"). The Secretary's blatant disregard for Congress's plain enactments and recorded intent cannot be permitted. Moreover, the Secretary's interpretation of his regulations is due no deference from this Court, because the regulations are contrary to the plain language of the governing statutes, and because the Secretary himself indicated a contrary intent at the time of the regulations' promulgation. Thomas Jefferson University v. Shalala, 512 U.S. 504, 512 (1994).

Finally, the Secretary's determination is arbitrary and capricious in that it has resulted in the treatment of similarly situated providers differently, awarding CRNA pass-through reimbursement to some "rural" hospitals, but not to others. The Secretary's interpretation also results in the award of CRNA pass-through reimbursement to some CAHs but not others, in spite of the fact that all CAHs are "rural" by statutory definition. Rural hospitals have a difficult time surviving under the Medicare prospective payment system, and it was Congress's intent in creating all of the special reimbursement mechanisms available to rural providers to assist and support them so that necessary health care services could be available to Medicare beneficiaries

in remote areas. The Secretary's decision in this case frustrates that goal, and must be overturned.

**B.    THE HOSPITAL IS "RURAL" UNDER THE PLAIN LANGUAGE OF THE STATUTE**

The Secretary's reversal of his PRRB's decision revolves around his strict interpretation of various regulations, including the CRNA pass-through regulation at 42 C.F.R. § 412.113(c) and the "non-updated" regulation referenced therein that purports to define the term "rural" (42 C.F.R. § 412.64(f)). However, this Court need not defer to the Secretary's regulations involved in this case because the plain language of the applicable statutes is clear. This is the standard set forth in the seminal case addressing an agency's construction of the statutes it administers. See Chevron, 467 U.S. 837.

### 1.    Chevron Review Under the APA

There are potentially two steps to a court's review under Chevron. First, the court must determine whether Congress "has directly spoken to the precise question at issue." Id. at 842-43. If Congress's intent is clear, then "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. Stated another way, "job one is to read the statute, read the statute, read the statute." Goldring v. District of Columbia, 416 F.3d 70, 77 (D.C. Cir. 2005).

Only if the statute is ambiguous does the court move on to the second step of Chevron review, which involves determining whether the agency's interpretation is based upon a permissible construction of the statute. Id.; see also Fort Hood Barbers Association v. Herman, 137 F.3d 302, 308 (5th Cir. 1998) ("The Court must determine whether the Secretary's construction of the statute is rational, reasonable, and in accordance with legislative purpose…"). The Supreme Court has also advised that when it appears from the legislative history that an

agency's interpretation "is not one that Congress would have sanctioned," a court should not defer to the agency's interpretation.  <u>Chevron</u>, 467 U.S. at 845.

### 2.    A Hospital "Deemed Rural" is "Rural" By Unambiguous Statutory Definition

The issue in this case is whether the Hospital, which is a certified critical access hospital under the "deemed rural" provision of section 1886(d), is eligible to receive payment on a reasonable cost basis for anesthesia services provided at the Hospital by its CRNAs.   The Secretary argues that the Hospital does not qualify for CRNA pass-through reimbursement because it was "not physically located in a rural area" as required by his regulation at 412.62(f).  <u>See</u> A.R. at 8.  The Hospital argues that the Secretary's rationale is refuted by the plain language of the CRNA pass-through law, the statutory definition of "rural area" in section 1886(d), and Congress's intent at the time the expanded definition of rural was enacted.

The Family Support Act of 1988 extended pass-through reimbursement for the cost of obtaining the services of non-physician anesthetists to hospital "located in a rural area (<u>as defined  for purposes of section 1886(d) of the Social Security Act)...</u>"  Family Support Act of 1988 § 608 (emphasis added), A.R. at 125-27.[8]  Section 1886(d)(2)(D) of the Act contains the original, basic definition of "rural."  42 U.S.C. § 1395ww(d)(2)(D).  It first defines "urban area" as "an area within a Metropolitan Statistical Area…or within such similar area as the Secretary has recognized under subsection (a) by regulation…" and then defines "rural area" as "any area outside such an area or similar area."  42 U.S.C. § 1395ww(d)(2)(D)(ii).  Section 1886(d)(8)(E) of the Act was added to the statute by the BBRA 1999, and provides that:

---

[8] As explained above, the CRNA pass-through law was extended indefinitely by section 6132 of the Omnibus Budget Reconciliation Act of 1989.  Omnibus Budget Reconciliation Act of 1989 § 6132.

(i) For purposes of this subsection, not later than 60 days after the receipt of an application…from a subsection (d) hospital described in clause (ii), <u>the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D))</u> of the State in which the hospital is located.

(ii) For purposes of clause (i), a subsection (d) hospital described in this clause is a subsection (d) hospital that is located in an urban area (as defined in paragraph (2)(D)) and satisfies any of the following criteria:

(I) <u>The hospital is located in a rural census tract of a metropolitan statistical area…</u>[9]

42 U.S.C. §1395ww(d)(8)(E) (emphasis added).  In other words, section 1886(d)(8)(E) explicitly amends the definition of "rural area" contained at section 1886(d)(2)(D) to include facilities "deemed rural" under the provisions of section 1886(d)(8)(E)(i).  Thus, "as defined for purposes of section 1886(d)" of the Act, the term "rural area" necessarily includes hospitals deemed rural under section 1886(d)(8)(E)(i).

