UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BAYSIDE COMMUNITY HOSPITAL | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CV-01562 (EGS) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary, | ) | |
| U.S. Department of Health | ) | |
| and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff in this action is a hospital that participates in the Medicare program.  The dispute in this case arises from a decision of the Secretary of Health and Human Services ("the Secretary") denying Plaintiff's request for more favorable treatment regarding reimbursement to Plaintiff for its costs of furnishing certified registered nurse anesthetist ("CRNA") services to Medicare beneficiaries.  The more favorable "pass-through" payments that Plaintiff seeks were afforded by Congress to hospitals located in rural areas as defined in applicable provisions of the Medicare statute.  While designated "rural" for the purposes of attaining the status of a Critical Access Hospital ("CAH"), Plaintiff Bayside Community Hospital, located in an urban metropolitan statistical area ("MSA"), is not designated rural for the purposes of CRNA pass-through payments.  The rural reclassification Plaintiff enjoys for the purposes of obtaining its CAH designation only entitles it to be considered rural in three limited contexts, none of which

involve payment for CRNA services.  Therefore, as Plaintiff's claim that it is entitled to CRNA

pass-through reimbursement is without merit, summary judgment in Defendant's favor is

warranted.

**STATUTORY AND REGULATORY BACKGROUND**

I.     THE MEDICARE PROGRAM GENERALLY

The Medicare program, established under title XVIII of the Social Security Act, 42

U.S.C. § 1395 et seq., ("the Act") pays for covered medical care furnished primarily to eligible

elderly and disabled persons.  Part A of the program authorizes payment for institutional

services, such as hospital services.  See id. § § 1395c - 1395i-5.  Part B of the program

authorizes payment for professional services, including those of CRNAs.  See id. § § 1395j -

1395u-4.

II.    MEDICARE PAYMENTS TO HOSPITALS

In the Social Security Amendments of 1983, Pub. L. No. 98-21, 97 Stat. 165 (1983),

Congress created the inpatient prospective payment system ("PPS") for reimbursing hospitals for

inpatient services provided to Medicare beneficiaries.  See 42 U.S.C. § 1395ww(d); 42 C.F.R.

Part 412.  This system continued a trend away from a payment system based on reimbursing

costs incurred by a specific hospital toward the current, more objective system of payments

based on average hospital costs.  See Washington Hosp. Center v. Bowen, 795 F.2d 139, 142 n.

2 (D.C. Cir. 1988).  Under the PPS, payments to hospitals for inpatient services generally are

based upon prospectively determined fixed rates that vary according to the type and category of

hospital treatment rendered.  See 42 U.S.C. § 1395ww(d); 42 C.F.R. Part 412.  The specific

payment rate to be applied under the PPS depends upon which "diagnosis related group" or

"DRG" best characterizes the patient's diagnosis and treatment.  42 U.S.C.

2

§ 1395ww(d)(1)(A)(iii)(3), (4).  Separate federal rates were established for hospitals in "urban

areas" and "rural areas."  42 U.S.C. §§ 1395ww(d)(2)(D), (d)(3); 42 C.F.R. §§ 412.62(a), (j);

412.63(a)(2), (o).  Medicare also reimburses hospitals for providing outpatient services to

Medicare beneficiaries under a separate outpatient PPS.  See 42 U.S.C. § 1395l(t).

III.     CRITICAL ACCESS HOSPITALS

        Some classes of hospitals are exempt from payment under the PPS.  Among these are

CAHs.  A hospital qualifying as a CAH received payment at the rate of 101 percent of its

reasonable costs of furnishing inpatient services to Medicare beneficiaries.  See 42 U.S.C.

§ 1395f(l)(1).  To qualify as a CAH, a hospital must meet several enumerated statutory criteria.

See id. § 1395i-4(c)(2)(B).  Principal among these criteria is the requirement that the hospital  is

located in a county "in a rural area (as defined in 42 U.S.C. § 1395ww(d)(2)(D)) or is being

treated as being located in a rural area pursuant to" 42 U.S.C. § 1395ww(d)(8)(E).  Id. § 1395i-

4(c)(2)(8(i).

IV.     PAYMENT FOR CRNA SERVICES

        As the Secretary pointed out in his final decision here, see Administrative Record

("A.R.") at 5, whether a hospital is paid under the PPS or under a reasonable cost methodology,

it usually does not receive direct payment for CRNA services furnished to its patients.  Rather,

such services are generally billed to Medicare Part B (as opposed to Part A, which covers

hospital services), and payment is made to the CRNA in an amount determined by a fee

schedule.  See 42 C.F.R. § 414.60, 410.69.[1]

---

[1]      The Secretary has exercised his authority pursuant to 42 U.S.C. § 1395w-4(j)(3) to
designate CRNA services as those that should be paid under the Medicare physician fee
schedule.