Moreover, one of the conditions necessary for a facility to be designated a critical access hospital is that the hospital be "located in a county…in a rural area (as defined in section 1886(d)(2)(D) or is treated as being located in a rural area pursuant to section 1886(d)(8)(E))…" 42 U.S.C. § 1395i-4(c)(2)(B)(i).  Thus, like the CRNA pass-through law, the CAH statute also incorporates the definition of "rural area" set forth in section 1886(d) of the Act as a condition precedent to qualifying for CAH status.  The parties have stipulated to the fact that the Hospital is a CAH and that "the Provider was treated as a rural hospital for purposes of qualifying for CAH designation" under the CAH designation requirements of 42 U.S.C. 1395i-4(c)(2)(15)(i). A.R. at 22.  Thus, the Secretary has admitted in the record before this Court that the Hospital <u>meets the definition of "rural" under section 1886(d) of the Act</u>, at least for the purpose of

---

[9]    There is no dispute in this case regarding the Hospital's satisfaction of the criteria under 42 U.S.C. 1395ww(d)(8)(E)(ii).  A.R. at 150.

meeting CAH requirements.  See id.  It is plain from the face of the CRNA pass-through law that such payment is available for hospitals "located in a rural area (as defined for purposes of section 1886(d) of the Social Security Act)."  Family Support Act of 1988 § 608, A.R. at 125-27.  If the Hospital is "rural" under the CAH statute by virtue of the definition in section 1886(d) of the Act, and that same definition of "rural" is applicable for purposes of the CRNA pass-through law, then it is absurd to conclude, as the Secretary has, that the Hospital is not "rural" for purposes of CRNA pass-through reimbursement eligibility.[10]

The plain language of the statutory scheme supporting the Hospital's (and the PRRB's) position is further bolstered by Congress's statements at the time the statutory amendment to the definition of "rural" in section 1886(d) was made.  The Conference Agreement associated with the passage of the "deemed rural" amendment explained that "[h]ospitals qualifying under [1886(d)(8)(E)] shall be eligible to qualify for all categories and designations available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers."  H.R. Conf. Rep. No. 106-479, at Title IV § 401 (1999) (emphasis added), A.R. at 121.  Clearly, Congress intended its amendment to the definition of "rural area" at section 1886(d)(2)(D) to include facilities "deemed as rural" to be consistently applied for Medicare program purposes.

The Court of Appeals for the D.C. Circuit has held that, "[i]n making the threshold determination under Chevron, 'a reviewing court should not confine itself to examining a particular statutory provision in isolation.'"  Cement Kiln Recycling Coalition v. EPA, 493 F.3d 207 (D.C. Cir. 2007) (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132 (2000)).  While the plain language of the CRNA pass-through law and definition of "rural area"

---

[10]    Indeed, even the Secretary's representative admitted in the hearing before the PRRB that there is no such thing as an "urban" CAH.  A.R. at 39.

set forth at section 1886(d) on their own require the conclusion that the Hospital qualifies for CRNA pass-through reimbursement, this determination is further strengthened by a review of the CAH statute and its incorporation of the same statutory definition of "rural" utilized by the CRNA pass-through law.  Both laws refer to the definition of "rural area" set forth in section 1886(d), which necessarily includes areas that are rural as a result of being "deemed rural" under section 1886(d)(8)(E).  Moreover, as described above, Congressional intent at the time of the passage of section 1886(d)(8)(E) confirms that hospitals redesignated as rural were intended to be treated as "rural" for all Medicare program purposes.  H.R. Conf. Rep. No. 106-479, Title IV § 401, A.R. at 121.  Thus, when viewed in the full statutory scheme, the conclusion that the Hospital is entitled to CRNA pass-through payment is further supported.[11]

### 3.   The Legislative History Instructs That a Hospital "Deemed Rural" is "Rural" For All Purposes

Under the first step of <u>Chevron</u> review, evidence of Congressional intent in passing a statute is relevant.  As explained above, the Supreme Court has stated that when it appears from the legislative history that an agency's interpretation "is not one that Congress would have sanctioned," a court should not defer to the agency's interpretation.  <u>Chevron</u>, 467 U.S. at 845.

Also as explained above, Congress stated in the reports accompanying the amendment of section 1886(d)'s definition of "rural area" to include areas "deemed rural" that "[h]ospitals qualifying under [1886(d)(8)(E)] shall be eligible to qualify for all categories and designations

---

[11] Reading all of the relevant laws together, it is clear that Congress intended for the definition of "rural" set forth in section 1886(d) (which includes areas "deemed rural" under 1886(d)(8)(E)) to be the principal definition of "rural" for Medicare purposes.  Indeed, a search of the Social Security Act reveals that the definition of "rural area" at section 1886(d) is the only definition of that term in the Medicare provisions of the Act and is referenced by various other statutory provisions.  To have its meaning change based upon the Secretary's ad hoc interpretation of varying reimbursement mechanisms undermines the consistency that Congress attempted to establish with the single definition.

available to rural hospitals, including sole community, Medicare dependent, critical access, and referral centers." H.R. Conf. Rep. No. 106-479, A.R. at 121. The Secretary's PRRB held that "the Secretary's' rationale for the denial of the pass-through payments to CAHs would frustrate the intent of Congress as well as that expressed by CMS in its own regulations." A.R. at 24.