The Family Support Act of 1988, however, made available reasonable cost "pass-through" reimbursement for CRNA services to hospitals located in rural areas as defined by section 1886(d) of the Act.  42 U.S.C. § 1395ww(d).[2]  See Family Support Act of 1988, Pub. L. No. 100-485, § 608, 102 Stat. 2343, 2412 (1988).  Reimbursement for CRNA services is permissible via such pass-through reasonable cost payment where, inter alia, the hospital or CAH is located in a rural area as defined in 42 C.F.R. § 412.62(f) and not deemed to be located in an urban area under 42 C.F.R. § 412.64(b)(3).[3]  See 42 C.F.R. § 412.113(c)(2)(i)(A).  An urban area is defined as an MSA or certain other specified localities.[4]  Id.; 42 C.F.R. § 412.62(f)(ii).  A rural area is described as "any area outside an urban area."  42 C.F.R. § 412.62(f)(iii).  These definitions are consistent with congressional intent in that they are the same definitions of "urban" and "rural" contained in 42 U.S.C. § 1395ww(d)(2)(D), defining the terms for purposes of determining DRG prospective payment rates.  The statute defines an urban area as "an area within [an MSA] or within such similar area as the Secretary has recognized . . ." and a rural area as "any area outside such an area or similar area."  42 U.S.C. § 1395ww(d)(2)(D).

---

[2]     These payments are so-called because they "pass through," or are paid outside of, either the inpatient PPS or physician fee schedule methodologies.

[3]     Section 412.64(b)(3) provides, in part, that "[f]or discharges occurring on or after October 1, 2004, a hospital located in a rural county adjacent to one or more urban areas is deemed to be located in an urban area and receives the Federal payment amount for the urban area to which the greater number of workers in the county commute . . . ."  This provision is not applicable in the instant case.  Plaintiff does not assert, nor do the facts indicate, that it is located in a rural county adjacent to an urban area.

[4]     An "urban area" can also mean certain New England counties, as defined by the Executive Office of Management and Budget.  42 C.F.R. § 412.62(f)(ii).

4

V.    RURAL DESIGNATION OF HOSPITALS UNDER 42 U.S.C. § 1395(ww)(d)(8)(E)

In 1999, the Balanced Budget Refinement Act ("BBRA") added section 1886(d)(8)(E) to the Act.  Pub. L. No. 106-113, Title IV § 401, 113 Stat. 1501A-323, 1501A-369.  Section 1886(d)(8)(E), codified at 42 U.S.C. § 1395ww(d)(8)(E), provides as follows.

> (i) For purposes of this subsection, not later than 60 days after the receipt of an application . . . from a subsection (d) hospital described in clause (ii), the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located.

42 U.S.C. § 1395ww(d)(8)(E) (emphasis added).  An urban provider can only be deemed rural under the provision for certain limited purposes:  1) payment under the inpatient PPS ("[f]or purposes of this subsection"); 2) payment under the Medicare outpatient PPS; and 3) becoming a CAH.  See 42 U.S.C. § 1395ww(d)(8)(E); 42 U.S.C. § 1395l(t)(16)(A); 42 U.S.C. § 1395i-4(c)(2)(B).  None of these exceptions involve CRNA pass-through reimbursement.

VI.    THE ADMINISTRATIVE APPEALS PROCESS

The Medicare statute establishes the review mechanisms available to Medicare providers of services, including hospitals, that are dissatisfied with determinations of the amount of their Medicare reimbursement.  See 42 U.S.C. § 1395oo.  During the period at issue in this case, the Centers for Medicare & Medicaid Services ("CMS") contracted with fiscal intermediaries ("FIs") to review provider claims for reimbursement.  A provider dissatisfied with a Medicare reimbursement decision by an FI may appeal to the Provider Review Reimbursement Board ("PRRB"), an administrative tribunal within the Department of Health and Human Services established to hear Medicare reimbursement disputes.  See 42 U.S.C. § 1395oo(a).  The parties to such an appeal are the provider and the FI.  See 42 C.F.R. § 405.1843(a).  If jurisdictional

5

prerequisites are satisfied and the PRRB has the authority to decide the matter at issue, it may

hold a hearing and issue a decision.  See 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1835.

A decision of the PRRB is final unless the Secretary reverses, affirms or modifies the

Board's decision.  See 42 U.S.C. § 1395oo(f)(1).  The Secretary has delegated his authority to

review PRRB decisions to the Deputy Administrator of CMS.  A provider dissatisfied with a

decision of the PRRB or the Secretary (if the Secretary reviews the PRRB's decision) may seek

judicial review of that decision by filing a civil action within 60 days of the date that notice of

the final decision is received.  Id.; 42 C.F.R. § 405.1877(b).

## STATEMENT OF FACTS AND PRIOR PROCEEDINGS

Plaintiff, Bayside, a provider of services under the Medicare program, is a 14-bed

hospital located in Anahuac, Texas.  Amended Complaint ("Compl.") at ¶ 5, 26.  For purposes of

Medicare reimbursement, Plaintiff was designated a CAH on March 1, 2001.  Id. at ¶ 26; Admin.

Record ("A.R.") at 22.  It subsequently submitted a request for PPS exemption and for

reimbursement for reasonable costs associated with the provision of CRNA services it obtained

in its fiscal years 2002, 2003, and 2004.  Id. at ¶ 26.  On May 20, 2004, the FI issued a final

determination denying Plaintiff's request, concluding that "[w]hile the facility may have been

allowed to become a CAH, even though it is in fact in an MSA, by being redesignated under

State law or regulations (as described by Section 412.103(a)(2)), that has no bearing on whether

they are "rural" for purposes of § 412.113(c)(A)."  A.R. at 22, 204.  Plaintiff appealed the denial

to the PRRB on August 6, 2004.  A.R. at 204-05.  On May 10, 2007, the PRRB issued a decision

finding in favor of Plaintiff and requesting the FI to reimburse it for CRNA services via

reasonable cost pass-through payment.  A.R. at 17-25.  Noting that because CMS "consider(s)

CAHs to be 'hospitals' for the purposes of extending eligibility for CRNA pass-through

6

payment" and indicating that there was no apparent distinction made between rural CAHs and those deemed rural, the PRRB found that the term "rural" has the same meaning in the CRNA statute as it does in section 1886 of the Act. A.R. at 24.