In its decision overruling the PRRB, the Secretary argues that the "deemed rural" provisions of section 1886(d)(8)(E) only apply to three specific provisions: (1) payment for inpatient services for PPS under section 1886(d), (2) payment for outpatient services under OPPS under section 1833(t), and (3) payment for critical access hospitals under section 1820 of the Act. A.R. at 7. While it may be true that each of these payment schemes enumerated by the Secretary specifically reference section 1886(d)(8)(E) of the Act as being applicable, the Secretary's rationale is irrelevant with respect to the CRNA pass-through law, which uses the phrase "located in a rural area (as defined for purposes of <u>section 1886(d)</u> of the Social Security Act)." Family Support Act of 1988 § 608 (emphasis added), A.R. at 125-27. The Secretary's backward rationale cannot rebut the fact that the CRNA pass-through law specifically adopts the definition of rural set forth in section 1886(d); nor can it refute the fact that the CRNA pass-through law references the <u>entire</u> section 1886(d), which necessarily encompasses subsection 1886(d)(8)(E). The Secretary's conclusion that "[t]he rural designation under section 1886(d)(8)(E) of the Act is limited to the foregoing three applications and does not specifically refer to the reasonable cost pass-through payment for CRNA services" is totally misplaced. The rural designation under subsection 1886(d)(8)(E) does not specifically adopt any "applications" – rather, other statutes adopt <u>it</u> by referring to the definition of "rural." Section 1886(d)(8)(E) is simply a Congressional mandate to the Secretary to treat certain non-rural hospitals as "rural."

Furthermore, the Secretary's argument does not mesh with Congress's explanation at the time that the "deemed rural" statute was passed; Congress intended that the statute be applicable for "<u>all</u> categories and designations available to rural hospitals." <u>See</u> H.R. Conf. Rep. No. 106-479 (emphasis added), A.R. at 121.  Reasonable cost reimbursement for the cost of anesthesia services provided by CRNAs is a special payment mechanism available to rural hospitals, and as such, Congress intended that it be available to hospitals in areas deemed rural as well as hospitals originally defined as rural due to their location outside of a metropolitan statistical area.  This Congressional intent similarly refutes the Secretary's argument that "while the Provider may have been allowed to become a CAH through redesignation under section 1886(d)(8)(E) and 42 C.F.R. § 412.103(a)(2) even though it is located in an MSA, that status does not determine whether they are 'rural' for purposes of § 412.113(c)(A)."  Setting aside the fact that this argument has no basis in the plain language of the statute, it completely ignores the legislative intent.  Again, Congress made it clear that "<u>all</u> categories and designations available to rural hospitals," would be available to hospitals in areas "redesignated as rural."

Although the Secretary's decision ignores Congress's legislative intent with respect to the "deemed rural" statute at section 1886(d)(8)(E), the judiciary is not permitted to do so.  As the Supreme Court stated in <u>Chevron</u>, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.  If a court, employing traditional rules of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." <u>Chevron</u>, 467 U.S. at 843, n. 9 (internal citations omitted); <u>see also</u> <u>Goldring</u>, 416 F.3d at 74 ("'when the statute's language is plain, the sole function of the courts—at least

where the disposition required by the text is not absurd—is to enforce it according to its terms.'").

Additionally, the Secretary's attempts to read the definition of "rural area" in section 1886(d) in a manner isolated from the other statutes governing Medicare reimbursement to rural hospitals is contrary to principles of statutory construction.  As courts have explained, "[t]he 'whole act' rule of statutory construction exhorts us to read a section of a statute not 'in isolation from the context of the whole Act' but to 'look to the provisions of the whole law, and to its object and policy.'"  U.S. v. Pacheco, 225 F.3d 148, 154 (2d Cir. 2000) (citing Richards v. United States, 369 U.S. 1, 11 (1962)).  The Pacheco court continued, "we must 'interpret [a] specific provision in a way that renders it consistent with the tenor and structure of the whole act or statutory scheme of which it is a part.'"  Id.

The APA grants this Court power to hold unlawful and set aside agency action that is not in accordance with law.  5 U.S.C. § 706.  The Secretary's ruling that the Hospital is not eligible for CRNA pass-through reimbursement is contrary to the plain language of the CRNA pass-through law, section 1886(d) of the Social Security Act, and Congressional intent.  Because Congress has directly spoken to the definition of "rural" and expressed its desire that hospitals redesignated as rural be considered rural for all purposes, the intent of Congress is clear and this Court "must give effect to the unambiguously expressed intent of Congress."  Chevron, 467 U.S. at 842-43.  Under the first step of Chevron and the requirements of the APA, the Secretary's decision below must be set aside.