CMS's Center for Medicare Management subsequently requested that the CMS Deputy Administrator reverse the PRRB's decision, advising that hospitals reclassified under 42 U.S.C. § 1395ww(d)(8)(E) are not considered rural for purposes of CRNA reasonable cost pass-through payment. A.R. at 12-13; see also A.R. at 4. On July 6, 2007, the Administrator issued a decision reversing the decision of the PRRB and concluding that Plaintiff was not entitled to Medicare pass-through payments for CRNA services since it is not physically located in a rural area as defined by 42 C.F.R. § 412.62(f). A.R. at 2-8. The Administrator's decision constitutes the final decision of the agency. See A.R. at 8.

## ARGUMENT

### I.    THIS ACTION IS GOVERNED BY A NARROW STANDARD OF JUDICIAL REVIEW

The Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., provides the standard of review applicable to Plaintiff's challenges to agency action. The APA standard of review, 5 U.S.C. § 706(2)(A), (E), provides that agency action, findings, and conclusions can be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 413-15 (1971), overruled on other grounds, Califano v. Sanders, 430 U.S. 99 (1977); Memorial Hospital/Adair County Health Center, Inc. v. Brown, 829 F.2d 111, 116-17 (D.C. Cir. 1987).

Courts have consistently held that the APA establishes a narrow standard of review. Under the arbitrary and capricious standard, an agency action may be invalidated only if it is "not rational and based on consideration of the relevant factors." F.C.C. v. National Citizens Committee for Broadcasting, 436 U.S. 775, 803 (1978). See also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). In determining whether any agency action is contrary to law, or arbitrary or capricious under the APA, the court must determine whether "'the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" Motor Vehicle Mfr. Ass'n v. State Farm Ins., 463 U.S. 29, 44 (1983).

A court's review under the substantial evidence standard is similarly narrow. The Supreme Court has "defined 'substantial evidence' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Consolo v. Federal Maritime Commission, 383 U.S. 607, 619-20 (1966) (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)). Substantial evidence is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Id. at 620 (citations omitted). In applying the substantial evidence standard, the reviewing court, may not "displace the . . . [Secretary's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951).

Given the narrowness of the APA standard of review, the reviewing court may not substitute its judgment for that of the agency.  Rather, the agency's decision is to be given deference.  American Medical Int'l, Inc. v. Secretary of Health, Educ. and Welfare, 466 F. Supp. 605, 611 (D.D.C. 1979), aff'd, 677 F.2d 118 (D.C. Cir. 1981).  The Secretary's interpretation of his rules is entitled to controlling weight, as long as it reasonably comports with the language and purpose of the regulation.  Thomas Jefferson University v. Shalala, 512 U.S. 504, 510-12 (1994); see also Barnhart v. Walton, 535 U.S. 212, 217-18 (2002) ("Courts grant an agency's interpretation of its own regulations considerable leeway.").  Under this test, courts "must defer to the Secretary's interpretation unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'"  Id.  Even when the regulation's text would be more consistent with other constructions, the agency's interpretation must control if it is reasonable and not "demonstrably irrational."  Id. at 515; Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 (1980).

Where the statute is silent on an issue, courts "must defer to the Secretary's interpretation unless it is unreasonable."  Kidney Center of Hollywood v. Shalala, 133 F.3d 78, 86-87 (D.C. Cir. 1998).  Absent legal error, the reviewing court must affirm the Secretary's decision, even if the court would have decided the case differently.  Stephenson v. Shalala, 87 F.3d 350, 354 (9th Cir. 1996).  Broad deference to the Secretary's interpretation of his own regulations is "all the more warranted when, as here, the regulation concerns 'a complex and highly technical regulatory program.'"  Thomas Jefferson, 512 U.S. at 512 (citing Pauley v. Bethenergy Mines, Inc., 501 U.S. 680, 697 (1991)).

Summary judgment is appropriate if the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue of material fact and that the moving party

9

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994).  In this case, there is no genuine issue of material fact.  As a matter of law, the Secretary's actions were clearly not arbitrary, capricious, or an abuse of discretion.  To the contrary, the Secretary acted reasonably and in full compliance with all statutory and regulatory requirements under any standard of review.  For these reasons, Plaintiff's Motion for Summary Judgment should be overruled and the Secretary's Motion for Summary Judgment should be granted.

II.    THE SECRETARY'S DENIAL OF PLAINTIFF'S REQUEST FOR PASS-THROUGH REIMBURSEMENT FOR ITS CRNA SERVICES WAS PROPER

The Secretary's decision at issue here was the only available outcome, given the statutory and regulatory framework in place for CRNA reimbursement.  Plaintiff has failed to demonstrate that the hospital is entitled to pass-through reimbursement for its CRNA services and the FI's refusal to reimburse Plaintiff for reasonable costs, providing reimbursement instead under the less-lucrative PPS fee schedule, was entirely lawful.

Plaintiff has already realized a very significant benefit in being acknowledged as "rural" for the purposes of 42 U.S.C. § 1395ww(d)(8)(E), even though the hospital has always been located in an MSA.  The statute ends there, however.  A fair reading of the statutory and regulatory authority in question does not extend that significant benefit further to allow pass-through reimbursement for CRNA services as well.