### C.    THE SECRETARY'S ATTEMPT TO RELY ON THE DEFINITION OF "RURAL" IN HIS REGULATION AT 42 C.F.R. 412.62(F) IS NOT ENTITLED TO DEFERENCE

In his decision below, the Secretary argues that his regulations at 42 C.F.R. § 412.113(c)(2)(A) limit the application of the CRNA pass-through to a "hospital or CAH that is

located in a rural area  as defined in § 412.62(f)…"    A.R. at 8 (citing 42 C.F.R. § 412.113(c)(2)(A)).  He then agues that the definition of rural in § 412.62(f) "does not include rural redesignations under § 412.103."[12]  Id.  According to the Secretary, 42 C.F.R. § 412.62(f) was not "amended to expand or contract any definitions of rural under the subsequent [statutory] provisions which allowed certain urban hospitals to be designated as CAHs."  A.R. at 7. Therefore, the Secretary contends that this "non-updated" definition of "rural" at regulation 412.62(f) must be relied upon for determining rural status for CRNA purposes and that the Hospital therefore does not qualify.

Not only is such an interpretation wholly inconsistent with the plain language of the controlling statute (and thereby invalid), it fails to reflect the Secretary's own comments at the time the regulation for CRNA pass-through reimbursement was originally adopted.  A court shall not defer to an agency's interpretation of its own regulation when an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation."  Thomas Jefferson, 512 U.S. at 512.  Even if a court accepts the agency's interpretation of its regulation, the court "must then consider whether the regulation so interpreted is consistent with the statute under which it is promulgated."  Cheshire Hospital v. New Hampshire-Vermont Hospitalization Service, Inc., 689 F.2d 1112, 1117-1118 (1st Cir. 1982) (citing United States v. Larinoff, 431 U.S. 864, 873 (1977)).

Although the Secretary is generally entitled to some deference in interpreting his own regulations when such regulations are ambiguous, the "weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the

---

[12]    42 C.F.R. § 412.103 was amended by the Secretary to incorporate the "deemed rural" provisions of section 1886(d)(8)(E) of the Act.

validity of its reasoning, its consistency with earlier and later pronouncements, all those factors which give it power to persuade, if lacking power to control." U.S. v. Mead Corporation, 533 U.S. 218, 228 (2000). Furthermore, "an agency's action must be upheld, if at all, on the basis articulated by the agency at the time of the rule making.'" Baylor University Medical Center v. Heckler, 758 F.2d 1052, 1060 (5th Cir. 1985) (internal citations omitted).

In July of 1992, CMS published its final rule implementing the CRNA pass-through law set forth in section 9320(k) of OBRA of 1986, as amended and extended by various acts including the Family Support Act of 1988 and sections 6106, 6107, and 6132 of OBRA of 1989. See 57 Fed. Reg. 33,878 (July 31, 1992). In the preamble to the final rule, the Secretary explained:

> As required by section 9320(k) of Public Law 99-509 (as amended by section 608 of Public Law 100-485, a rural area would be defined in the same way it is defined for purposes of the inpatient hospital prospective payment system (in accordance with section 1886(d) of the Act). The definition is set forth at § 412.62(f)...

57 Fed. Reg. at 33,882 (emphasis added). In making this statement, the Secretary acknowledged that the definition of "rural area" in section 412.62(f) is intended to be the same as the definition of "rural area" contained at section 1886(d) of the Act. The Secretary also recognized in this statement that this definition is mandated by Congress. Id. Moreover, in promulgating the regulation that extended CRNA pass-through eligibility to CAHs, which occurred subsequent to the passage of the BBRA 1999 adding section 1886(d)(8)(E), the Secretary explained that:

> [t]he purpose of the pass-through legislation is to provide small rural hospitals with low surgical volumes with relief from the difficulties they might otherwise have in furnishing CRNA services for their patients. CAHs are by definition limited-service facilities located in rural areas and, as such, they serve a population much like those served by hospitals eligible for the pass-through payments.

66 Fed. Reg. at 39,922 (emphasis added), A.R. at 129. This is precisely the type of "indication of the Secretary's intent at the time of the regulation's promulgation" that the Supreme Court instructed should be a guide to a court before it defers to an agency interpretation of a given regulation. See Thomas Jefferson, 512 U.S. at 512.

Now, flying in the face of unambiguous regulatory intent and clear statutory requirements, the Secretary's current argument is that the definition of "rural area" set forth at regulation 412.62(f) differs from that which is set forth at section 1886(d) of the Act, which includes hospitals "deemed rural." As the Supreme Court has instructed, a court shall not defer to an agency's interpretation of its own regulation when an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." Thomas Jefferson, 512 U.S. at 512 (emphasis added). Thus, the Secretary's attempt to rely on the "non-updated" definition of rural in 42 C.F.R. § 412.62(f) must be ignored by this Court.