By law, an urban provider cannot be deemed rural for the purposes of CRNA reimbursement.  The Secretary properly interpreted and applied extant statutory and regulatory requirements in denying Plaintiff pass-through reimbursement for its CRNA services.  The plain

language of the statute is clear, but even if it were not, because the agency has broad discretion in administering its programs, the Secretary's decision here was clearly lawful.

A.     The Plain Language of the Statute Does not Support Pass-Through Reimbursement for CRNA Services

As the Secretary found in this case, and as noted above, Congress's clear intent was to only allow exceptions to the definition of rural in the three situations it clearly articulated, inpatient PPS payments under 42 U.S.C. § 1395(d), see 42 U.S.C. § 1395ww(d)(8)(E), outpatient payments, see 42 U.S.C. § 1395l(t)(16)(A), and for purposes of allowing hospitals to qualify as CAHs, see 42 U.S.C. § 1395i-4(c)(2)(B).  None of these three payment methodologies has anything to do with CRNA pass-through payment to CAHs, since payment to CAHs is governed by 42 U.S.C. § 1395f(1), fee schedule payment for CRNA services is governed by 42 U.S.C. § 1395w-4, and the provision authorizing pass-through CRNA payments is an uncodified section of the Family Support Act of 1988.  Where Congress "has directly spoken to the precise question at issue," a court need not examine the issue further because it "must give effect to the unambiguously expressed intent of Congress."  Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984).  A court need only move on to examine the agency's interpretation of a statute where the statute itself is ambiguous.  Id.  Congress has spoken here, and the Court need do no more than review the above-described statutory provisions in order to uphold the Secretary's decision here.

Under 42 U.S.C. § 1395ww(d)(8)(E), the Secretary must treat a hospital as being located in the rural area, as defined by section 1395ww(d)(2)(D), of the state in which the hospital is located.  This is clear because the statute explicitly provides that "[f]or purposes of this subsection . . . the Secretary shall treat the hospital as being located in the rural area (as defined

11

in paragraph (2)(D)) of the State in which the hospital is located." 42 U.S.C.

§ 1395ww(d)(8)(E)(i) (emphasis added). Paragraph (2)(D) defines a rural area as any area

outside an MSA. 42 U.S.C. § 1395ww(d)(2)(D). Again, the only exceptions under which an

urban provider can be deemed rural under this statute are for the purposes of: payment under the

inpatient PPS; payment under the outpatient PPS; and becoming a CAH. See 42 U.S.C.

§§ 1395ww(d)(8)(E), 1395l(t)(16)(A), 1320i-4(c)(2)(B). The statute simply does not provide

for an exception to this definition of "rural" for the purposes of payment for CRNA services.

       In addition, the Family Support Act of 1988 specifies that, in order to be entitled to

CRNA pass-through payment a hospital must be "located in a rural area (as defined for purposes

of section 1886(d))" of the Act. See Family Support Act of 1988, Pub. L. No. 100-485, § 608

(emphasis added). Plaintiff would have the Court believe that "the text of the CRNA pass-

through law in no way suggests that CRNA pass-through reimbursement is only available to

some rural hospitals." Pl.'s Mem. of Points and Authorities in Support of Pl.'s Mot. for Summ.

J. ("Pl.'s Mem.") at 30-31. However, the statute is clear on this issue. The plain language of the

statute is that the hospital must be located in a rural area; this indicates that the hospital must

actually be physically in that rural area, not merely "considered" rural or "deemed" rural, a very

important distinction. Thus, Plaintiff's argument in this regard is without merit.

    B.    The Secretary's Regulations Defining the Terms Urban and Rural for the
           Purposes of CRNA Pass-Through Reimbursement are Well Within the Broad
           Discretion Afforded the Secretary to Administer his Programs

       Even if the Court could find the Act ambiguous on this issue, the regulations on point

here are permissible interpretations of the Act. The Secretary promulgated regulations that

reasonably interpret Congressional intent with regard to CRNA pass-through reimbursement.

The regulations provide that reimbursement for CRNA services is permissible via pass-through

or reasonable cost payment only where, inter alia, the hospital or CAH is located in a rural area as defined in 42 C.F.R. § 412.62(f).  See 42 C.F.R. § 412.113(c)(2)(i)(A) (emphasis added). Section 412.62(f) defines an urban area as an MSA and a rural area as "any area outside an urban area."  Here, the agency clearly has relied on the factors which Congress intended it to consider, namely that a rural provider is one located in a rural area, with only three exceptions available in any event, inapplicable here, which are specifically delineated in the Act.  See Motor Vehicle Mfr. Ass'n, 463 U.S. at 44.  Since the statute's subsection, by its plain meaning, lays out the sole purposes for which an urban hospital may be deemed rural with particularity, and does not allow such a provider to be deemed rural for the purposes of CRNA pass-through reimbursement, there can be no doubt that the Secretary's regulation defining a rural area to exclude urban providers for the purposes of CRNA pass-through payment was proper.

Even if the statutory meaning was not plain on its face, however, this Court and others have repeatedly reinforced the Secretary's broad discretion to administer his programs.  See Kidney Center of Hollywood, 133 F.3d at 86-87 (noting that where the statute is silent on an issue, courts "must defer to the Secretary's interpretation unless it is unreasonable"); Thomas Jefferson, 512 U.S. at 512 (finding the broad deference to the Secretary's interpretation of his own regulations "all the more warranted when, as here, the regulation concerns 'a complex and highly technical regulatory program'"); Stephenson, 87 F.3d at 354 (concluding that, absent legal error, the reviewing court must affirm the Secretary's decision even if the court would have decided differently).