### D. THE SECRETARY'S REGULATIONS ARE INVALID TO THE EXTENT THAT THEY ARE CONTRARY TO THE STATUTE AND CONGRESSIONAL INTENT

As explained in the previous section, the Hospital contends that the definition of "rural area" contained at regulation 412.62(f) must be read as incorporating hospitals in areas deemed rural, based upon the agency's statements at the time the regulation was promulgated. If not, the regulation is simply invalid.

It is a basic rule of administrative law that "a regulation can not override a clearly stated statutory enactment." Aerolineas Argentinas v. U.S., 77 F.3d 1564, 1575 (Fed. Cir. 1996); see also Brush v. Office of Personnel Management, 982 F.2d 1554, 1560 (Fed. Cir. 1992) (holding that the "regulation must be held to be invalid since it does not comport with the clear statutory mandate"). Additionally, with respect to definitions in particular, the Supreme Court has held

that when Congress itself has defined a term, an agency interpretation of that term is owed less deference.  Rowan Companies, Inc. v. U.S., 452 U.S. 247, 253 (1981).  The Supreme Court explained that, "[b]ecause we therefore can measure the [agency's] interpretation against a specific provision in the Code, we owe the interpretation less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision."  Rowan Companies, 452 U.S. at 253.  The D.C. Circuit has also held that an agency does not have the discretion to adopt a definition of a particular term that is at odds with a definition of that very term contained in the statute.  ACLU et al. v. FCC, 823 F.2d 1554, 1567 (D.C. Cir. 1987).  In ACLU v. FCC, the court analyzed the statutory definition of the term "basic cable service," and held that because Congress had spoken directly by providing a definition of the very term the agency sought to redefine, and because that definition was intended to be a comprehensive definition of the term, under Chevron this consideration was "the end of the matter" and the agency's redefinition of the term was found to be contrary to law.  Id. at 1570.  The court also noted that because there was no ambiguity on the face of the statute, the statutory definition "should apply in all circumstances."  Id. at 1569.

In the present case, section 1886(d) of the Act defines the term "rural area" to include areas that are "deemed rural," as well as areas that are outside of metropolitan statistical areas.  See 42 U.S.C. § 1395ww(d).  The Secretary's regulation at 412.62(f), in contrast, defines "rural area" as "any area outside an urban area."  42 C.F.R. § 412.62(f)(1)(B)(iii).  This regulatory definition was adopted after, and in accordance with, the statutory definition of "rural area" at section 1886(d)(2)(D).  The Secretary is correct in his statement that "[n]either 42 C.F.R. § 412.62(f), nor 42 C.F.R. § 412.64(b)(3), was amended to expand or contract any definitions of rural under the subsequent provisions which allowed certain urban hospitals to be designated as

CAHs." A.R. at 7. However, the fact that the Secretary failed to amend these regulations to conform with the amended statutory definition of "rural area" in section 1886(d) does not make the Secretary's omission permissible, nor does it mean that the "non-updated" regulatory definition prevails. As the D.C. Circuit has made clear, a regulatory definition that conflicts with a statutory definition is invalid, particularly when Congress "has spoken directly and specifically by providing a definition of the exact term" the agency seeks to redefine. ACLU v. FCC, 832 F.2d at 1570. To the extent that the Secretary's regulations offer a different definition of "rural area" than is set forth in the statute, the Secretary's regulation must be found to be invalid. To rule otherwise would effectively allow a regulation to trump a statute, and would violate the most fundamental principle of statutory and regulatory interpretation. See Chevron, 467 U.S. at 842-43.

### E. THE SECRETARY'S ARGUMENT THAT THE CRNA PASS-THROUGH LAW IS OUTSIDE THE SCOPE OF PPS IS INAPPOSITE.

The Secretary attempts to circumvent the plain language of the statutes cited above by making a conceptual reimbursement-based argument that because the CAH and CRNA payment mechanisms are not part of the prospective payment system for other hospitals, section 1886(d) and its definition of "rural areas" cannot possibly apply to them. A.R. at 5-6, 7 n. 12, 8. The Hospital does not (and has not) argued that CAHs or the CRNA pass-through payment are part of the PPS governed by section 1886(d). However, the Secretary's argument fails to recognize the obvious fact that the CAH and the CRNA pass-through statutes specifically adopt the definition of rural area set forth in 1886(d) (the PPS statute). See 42 U.S.C. § 1395i-4(c)(2)(B)(i); see also Family Support Act of 1988 § 608, A.R. at 125-27. In fact, because they adopt the same exact definition of "rural area," the logical result is that if a hospital is rural for purposes of the CAH statute, it must also be rural for purposes of the CRNA pass-through law.

F.    **THE SECRETARY'S ACTIONS ARE ARBITRARY AND CAPRICIOUS**

The Provider contends that the Secretary's decision in the present case is arbitrary and capricious, and therefore subject to this court's reversal, for the following additional reasons.