For instance, Plaintiff argues that the reference in section 608 of the Family Support Act of 1988 to the definition of "rural" in section 1886(d),  42 U.S.C. § 1395ww(d), incorporates 42 U.S.C. § 1395ww(d)(8)(E), and thus makes CRNA pass-through payments available to urban

hospitals that are deemed rural under section 1395ww(d)(8)(E). But the Secretary has a narrower, and at least as reasonable, reading of the passage. He reads the definition of rural in section 1395ww(d)(2)(D), which defines a rural area as an area not located within an MSA. This reading is consistent with section 608 of the Family Support Act of 1988 and also respects congressional intent to limit the effect of section 1395ww(d)(8)(E) to the three circumstances Congress actually identified. Therefore, even if the statute is ambiguous in this regard, the Secretary's reading is at least permissible, and his regulation allowing CRNA pass-through payment only for rural hospitals as defined in 42 C.F.R. § 412.62(f) (in any area outside an urban area) is perfectly in keeping with Congress's intent as reflected in the Act. In view of this, the Secretary's decision denying the pass-through reimbursement Plaintiff seeks here was appropriate. Because the Secretary's interpretation must control if it is reasonable and not demonstrably irrational, the Court should not disturb the Secretary's determination in this case, even if it believes the statute might be ambiguous. See Thomas Jefferson, 512 U.S. at 515

      C.     Plaintiff has Failed to Advance any Argument Sufficient to Overcome the Broad Deference the Secretary's Determination is Afforded Here

      1.     Plaintiff contends that the Secretary's decision is inconsistent with the plain language of the controlling statute and the Secretary's own comments at the promulgation of the CRNA pass-through reimbursement regulation. Pl.'s Mem. at 25-26. For these reasons, he apparently urges that the Secretary's interpretation of the Act as well as its implementing regulations are not entitled to substantial deference. See id. at 25-28. Plaintiff is mistaken.

      Plaintiff asserts that the Secretary's intent to define "rural" according to the definition contained in section 1886(d) of the Act was articulated in the final rule implementing the CRNA pass-through legislation, 42 C.F.R. § 412.113(c)(2). Pl.'s Mem. at 27. The passage notes:

> [A] rural area would be defined in the same way it is defined for purposes of the inpatient hospital prospective payment system (in accordance with section 1886(d) of the Act). The definition is set forth at § 412.62(f) . . . .

57 Fed. Reg. 33882; Pl.'s Mem. at 27.  While Plaintiff relies on this language to support its contention that the 1886(d)(8)(E) definition of "rural" is controlling here, Plaintiff fails to examine the entirety of the statute.  In order to fully understand a statute, a court must examine the statute in its entirety, not merely consider a cherry-picked clause from one section or another which supports its proponent's cause, as Plaintiff quite correctly observes.  See U.S. v. Pacheco, 225 F.3d 148, 154 (2d Cir. 2000) ("The 'whole act' rule of statutory construction exhorts us to read a section of a statute not 'in isolation from the context of the whole Act' but to 'look to the provisions of the whole law, and to its object and policy.'"); Pl.'s Mem. at 24-25.

Here, Plaintiff fails to acknowledge that the definition in section 412.62(f) is consistent with section 1886(d) of the Act– 1886(d)(2)(D), which defines "rural" as any area outside an urban area.  The law is clear on the principle that the Secretary's interpretation of his rules is entitled to controlling weight, as long as it reasonably comports with the language and purpose of the regulation.  Thomas Jefferson, 512 U.S. at 510-12; Barnhart, 535 U.S. at 217-18 (affording "considerable leeway"); American Medical, 466 F. Supp. at 611.  A court "must defer to the Secretary's interpretation unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'"  Thomas Jefferson, 512 U.S. at 510-12; Ford Motor, 444 U.S. at 565 (the agency's interpretation must control if it is reasonable and not "demonstrably irrational").  No alternate reading is compelled by the plain language of the statute; in fact, the statute and regulations are entirely consistent with one another.  Thus, the agency action here is neither arbitrary nor capricious and is entitled to substantial deference.

15

Plaintiff apparently also asserts that the Secretary indicated at the time he promulgated 42 C.F.R § 412.113(c)(2), the rule implementing CRNA pass-through reimbursement, that his intent was to provide eligibility for CRNA pass-through reimbursement for CAHs located in MSAs. Pl.'s Mem. at 27. This is incorrect. As Plaintiff observes, in the preamble to the final rule, the Secretary noted that "CAHs are by definition limited-service facilities located in rural areas . . . ." 66 Fed. Reg. 39922; A.R. at 129. This statement is of little moment, however, since under the Secretary's view section 1395ww(d)(8)(E) does not define "rural" for the purposes of CRNA pass-through reimbursement, but rather pertains to "reclassification from an urban to a rural area," the overarching subject of the whole subsection 1886(d)(8). See 42 U.S.C. § 1395ww(d)(8)(A). Therefore, the preamble to the rule does not compel any alternate reading as the Plaintiff contends. Instead, it supports the Secretary's view that pass-through treatment is only available to CAHs actually "located" in rural areas.