1.    **The Secretary's Interpretation Treats Rural Hospitals Differently**

The Secretary's decision is based on the argument that CRNA pass-through reimbursement is only available for hospitals that are "rural" by nature of their location in a non-urban metropolitan statistical area. Effectively, the Secretary is arguing that some hospitals which meet the definition of "rural" are eligible for CRNA pass-through reimbursement, and some meeting the same statutory definition are not. However, the text of the CRNA pass-through law in no way suggests that CRNA pass-through reimbursement is only available to some rural hospitals. Rather, the law states that the payment is available for hospitals located in a "rural area (as defined for purposes of section 1886(d) of the Social Security Act)." As explained herein, section 1886(d) contains the sole definition of "rural area" in the Social Security Act. Section 1886(d) also states that hospitals deemed rural are considered to be rural under the pre-existing definition of "rural area" set forth at subsection 1886(d)(2)(D) of the Act. Simply put, there is one definition of "rural" in Medicare law, and it includes hospitals deemed rural, as well as hospitals located outside of urban metropolitan statistical areas. There is simply no basis in the statute for the differential treatment exercised by the Secretary.

2.    **The Secretary's Interpretation Treats "Deemed Rural" Hospitals as "Rural" For Some Purposes, But Not For Others**

There is no dispute in this case that the Hospital is "rural" for purposes of the CAH statute. A.R. at 22, 150. Further, it cannot be disputed that the CAH statute incorporates the definitions of rural set forth in section 1886(d) of the Act. See 42 U.S.C. § 1395i-4(c)(2)(B). Nor can it be disputed that the CRNA pass-through law also incorporates the definition of rural

31

at section 1886(d). <u>See</u> Family Support Act of 1988 § 608, A.R. at 125-27. Yet, the Secretary contends that the Hospital is rural for purposes of CAH status, but not for purposes of CRNA pass-through reimbursement eligibility. This interpretation, in addition to being arbitrary and capricious, is contrary to the plain language of the statute and Congressional intent that hospitals deemed to be rural be treated as rural for all categories and designations available to rural hospitals. As a result, this court should hold unlawful and set aside the agency's decision in this case.

### 3.     The Secretary Has Treated Similarly Situated Hospitals Differently

Finally, the Provider has recently learned that the Secretary has permitted at least one other CAH located in an urban metropolitan statistical area but deemed rural under section 1886(d)(8)(E) to receive CRNA pass-through reimbursement. <u>See</u> Appendix A to the Plaintiff's Memo. Specifically, the Provider is aware of a California hospital that is in the exact same situation as the Hospital (a CAH in a rural census tract of a metropolitan statistical area that was deemed "rural" under section 1886(d)(8)(E)) but was determined to be entitled to CRNA pass-through reimbursement. According to the letter from the Secretary's intermediary to the California hospital, "[i]n regards to your urban/rural status under CAH, the additional information…documents the [hospital] is located in a Rural Track consistent with 42 C.F.R. 412.103(a)(1), and therefore, meets the criteria for CRNA cost based payment." <u>Id.</u> The Hospital contends that the Secretary's treatment of the California hospital was proper, and in accordance with the plain language of the applicable statutes. Nevertheless, it is obvious that the Secretary has applied its regulations in an inconsistent manner, and that such inconsistent treatment is arbitrary and capricious. The Secretary's refusal to reimburse the Hospital for the

reasonable costs of its CRNA services should be set aside pursuant to section 706(2)(A) of the APA.  5 U.S.C. § 706.

## G.    THE SECRETARY'S ACTION VIOLATES THE EQUAL PROTECTION CLAUSE

The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  Radvansky v. City of Olmsted Falls, 395 F.3d 291, 312 (6th Cir. 2005).  More specifically, with respect to the third enumerated form of discrimination, the Equal Protection Clause "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985) (emphasis added).

In the present case, a similarly situated provider in California has been treated differently than the Hospital, without any rational basis for such differential treatment.  As described above, the Plaintiff learned of a CAH in a rural census tract of a metropolitan statistical area in California that was granted CRNA pass-through reimbursement, in spite of the fact that it, like the Provider, was "deemed rural" pursuant to section 1886(d)(8)(E).  See Appendix A to the Plaintiff's Memo.  The California hospital is in exactly the same situation as the Plaintiff in the present case, yet the California hospital's request for CRNA pass-through reimbursement was granted, while the Plaintiff's request was denied.

The Plaintiff contends that the Secretary's treatment of the California hospital was correct, as it was in accordance with the plain language of the statutes governing CRNA pass-through reimbursement and "rural" status, and that the same treatment must be accorded to the Plaintiff.  The Secretary's inconsistent application of its interpretation of the CRNA pass-through

regulation is arbitrary and lacks any rational basis in the law.  As such, the Secretary's decision is offensive to the Constitutional principle of Equal Protection and should be overturned.  <u>See Wal-Mart Stores. Inc. v. Knickrehm</u>, 101 F.Supp.2d 749, 763 (E.D. Ark. 2000) (A two-tiered Medicaid pricing system for independent versus chain pharmacies violated the Equal Protection clause of the U.S. Constitution where no factual data existed in the administrative record that would permit such pharmacies to be treated differently with respect to the price paid for drug ingredients.  There was no evidence that chain pharmacies paid less than independent pharmacies for the same drugs).[13]

## VI.    CONCLUSION

Despite the myriad of reasons supporting the reversal of the Secretary's arbitrary action, in the end, it is the plain language of the applicable statutes and basic logic that dictate the outcome of this case.  Under the plain language of the CAH statute, a hospital must be "rural" under section 1886(d) of the Act in order to qualify for CAH status.  CAHs are thus "rural" by definition.  Under the plain language of the CRNA pass-through law, hospitals that meet the definition of "rural" under section 1886(d) of the Act are eligible for CRNA pass-through reimbursement.  It follows by necessity that the Hospital, a CAH and therefore "rural" pursuant to section 1886(d), is eligible for CNRA pass-through reimbursement as "rural" pursuant to section 1886(d).