2.     Plaintiff contends that 42 C.F.R. § 412.62(f), which defines rural as "any area outside an urban area," does not overcome the plain language of the CRNA pass-through law, the definition of "rural" in section 1395ww(d), and Congressional intent. Pl.'s Mem. at 19. It urges that the definition of the term rural was "updated" in 1999 by the BBRA to include hospitals "located in a rural census tract of [an MSA]." Id. at 19-20. As previously discussed, however, in order to fully understand a statute, a court must examine the statute in its entirety, and here again, an examination of the Act in its entirety reveals Congress's clear intent to limit the effect of section 1395ww(d)(8)(E), added by the BBRA , to the three narrow exceptions actually articulated elsewhere in the Act, which do not include payment for CRNA services. 42 U.S.C. § 1395ww(d)(8)(E); 42 U.S.C. § 1395l(t)(16)(A); 42 U.S.C. § 1395i-4(c)(2)(B).

16

Indeed, Congress's intent in enacting section 608 of the Family Support Act of 1988, which continued pass-through reimbursement for CRNA services to hospitals located in rural areas, could not have been to adopt any definition of a rural area contained in section 1395ww(d)(8)(E), as Plaintiff urges, because section 1395ww(d)(8)(E) did not even exist in 1988. See Pl's Mem. at 19-20. As Plaintiff concedes, that clause was added in 1999. Pl.'s Mem. at 19. "Section [1395ww](d)(2)(D) contains the original, basic definition of 'rural,'" Plaintiff aptly points out, and that section defines a rural area narrowly as any area outside of an urban area. Id.

Plaintiff contends that the Secretary has already conceded before the PRRB that the hospital meets the definition of "rural" under 42 U.S.C. § 1395ww(d). Id. at 20. This statement is misleading. The Secretary agreed before the PRRB only that Plaintiff had appropriately relied on section 1395ww(d)(8)(E) for purposes of qualifying as a CAH, which is not surprising since that is one of the three purposes Congress intended section 1395ww(d)(8)(E) to serve. But, as shown herein, qualifying for CRNA pass-through payments is not one of those purposes. Thus, the Secretary's purported concession is of no moment. Plaintiff asserts that "it is absurd to conclude" that the hospital is not rural for the purposes of CRNA pass-through reimbursement and that the Secretary has already admitted that there is no such thing as an urban CAH at the underlying hearing before the PRRB. Id. at 21. Indeed, under the definition of "urban" for CAH purposes, there may be no such thing as an "urban" CAH. See 42 U.S.C. § 1395i-4(c)(2)(B) (carving out one of the three exceptions under which an urban provider can be deemed rural for the purposes of section 1395ww(d)(8)(E), that is for the purpose of becoming a CAH). However, as explained herein, where CRNA pass-through reimbursement is concerned, there is clearly such an animal as an "urban" CAH, and Plaintiff is one. The error Plaintiff repeatedly

17

makes is believing that because it was able to use section 1395ww(d)(8)(E) for one purpose, it must necessarily be able to use it for other, or indeed all, purposes. The statute simply does not support such an expansive reading.

3.    Plaintiff urges the Court to rely on the legislative history of the BBRA of 1999 to conclude that Congress's intent was to extend the use of "rural" designation under section 1395ww(d)(8)(E) to encompass "all categories and designations available to rural hospitals including sole community, Medicare dependent, critical access, and referral centers." Pl.'s Mem. at 21-25; see also A.R. at 121. This interpretation disregards the fact that, as noted supra, Congress's intent in continuing pass-through reimbursement for CRNA services to hospitals located in rural areas could not have been to adopt the definition of a rural area under section 1395ww(d)(8)(E), because that section, enacted in 1999, was not in existence in 1988 when the Family Support Act continuing CRNA pass-through reimbursement was enacted.

Moreover, if Plaintiff's assertion were true, one of Congress's explicitly enumerated uses of section 1395ww(d)(8)(E), that of becoming a CAH under section 1395i-4(c)(2)(B), would be unnecessary because this new definition, by its very terms, would apply to all designations, including becoming a CAH. Congress specifically provided to the contrary under section 1395i-4(c)(2)(B) where it specified that one exception to the definition of rural, among others, is for the purposes of becoming a CAH. See 42 U.S.C. § 1395i-4(c)(2)(B). In fact, other than CAHs, the other designations mentioned in the legislative history – Medicare dependent hospitals, sole community hospitals, and rural referral centers – are all paid under section 1395ww(d). See 42 U.S.C. § 1395ww(d)(5)(C), (D), and (G). Therefore, the legislative history is completely consistent with the Secretary's view that section 1395ww(d)(8)(E) applies only for the limited purposes of inpatient hospital payment under 42 U.S.C. § 1395ww(d), outpatient hospital

18

payment under 42 U.S.C. § 1395l(t), and qualifying for CAH status under 42 U.S.C. § 1395i-4(c).  Any other reading would render the explicit congressional directions regarding the uses of section 1395ww(d)(8)(E) meaningless.