---

[13] The Plaintiff's case is even more compelling than the case cited here, due to the fact that the Plaintiff and the California hospital are situated <u>identically</u>.  Both hospitals are located in rural census tracts of metropolitan statistical areas, and were "deemed rural" pursuant to section 1886(d)(8)(E) of the Act.  Both hospitals have been designated "critical access hospitals," and both hospitals requested to receive CRNA pass-through reimbursement in accordance with the rules governing such requests.

The Secretary's decision below defies this basic logic and is contrary to the plain language of the CRNA pass-through law. Although this is the only conclusion that needs to be reached in this case in order to find in favor of the Hospital, the Hospital further notes that Congressional intent supports its arguments, as well as the Secretary's published intent at the time of rulemaking. The Secretary's urged interpretation of his regulations would render the regulations contrary to the plain language of various statutes, and therefore, the Court owes the Secretary's interpretation of the regulations no deference. The Hospital requests that under section 706 of the APA, this Court find the Secretary's decision in this case to be invalid on the basis that it is arbitrary and capricious, an abuse of discretion, and contrary to law. The Hospital requests that the PRRB's holding that the Hospital is entitled to CRNA pass-through reimbursement be reinstated and that the Secretary be instructed to make payment accordingly.

Respectfully submitted,


By:_____/s/_____

    Ambika J. Biggs
    D.C. Bar No. 501225
    BAKER & HOSTETLER LLP
    1050 Connecticut Avenue, N.W., Suite 1100
    Washington, D.C. 20036
    (202) 861-1619
    (202) 861-1783 Fax
    abiggs@bakerlaw.com

    Gregory N. Etzel
    D.C. Bar No: TX0039
    Texas Bar No. 00793705
    BAKER & HOSTETLER LLP
    1000 Louisiana, Suite 2000
    Houston, Texas 77002
    Telephone: 713.646.1316
    Fax: 713.751.1717
    getzel@bakerlaw.com

    Frederick W. Chockley, III
    D.C. Bar No. 366800
    BAKER & HOSTETLER LLP
    1050 Connecticut Avenue, N.W., Suite 1100
    Washington, D.C. 20036
    (202) 861-1680
    (202) 861-1783 Fax
    fchockley@bakerlaw.com

    ATTORNEYS FOR PLAINTIFF

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **BAYSIDE COMMUNITY HOSPITAL** | § | |
| **200 Hospital Drive** | § | |
| **Anahuac, Texas 77574** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **File No. 1:07-CV-01562 (EGS)** |
| | § | |
| **MICHAEL O. LEAVITT, IN HIS** | § | |
| **CAPACITY AS SECRETARY OF THE** | § | |
| **DEPARTMENT OF HEALTH AND** | § | |
| **HUMAN SERVICES,** | § | |
| **200 Independence Avenue, S.W.** | § | |
| **Washington, D.C. 20201** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Fed. R. Civ. P. 56(f) and Rules 7(h) and 56.1 of this Court, Plaintiff in the above-captioned case respectfully submits the following statement of material facts as to which there is no genuine issue:

1.     Bayside Community Hospital ("Plaintiff") is a 14-bed Medicare participating provider located in Anahuac, Texas. Anahuac is located in Chambers County, Texas, which is physically located within the Houston, Texas metropolitan statistical area. Administrative Record ("A.R.") at 149.

2.     Plaintiff was treated as a rural hospital by virtue of meeting the statutory requirements set forth in Section 1886(d)(8)(E) of the Social Security Act (42 U.S.C. § 1395ww(d)(8)(E)) and was eligible to participate in the Medicare program as a critical access

hospital pursuant to Section 1820(c)(2)(B) of the Social Security Act (42 U.S.C. § 1395i-4(c)(2)(B)).  A.R. at 150.

3.      Plaintiff was designated a "critical access hospital" ("CAH") by the Centers for Medicare and Medicaid Services ("CMS"), effective March 1, 2001.  Id.

4.      There is no dispute that the Plaintiff was treated as a rural hospital for purposes of qualifying for CAH designation.  Id.

5.      This case involves Medicare reimbursement to the Plaintiff for the services of Certified Registered Nurse Anesthetists ("CRNAs").  Id.