4.      Plaintiff also alleges that 42 C.F.R. § 412.62(f) is invalid as contrary to the statute.  Pl.'s Mem. at 28-30.  It argues that Congress has defined the term "rural" to include areas "deemed rural" and, hence, the Secretary's interpretation of that term under 42 C.F.R. § 412.62(f) is owed less deference.  See Rowan Companies, Inc. v. U.S., 452 U.S. 247, 253 (1981); Pl.'s Mem. at 28-30.  As explained herein, however, section 1395ww(d)(8)(E), added in 1999, pertains to "reclassifi[cation] from an urban to a rural area."  By contrast, as noted above, the Secretary locates the definition of "rural" in section 1395ww(d)(2)(D).  The Secretary's regulatory definition of the term "rural" in 42 C.F.R. § 412.62(f) (which is referenced by 42 C.F.R. § 412.113(c)(2)(i)(A) allowing CRNA pass-through payment for CAHs located in certain rural areas) mirrors the statutory definition as codified in section 1395ww(d)(2)(D)– that a rural area is any area outside an urban area.  Therefore, the Secretary's regulation here is not inconsistent with the governing statute.

5..      Plaintiff contends that the Secretary has treated similarly situated hospitals differently and that, therefore, its decision in this case is arbitrary and capricious and, in addition, that the Secretary's action in denying CRNA pass-through reimbursement in this case while granting the reimbursement in another violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.  Pl.'s Mem. at 32.  Indeed, the Secretary recently became aware of a contrary decision reached by an FI in a similar matter, regarding Mayers Memorial Hospital.  There, an FI erroneously determined that a CAH was entitled to CRNA pass-through payment where the facility was located in an MSA.  See Pl.'s Mem., App. A.  On March 20,

19

2008, however, the FI reversed its earlier decision, concluding that "[a]fter further review and consultation with CMS, we believe those approvals were made in error and are not consistent with the correct interpretation of the relevant regulations per 42 C.F.R. [§ ] 412.113." See Ex. A.

At any rate, conflicting direction from the agency does not conclusively establish an inconsistency in the Secretary's policy-making position. See, e.g., Washington Hosp. Ctr. v. Bowen, 795 F.2d 139, 144 n. 5 (D.C. Cir. 1986) (conflicting regulations need to be reconciled or rejected but do not represent a reversal in the Secretary's interpretation); St. Francis Hosp. v. Heckler, 714 F.2d 872, 874 (7th Cir. 1983) (deference to the Secretary's decision was appropriate where the Secretary reversed the PRRB). Similarly, in Thomas Jefferson, the Court refused to give less deference to an allegedly inconsistent policy, which was expressed in an internal operating memo, and an allegedly inconsistent FI decision, finding that "even if petitioner could show that such allowance was approved by– or even brought to the attention of– the Secretary or her designate at the time, [t]he Secretary is not estopped from changing a view she believes to have been grounded upon a mistaken legal interpretation." 512 U.S. at 515-17 (quoting Good Samaritan Hospital v. Shalala, 508 U.S. 402, 417 (1993)); see also Homemakers N. Shore v. Bowen, 832 F.2d 408, 413 (7th Cir. 1987) (holding that the fact that the Secretary's "minions" have expressed differing views on an issue does not make the Secretary's ultimate policy on that issue invalid and merely reflects that "the Department of Health and Human Services is a mammoth bureaucracy with seemingly endless layers of internal review, and that reasonable people disagree" about the meaning of a regulation). The same holds true in this case.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court grant the Secretary's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

Dated: June 16, 2008                          Respectfully submitted,


                                       ___/s/_____
                                       JEFFREY A. TAYLOR
                                       D.C. Bar No. 498610
                                       United States Attorney


                                       ___/s/_____
                                       CHRISTOPHER B. HARWOOD
                                       Assistant United States Attorney
                                       N.Y. Reg. No. 4202982
                                       United States Attorney's Office
                                       Civil Division
                                       J udiciary Center Building
                                       555 4th Street, N.W.
                                       Washington, D.C. 20530
                                       (202) 307-0372


                                       _____/s/_____
                                       LINDA KEYSER
                                       Attorney
                                       U.S. Department of Health and Human Services
                                       Office of the General Counsel
                                       Centers for Medicare & Medicaid Services Division
                                       Room 5327D, Cohen Building
                                       330 Independence Avenue, S.W.
                                       Washington, D.C. 20201
                                       202-205-8779
                                       Facsimile: (202) 401-1405

                                    Counsel for Defendant

OF COUNSEL:

JAMES C. STANSEL
Acting General Counsel

JANICE HOFFMAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General
     Counsel for Litigation

United States Department of
     Health and Human Services



**National Government Services.**

National Government Services, Inc.
PO Box 7143
Indianapolis, Indiana 46207-7143
*A CMS Contracted Agent*

# Medicare

MAR 2 0 2008

Ms. Katherine Ann Campbell, CEO
Mayers Memorial Hospital
43563 Hwy 299 East
P.O. Box 459
Fall River Mill, CA  96028

**Subject:**     **CRNA Reasonable Cost Reimbursement**
              **Provider No.:**       **05-1305**

Dear Ms. Campbell:

This is a follow-up to our letter dated December 27, 2007 regarding your application for cost based reimbursement for CRNA services consistent with 42 CFR 412.113.

As you know, in our letter of December 27, we denied your request for CRNA cost based reimbursement for calendar year 2008.  This determination was based on the fact that Mayers Memorial Hospital is located in an urban area as designated in the Federal Register dated 08/22/07.

The purpose of this letter is to address our prior year approvals of CRNA cost based services for your facility.  After further review and consultation with CMS, we believe those approvals were made in error and are not consistent with a correct interpretation of the relevant regulations per 42 CFR 412.113.