6.      Hospitals and other health care providers are generally reimbursed for CRNA services according to a CRNA fee schedule.  However, Public Law No. 100-485 provided that hospitals that are "located in a rural area (as defined for purposes of section 1886(d) of the Social Security Act)" receive reimbursement for CRNA services on a reasonable cost basis, rather than according to the CRNA fee schedule.  This reasonable cost reimbursement for CRNA services is referred to as a "pass-through payment."  Id.

7.      Pursuant to the Family Support Act of 1988 and 42 C.F.R. § 412.113(c), CAHs are eligible for CRNA pass-through payments.  Id.

8.      Plaintiff properly submitted its request for CRNA pass-through payments for the fiscal years at issue (2002, 2003, and 2004).  Id.

9.      The Plaintiff's request for CRNA pass-through payments was denied by the Intermediary for the sole reason that its treatment as a rural hospital pursuant to Section 1886(d)(8)(E) of the Social Security Act has no bearing on whether the Plaintiff is considered a "rural" facility for purposes of the CRNA pass-through payment established by Public Law No. 100-485 and 42 C.F.R. § 412.113(c)(2)(A).  A.R. at 151.

DATED this 5th day of May, 2008.

Respectfully submitted,

By:_____/s/_____
      Ambika J. Biggs
      D.C. Bar No. 501225
      BAKER & HOSTETLER LLP
      1050 Connecticut Avenue, N.W., Suite 1100
      Washington, D.C. 20036
      (202) 861-1619
      (202) 861-1783 Fax
      abiggs@bakerlaw.com

      Gregory N. Etzel
      D.C. Bar No: TX0039
      Texas Bar No. 00793705
      BAKER & HOSTETLER LLP
      1000 Louisiana, Suite 2000
      Houston, Texas 77002
      Telephone: 713.646.1316
      Fax: 713.751.1717
      getzel@bakerlaw.com

      Frederick W. Chockley, III
      D.C. Bar No. 366800
      BAKER & HOSTETLER LLP
      1050 Connecticut Avenue, N.W., Suite 1100
      Washington, D.C. 20036
      (202) 861-1680
      (202) 861-1783 Fax
      fchockley@bakerlaw.com

      ATTORNEYS FOR PLAINTIFF

**APPENDIX A**

**TO**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**



**CMS**
*CENTERS for MEDICARE & MEDICAID SERVICES*

PART A INTERMEDIARY    NATIONAL FQHC INTERMEDIARY    **MEDICARE**

REGIONAL HOME HEALTH INTERMEDIARY    PHONE: 805-367-0808

 2006

████ CEO
████ Hospital
████
████ CA ████

**Subject:**    Election for Cost Reimbursement – CRNA Services Calendar Year 2007

Dear ████

This letter is in response to the letter we received from ████ on your behalf dated ████ 2006. After carefully reviewing the additional information provided for your facility, we are approving your request for cost based reimbursement for CRNA services consistent with 42 CFR 412.113 for Calendar Year 2007.

Based on information submitted for your facility, your annualized surgical procedure count is below the CMS threshold of 800 procedures. Your CRNA, ████ will continue to be employed by ████ during 2007 and has not, and will not, bill the Part B Carrier for services provided at ████

In regards to your urban/rural status under CAH, the additional information provided by ████ documents that ████ is located in a Rural Track consistent with 42 CFR 412.103(a)(1), and therefore, meets the criteria for CRNA cost based payment.

If you have any questions regarding this matter, please contact Paul Bouganim at (805) 367-0596 or me at (805) 367-0731.

Sincerely,

Evelyn Rey-Hipolito, Manager
Provider Audit & Reimbursement

cc:    FISS Provider File
       Ellen Corwin, Audit Manager

UNITED GOVERNMENT SERVICES, LLC.

P.O. Box 9150, Oxnard, California 93031-9150 • Corporate Headquarters located in Milwaukee, WI
A CMS CONTRACTED INTERMEDIARY

APPENDIX A
to Plaintiff's Memo

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BAYSIDE COMMUNITY HOSPITAL** | § | |
| **200 Hospital Drive** | § | |
| **Anahuac, Texas 77574** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **File No.  1:07-CV-01562 (EGS)** |
| | § | |
| **MICHAEL O. LEAVITT, IN HIS** | § | |
| **CAPACITY AS SECRETARY OF THE** | § | |
| **DEPARTMENT OF HEALTH AND** | § | |
| **HUMAN SERVICES,** | § | |
| **200 Independence Avenue, S.W.** | § | |
| **Washington, D.C. 20201** | § | |
| | § | |
| **Defendant.** | § | |

## <u>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

This matter came to the Court on cross motions for summary judgment.  Upon consideration of the parties' respective motions, memoranda, oppositions, reply papers, and the administrative record filed in this case, it is hereby:

ORDERED that the Plaintiff's motion for summary judgment is GRANTED and the Defendant's motion for summary judgment is DENIED.

ORDERED that summary judgment in favor of the Plaintiff is ENTERED and that the Defendant grant the Plaintiff's request for CRNA pass-through reimbursement eligibility in accordance with the Court's decision in this case, and reimburse the Plaintiff accordingly, including any amounts for interest as required by law.

Dated: _____          _____
                                         Emmet G. Sullivan
                                         United States District Judge