According to our records, your facility received cost based CRNA approval for calendar year 2003, calendar year 2006, and calendar year 2007.  As such, the below cost reporting periods appear to be impacted by this issue:

| Fiscal Year End | CRNA Cost Claimed | Status |
|---|---|---|
| 06/30/03 | No | NPR dated 09/26/06 |
| 06/30/04 | No | NPR dated 09/26/06 |
| 06/30/06 | Yes | Open |
| 06/30/07 | Yes | Open |



*CMS*
CENTERS for MEDICARE & MEDICAID SERVICES

Ms. Katherine Ann Campbell, CEO
Page 2

MAR 2 0 2008

Based on the above information, it appears that there is no cost reporting issue at hand for your cost reporting periods ending 06/30/03 and 06/30/04. Your facility did not claim cost based reimbursement for CRNA services for these years. A review of the PS&R for these periods also shows that you did not bill Medicare for CRNA professional charges (Revenue Code 964).

Our records show that you have claimed CRNA cost based reimbursement for your cost reporting periods ending 06/30/06 and 06/30/07. These cost reports are currently open and have not been final settled. Based on our position that your facility does not qualify for CRNA cost based payment, these cost reports should be adjusted to remove the salary and fringe benefit costs claimed for CRNA services. Consistent with CMS Pub. 15-2, Section 3613, this adjustment should be made on Wkst A-8 of the Medicare cost report (Form 2552-96).

Finally, our review of the PS&R for your 06/30/06 and 06/30/07 cost reporting periods shows that you billed Medicare for approximately $6,885 in CRNA professional charges (Code 964). We have instructed our claims area to systemically adjust the affected claims to remove the Code 964 professional charges from these claims. You will see these adjusted claims on your Medicare Remittance Advice(s) as soon as our workload permits these adjustments to be made. Consistent with CMS Pub. 100-04, Chapter 12, you may bill the Part B Carrier for these services and receive fee schedule payment.

Please note that we are coordinating our findings related to this matter with your current audit manager so that the impacted cost reports can be adjusted during your regularly scheduled desk review.

If you have questions regarding this matter, please contact Paul Bouganim at (805) 367-0596 or me at (805) 367-0731.

Sincerely,

Evelyn Rey-Hipolito, Manager
Medicare Audit & Reimbursement

ERH/pb

cc:     Ellen Corwin, Audit Manager, NGS

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BAYSIDE COMMUNITY HOSPITAL | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CV-01562 (EGS) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary, | ) | |
| U.S. Department of Health | ) | |
| and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Defendant, Michael O. Leavitt, the Secretary of Health and Human Services, hereby responds to Plaintiff's Statement of Material Facts As To Which There Is No Genuine Issue ("Plaintiff's Statement") in accordance with Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7(h).

Defendant avers that, to the extent that the parties disagree as to the facts underlying the present action, those disagreements are not material. All material facts are those found in the record, and under the Medicare statute, 42 U.S.C. § 1395oo(f)(1), and the Administrative Procedure Act, 5 U.S.C. § 706(2), the facts found by the agency are reviewed to determine whether they are unsupported by substantial evidence taken as a whole. Nevertheless, responding specifically to the numbered paragraphs of Plaintiff's Statement and using the same paragraph numbering, Defendant responds to the following specific assertions in Plaintiff's Statement:

1. Not disputed.

2.  Disputed as to the suggestion that Plaintiff is treated as a rural hospital for all purposes, including pass-through reimbursement for certified registered nurse anesthetists. Administrative Record ("A.R.") at 2-9.

3-6.  Not disputed.

7.  Disputed.  Critical Access Hospitals that are not actually located in rural areas are not eligible for Certified Registered Nurse Anesthetist pass-through payments.  A.R. at 2-9.

8-9.  Not disputed.

Dated:  June 16, 2008                         Respectfully submitted,


                                              ___/s/_____
                                              JEFFREY A. TAYLOR
                                              D.C. Bar No. 498610
                                              United States Attorney


                                              ___/s/_____
                                              CHRISTOPHER B. HARWOOD
                                              Assistant United States Attorney
                                              N.Y. Reg. No. 4202982
                                              United States Attorney's Office
                                              Civil Division
                                              J udiciary Center Building
                                              555 4th Street, N.W.
                                              Washington, D.C. 20530
                                              (202) 307-0372


                                              _____/s/_____
                                              LINDA KEYSER
                                              Attorney

2

U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare & Medicaid Services Division
Room 5327D, Cohen Building
330 Independence Avenue, S.W.
Washington, D.C. 20201
202-205-8779
Facsimile: (202) 401-1405

Counsel for Defendant

OF COUNSEL:

JAMES C. STANSEL
Acting General Counsel

JANICE HOFFMAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General
    Counsel for Litigation

United States Department of
    Health and Human Services

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BAYSIDE COMMUNITY HOSPITAL | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CV-01562 (EGS) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary, | ) | |
| U.S. Department of Health | ) | |
| and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>ORDER</u>

Upon consideration of the parties' cross-motions for summary judgment, oppositions and replies thereto, and the entire record herein, it is this ____ day of _____, 2008,

ORDERED, that Plaintiff's Motion for Summary Judgment be, and hereby is, DENIED; and it is further

ORDERED, that Defendant's Motion for Summary Judgment be, and hereby is, GRANTED; and it is further

ORDERED, that judgment be, and hereby is, entered in favor of Defendant and against Plaintiff.

_____
EMMET G. SULLIVAN
United States District Judge