## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BAYSIDE COMMUNITY HOSPITAL** § | |
| **200 Hospital Drive** § | |
| **Anahuac, Texas 77574** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **v.** § | **File No.  1:07-CV-01562 (EGS)** |
| § | |
| **MICHAEL O. LEAVITT, IN HIS** § | |
| **CAPACITY AS SECRETARY OF THE** § | |
| **DEPARTMENT OF HEALTH AND** § | |
| **HUMAN SERVICES,** § | |
| **200 Independence Avenue, S.W.** § | |
| **Washington, D.C. 20201** § | |
| § | |
| **Defendant.** § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT
## AND REPLY IN SUPPORT OF PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

*Page*

I.     INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ...................................................................................................... 5

      A.      The Secretary's Statutory Arguments Are Misdirected......................................... 5

            1.      The Secretary's Narrow Application of Section 1886(d)(8)(E) Ignores Congressional Intent .................................................... 5

            2.      The Secretary's Proposed Interpretation of the CRNA Pass-Through Law Ignores Critical Language in the Legislation and Exposes His Double Standard.................................................. 8

      B.      The Secretary's Regulations Defining the Terms Urban and Rural for the Purposes of CRNA Pass-Through Reimbursement Are Contrary to the Plain Language and Congressional Intent of Section 1886(d).......................... 12

      C.      The Secretary's Memo Underscores the Arbitrary and Capricious Nature of His Application of the CRNA Pass-Through Law ............................. 14

      D.      The Court's Path Is Dictated by the Plain Language of the Statute.................... 18

III.     Conclusion ....................................................................................................... 19

# I.    INTRODUCTION

This case involves a single, simple question:

> Is the Plaintiff, Bayside Community Hospital ("Hospital"), "located in a rural area
> (as defined for purposes of section 1886(d) of the Social Security Act)?"[1]

This is the standard adopted by Congress to determine whether or not a hospital qualifies for reasonable cost reimbursement for the services of certified registered nurse anesthetists ("CRNAs") that it employs to provide anesthesia services for the hospital's patients. Id.[2] If the Hospital is "rural" under this standard it is entitled to CRNA pass-through reimbursement. If it is urban, it is not. The standard set forth in the legislation for making this determination is clear, and the Defendant, Secretary of Health and Human Services ("Secretary"), and this Court "must give effect to the unambiguously expressed intent of Congress." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., et al., 467 U.S. 837, 843 (1984) ("Chevron").

As for the determination of whether or not the Hospital meets this standard (i.e., "is located in a rural area as defined for purposes of section 1886(d) of the Social Security Act"), the

---

[1]  See Family Support Act of 1988, Pub. L. No. 100-485, § 608(c), 102 Stat. 2343, 2412, Administrative Record ("A.R.") at 125-27. The Family Support Act added subsection (k) to section 9320 of the Omnibus Budget Reconciliation Act of 1986 (Pub. L. No. 99-509), thereby continuing CRNA pass-through reimbursement to hospitals located in rural areas (as defined for purposes of section 1886(d)). Pass-through reimbursement for CRNA services at rural hospitals was extended indefinitely by section 6132 of the Omnibus Budget Reconciliation Act of 1989 (Pub. L. No. 101-239 § 6132). These legislative enactments are together referred to herein as the "CRNA pass-through law."

[2]  This special payment (often referred to as CRNA pass-through reimbursement or CRNA pass-through payment) was adopted by Congress in order to provide small, rural hospitals with low surgical volumes with relief from the difficulties they face in attracting CRNAs to furnish needed anesthesia services. See 66 Fed. Reg. 39,827, 39,922 (Aug. 1, 2001). For a more detailed discussion on the CRNA pass-through payment and its historical background, see Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Memo") at 5-7.

answer is equally clear.  Section 1886(d)(8)(E) of the Social Security Act ("Act") expressly provides that:

> (i) For <u>purposes of this subsection</u> [i.e. subsection (d) of section 1886], not later than 60 days after the receipt of an application…from a subsection (d) hospital described in clause (ii), <u>the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D))</u> of the State in which the hospital is located.

42 U.S.C. § 1395ww(d)(8)(E), A.R. at 116.[3]  It is undisputed that the Hospital met the requirements of "clause (ii)" (i.e., section 1886(d)(8)(E)(ii)), and so it necessarily follows from the language of the statute that the Secretary must treat the Hospital as being located in a rural area "for purposes of subsection (d)."  <u>Id.</u>[4]  Again, the meaning of the statute is plain.  Indeed, the Secretary himself specifically determined that the Hospital was required to be treated as being located in a rural area for purposes of section 1886(d) of the Act, as such a determination

---

[3]  For ease of reference, citations to sections of the Act shall be used (rather than citations to the codified version) to refer to the operative statutory provisions discussed in the narrative portions of this Response to Defendant's Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Reply").  Citations to the codified version will be provided where different provisions of the Act are initially referenced.

[4]  In paragraph 2 of the Defendant's Response to Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue ("Secretary's Fact Response"), the Secretary disputes the Plaintiff's statement that it "was treated as a rural hospital by virtue of meeting the statutory requirements set forth in Section 1886(d)(8)(E) of the Social Security Act (42 U.S.C. § 1395ww(d)(8)(E))…"  The Secretary states that it disputes "the suggestion that Plaintiff is treated as a rural hospital for all purposes, including pass-through reimbursement for certified registered nurse anesthetists."  Secretary's Fact Response at paragraph 2.  The Hospital contends that the Secretary's stated dispute is not a "factual dispute," but rather, simply a reiteration of the legal issue at the heart of this appeal: whether the provider qualifies for CRNA pass-through reimbursement.  There is nothing incorrect about the Hospital's factual statement at paragraph 2 of the Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue, as the language of section 1886(d)(8)(E) of the Act clearly states that "the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located," and there is no dispute that the Hospital qualified for critical access hospital status as a result of the application of this statutory provision.  42 U.S.C. § 1395ww(d)(8)(E), A.R. at 95, 116.  The Hospital has responded to other factual statements made by the Secretary in the Defendant's Statement of Material Facts as to Which There is No Genuine Issue, in Plaintiff's Rule 7(h) Statement of Genuine Issues of Fact as to Which it is Contended There Exists a Genuine Issue Necessary to be Litigated, filed concurrently herewith.

was necessary for the Hospital to obtain its status as a "critical access hospital" under the Medicare program. <u>See</u> A.R. at 39, 94-95, 150.[5] Thus, drawing from <u>the plain language of the relevant legislation</u>, the answer to the question at the heart of the case is that the Hospital is located in a rural area as defined for purposes of section 1886(d) and is thereby entitled to CRNA pass-through payment. That is "the end of the matter." <u>See</u> <u>Chevron</u>, 467 U.S. at 843.

In his Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Secretary's Memo"), the Secretary pleads for deference from this Court in order to support his decision below that the Hospital is located in an urban area "for purposes of section 1886(d)" under the CRNA pass-through law, while <u>at the same time</u> located in a rural area "for purposes of subsection 1886(d)" under the statute governing critical access hospitals. Even if this inconsistent treatment could be rationalized (which it cannot), the Secretary is entitled to <u>no deference</u> from this Court, as the intent of Congress is clear. <u>Id.</u>

Moreover, under even modest scrutiny it is apparent that the Secretary's argued "interpretation" of the relevant statutes is little more than an after-the-fact justification for the erroneous decision made by his fiscal intermediary that originally denied the CRNA pass-through payment to the Hospital. The Secretary's <u>own words</u> at the time he adopted rules relating to <u>both</u> the CRNA pass-through payment and the application of such payment to critical access hospitals undermine his arguments and highlight the arbitrary nature of his decision in this case.

---

[5]    Critical access hospitals (like the Plaintiff Hospital) are small, rural hospitals that must meet certain statutory requirements (including a rural location requirement) in order to receive special reasonable cost reimbursement from the Medicare program in recognition of their remote location and importance to Medicare beneficiaries in rural communities. For a more detailed description of the Medicare critical access hospital program, see Plaintiff's Memo at 7-11.

Adding a draconian twist to his litigation defense, the Secretary retroactively reversed a separate fiscal intermediary's decision to <u>allow</u> the CRNA pass-through reimbursement to a similarly situated hospital in California. Secretary's Memo at 19-20. The Secretary's reversal of this "erroneous" California decision was issued on March 20, 2008, <u>after</u> this litigation had been filed and <u>after</u> the Hospital had notified the Secretary's counsel of the inconsistent treatment of CRNA pass-through payments. Rather than carefully analyze the inconsistencies of his agency's position and apply the CRNA pass-through law to all critical access hospitals in a logical manner consistent with the plain language of the statutes and the determination of his own Provider Reimbursement Review Board ("PRRB"),[6] the Secretary instead chose to fortify his litigation position by asserting an after-the-fact "consistency." In doing so, the Secretary has only made himself consistently wrong, and now another small, critical access hospital will have to engage in a protracted struggle like the Hospital in order to obtain the Congressionally mandated reimbursement needed to attract CRNAs to its remote location to provide anesthesia services to its Medicare beneficiaries.

In the end, the Secretary's legal arguments must fail because Congress has spoken directly on this matter. The Court need not consider the Secretary's recently adopted "consistency" and proposed interpretation because the plain meaning of the legislation at issue and the Congressional intent behind it are clear. Under the plain language of the law, the Hospital is rural "for purposes of Section 1886(d)" and is therefore entitled to CRNA pass-through reimbursement.

---

[6] The Secretary's PRRB found that denying the Hospitals CRNA pass-through reimbursement "would frustrate the intent of Congress as well as that expressed by [the Secretary] in its own regulations." <u>See</u> A.R. at 24.

## II.    ARGUMENT

### A.    THE SECRETARY'S STATUTORY ARGUMENTS ARE MISDIRECTED

The Secretary urges the Court to adopt a construction of section 1886(d)(8)(E) of the Act that would limit its mandate that the "Secretary shall treat as rural" certain qualifying urban hospitals to only three situations – (1) inpatient prospective payment system ("PPS") payments, (2) outpatient payments, and (3) critical access hospital qualifications.  See Secretary's Memo at 5, 11-12.  The fundamental flaw in the Secretary's argument is that it begins with the wrong question.  The Secretary's focus is directed at the application of section 1886(d)(8)(E) of the Act to hospitals in a variety of contexts based on specific citations to section 1886(d)(8)(E) contained in other statutory provisions.  However, the question in this case is not whether the Hospital met the requirements for being treated as rural in one of these three contexts.[7]  Rather, the relevant question in this case is whether the provider is entitled to CRNA pass-through reimbursement.  Therefore, the logical starting point is with the CRNA pass-through law.  As discussed below, by starting with the wrong question, the Secretary ultimately ends up with the wrong answer.

### 1.    The Secretary's Narrow Application of Section 1886(d)(8)(E) Ignores Congressional Intent

Ignoring the express declarations of Congress, the Secretary's Memo urges that it was Congress's "clear intent" that hospitals "redesignated" as rural pursuant to section 1886(d)(8)(E) are not eligible for CRNA pass-through reimbursement.  There are numerous errors in this argument.  The Secretary "reverse engineers" his argument by conducting a scavenger hunt within the Act to find other provisions specifically referencing section 1886(d)(8)(E), and then makes the unsubstantiated leap to conclude that these provisions must be the only ones in the Act

---

[7]    Indeed, it is undisputed in the A.R. that the Secretary did "treat as rural" the Hospital by virtue of the mandate in section 1886(d)(8)(E) of the Act for purposes of qualifying the Hospital to become a critical access hospital.  See A.R. at 95, 150; see also Defendant's Statement of Material Facts as to Which There is No Genuine Issue.

affected by the requirements of section 1886(d)(8)(E).  The Hospital does not dispute that section 1886(d)(8)(E) is incorporated by the sections of the Act referenced by the Secretary and clearly applies to those sections, but that is not the question before this Court.

The question before this Court is whether the hospital is located in a rural area "as defined for purposes of section 1886(d)" of the Act under the CRNA pass-through law.  Indeed, the Secretary must concede in his Memo that the mandate contained in section 1886(d)(8)(E) to treat qualifying urban hospitals as being defined as rural applies to the inpatient PPS payment (i.e., for purposes of section 1886(d) of the Act).  He cannot then logically deny that the same mandate applies to CRNA pass-though payments <u>because the CRNA pass-through law uses the same definition of rural as that used for the inpatient PPS payment</u>.

Setting aside his flawed logic, the Secretary is also flatly wrong to argue that it was Congress's intent to limit the application of section 1886(d)(8)(E) to the three specified contexts he identifies in the Secretary's Memo because <u>Congressional statements indicate the exact opposite intent</u>.  When it passed the Balanced Budget Refinement Act of 1999 containing the amendment to the Act that would add section 1886(d)(8)(E), Congress stated that "hospitals qualifying under this section <u>shall be eligible to qualify for **all**</u> categories and designations available to rural hospitals…"  <u>See</u> H.R. Conf. Rep. No 106-479, at Title IV § 401 (1999) (emphasis added), A.R. at 121.  Such a broad statement would not have been made were it Congress's desire to have a limiting effect on the application of section 1886(d)(8)(E).  As the Fifth Circuit has held, "in construing any statute, a court's primary goal is to give effect to the legislature's intent."  <u>In re Bouchie</u>, 324 F.3d 780, 785 (5th Cir. 2003).  The Supreme Court has also advised that, when it appears from a statute <u>or its legislative history</u> that an agency's

interpretation "is not one that Congress would have sanctioned," a court should not defer to the agency's interpretation.  Chevron, 467 U.S. at 845.

Next, the Secretary argues that it could not have been Congress's intent to have CRNA pass-through payments apply to CAHs reclassified as rural because section 1886(d)(8)(E) of the Act was adopted after the CRNA pass-through law.  Secretary's Memo at 18.  The Secretary's inverted rationale fails to recognize that the question is not whether the CRNA pass-through legislation contemplated hospitals deemed rural under Section 1886(d)(8)(E) because, as was explained in the historical discussion in the Plaintiff's Memo, the CRNA pass-through legislation was indefinitely extended in 1988, while section 1886(d)(8)(E) was not adopted until 1999.  Rather, the question is whether in passing section 1886(d)(8)(E) in 1999, Congress intended that such "deemed rural" hospitals be treated as rural for purposes of the CRNA pass-through law.  Again, Congress answered this question itself in the legislative history when it stated simply that "hospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals…"  See H.R. Conf. Rep. No. 106-479 § 401.  Moreover, it is a basic rule of statutory construction that "we assume that Congress is aware of existing law when it passes legislation."  Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990); In re Bouchie, 324 F.3d at 784 ("'A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it.'");  Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate, 470 F.3d 827, 847 (9th Cir. 2006) ("courts 'generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts'").  These principles require the Court to assume that Congress was aware of the CRNA pass-through payment available to rural hospitals meeting the definition of rural "for purposes of 1886(d) of the Act" when it adopted section 1886(d)(8)(E) in 1999 modifying that definition of

7

rural. As a result, the Court must presume that Congress intended that hospitals "treated as" rural under section 1886(d) (by virtue of section 1886(d)(8)(E)) would be eligible for CRNA pass-through payments available to rural hospitals according to the plain language of the CRNA pass-through law.

> **2.    The Secretary's Proposed Interpretation of the CRNA Pass-Through Law Ignores Critical Language in the Legislation and Exposes His Double Standard**

The Secretary rounds out his statutory argument by emphasizing that the CRNA pass-through law states that to receive CRNA pass-through eligibility, a hospital must be "<u>located</u> in a rural area (as defined for purposes of section 1886(d))." Secretary's Memo at 12 (emphasis in original). By underlining only the word "located," the Secretary argues that it is "clear" and "plain" from this term that a hospital must "actually be <u>physically in</u> that rural area, not merely 'considered' rural or 'deemed' rural, a very important distinction." <u>Id.</u> The obvious flaw in this rationale is that by focusing on the solitary word "located," the Secretary conveniently ignores the phrase "in a rural area (as defined for purposes of section 1886(d))," which wholly undermines the meaning urged by the Secretary.

The Secretary's argument also attempts to ignore the fact that Congress has the exercised the power to define "rural area" under the statute. Under basic principles of administrative law, the Secretary is simply not permitted to ignore Congress's mandates. For example, if Congress had dictated that the definition of "rural area" for purposes of section 1886(d) included downtown Washington D.C., then a hospital <u>physically located</u> in downtown Washington D.C. would have to be considered "located in a rural area for purposes of section 1886(d)" by the agency even though it might be considered urban by all other standards. When Congress establishes a definition, that definition must be followed. Congress set the standard for "rural" under the CRNA pass-through law and the Secretary's disregard of the reference to that standard

(i.e., "rural area for purposes of section 1886(d)") changes the entire meaning of the law. Because the Secretary is not free to ignore the words adopted by Congress, his attempts to limit the CRNA pass-through reimbursement in such a manner must fail.  See Chevron, 467 U.S. at 843.

Not only does his narrow interpretation of the CRNA pass-through law exclude key language from the legislation, it is also inconsistent with the Secretary's own historical interpretation of the same law.  In a final rule revising the CRNA fee schedule, the Secretary gave an extensive overview of the history of CRNA reimbursement, including that of the CRNA pass-through payment.  See 57 Fed. Reg. 33,878 (July 31, 1992).  In a portion of the discussion relating to eligibility for CRNA pass-through reimbursement, the Secretary explained that, "[a]s required by section 9320(k) of Public Law 99-509 (as amended by Section 608(c) of Public Law 100-485), a rural area would be defined in the same way it is defined for purposes of the inpatient hospital prospective payment system (in accordance with section 1886(d) of the Act)..." 57 Fed. Reg. at 33,882.  As discussed previously, the Secretary's Memo conceded that the mandate at section 1886(d)(8)(E) does apply to the inpatient hospital prospective payment system.  Thus, it follows by necessity that if a hospital is rural by virtue of section 1886(d)(8)(E), it must also be rural for purposes of the CRNA pass-through law, because, in the Secretary's own words, a rural area is defined the "same way" for both purposes.  But the Secretary refuses to follow this inescapable logic in this case.

Additionally, in the same final rule announcement, the Secretary addressed the application of the CRNA pass-through reimbursement to rural hospitals that have been "deemed

urban" (i.e., hospitals in the opposite situation as the Hospital).[8]  With respect to these hospitals, the Secretary stated that for purposes of CRNA pass-through eligibility:

> "[s]ince for purposes of payment under section 1886(d) of the Act, these [rural-to-urban] hospitals are no longer classified as rural, we proposed that these hospitals also would not qualify as rural hospitals under section 9320(k) of Public Law 99-509 [i.e., the CRNA pass-through law] and would not be eligible to continue to receive payment on a reasonable cost basis for CRNA services…"

Id. at 33,882.  In other words, the Secretary stated in an official agency publication that when a hospital is reclassified from rural to urban under section 1886(d)(8)(B), it is no longer eligible for CRNA pass-through reimbursement, even though that hospital remains **physically located** in a rural area.  In reaching this conclusion (which it is important to note resulted in the denial of CRNA pass-through payments to such rural-to-urban hospitals) the Secretary applied the same rationale that is argued by the Plaintiff in this case.  Yet, the Secretary refuses to acknowledge his own longstanding interpretation of the CRNA pass-through law; that it is the hospital's "deemed status," not its physical location, that matters for purposes of determining eligibility for the CRNA pass-through reimbursement.

As the Supreme Court stated in two classic administrative law cases, "the weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all of those factors which give it power to persuade, if lacking power to

---

[8]    Section 1886(d)(8)(B) of the Act contains a provision allowing certain hospitals otherwise located in rural area to be considered located in an urban area for purposes of the inpatient prospective payment system:

> "For purposes of this subsection, the Secretary shall treat a hospital located in a rural county … as being located in the urban [area] …"

42 U.S.C. § 1395ww(d)(8)(B).  In essence, this statutory provision is part of the same statutory scheme and has an equal, but opposite, impact as the section at issue in this case (section 1886(d)(8)(E)). Hospitals qualifying under section 1886(d)(8)(B) are "physically located" in rural areas but must be "treated as" urban for payment purposes.  Id.

control." U.S. v. Mead, 533 U.S. 218, 228 (2001) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140) (emphasis added).  When publishing the final rule implementing the CRNA pass-through law in 1992, the Secretary expressed his intent that the regulatory definition of rural be consistent with the definition of "rural" contained in section 1886(d) and that definition necessarily excluded rural hospitals that were deemed urban under section 1886(d)(8)(B).  The Secretary's current position, that the regulatory definition of "rural" for purposes of CRNA pass-through eligibility does not include hospitals reclassified as rural under section 1886(d), is inconsistent with this 1992 statement.  In short, the Secretary's position regarding the meaning of "located" in the CRNA pass-through law has inexplicably changed from a belief that it is the hospital's deemed status as rural or urban that matters for CRNA pass-through payment purposes to a current litigation position that "location" refers only to a provider's physical location.  See 57 Fed. Reg. at 33,882.

Indeed, the only consistency that can be found when comparing the Secretary's historical interpretation of the CRNA pass-through law and his (directly opposite) current litigation position in this case is that both interpretations result in the denial of the CRNA pass-through reimbursement.  This is the very definition of arbitrary and capricious decision making.  As the Sixth Circuit scolded the Secretary for similar conduct with a separate Medicare reimbursement mechanism, "the [Secretary] cannot simply interpret the regulation to vary so as to always disadvantage the subject hospital." Clark Regional Medical Center v. U.S. Dept. of Health & Human Services, 314 F.3d 241, 249 (6th Cir. 2002).  Yet that is precisely what he has done in this instance.

### B.   THE SECRETARY'S REGULATIONS DEFINING THE TERMS URBAN AND RURAL FOR THE PURPOSES OF CRNA PASS-THROUGH REIMBURSEMENT ARE CONTRARY TO THE PLAIN LANGUAGE AND CONGRESSIONAL INTENT OF SECTION 1886(d)

Ignoring both the intent of Congress and his own historical interpretation, the Secretary attempts to blur the issue by emphasizing the reasonableness of his interpretation of his own regulation. But this approach also fails, as it is a fundamental principle of administrative law that Congress's word is the word that matters. As the Supreme Court stated in Chevron, the seminal administrative law case governing the Court's review of agency actions:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always is the question whether Congress has directly spoken to the precise questions at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

Chevron, 467 U.S. at 842-43; see also Hernandez v. Reno, 91 F.3d 776, 779 (5th Cir. 1997) ("under the rubric announced by the Supreme Court in Chevron, U.S.A., Inc. v. Natural Resources Defense Council Inc., an agency's interpretation of a statute whose administration is entrusted to it, generally is to be accepted unless Congress has spoken directly on the issue. If Congress has, we give effect to the congressional intent.").

For example, in Hernandez, the Immigration and Naturalization Service promulgated regulations requiring that immigrants file separate applications and filing fees in order to obtain employment authorization and documentation; however, Congress had passed a statute that certain eligible immigrants "shall be granted authorization" to engage in employment and be provided documentation of such authorization. 91 F.3d at 780. The Fifth Circuit held that the agency's regulation requiring a separate employment authorization application was invalid, for the agency "has no power to either ignore clear congressional intent or amend the legislation." The Fifth Circuit also analyzed another regulation, also finding it invalid, and reminded the

agency that "Chevron deference does not lie where the intent of Congress is clear from the words of the statute, but rather only where a statute is 'silent or ambiguous with respect to the specific issue'…the INS regulation adding a requirement that the alien continuously maintain that same relationship is in conflict with the plain language of the statue.  Our duty is to give effect to the clear, unambiguous intent of Congress."  Id. at 780.

Like the regulation at issue in Hernandez, the Secretary's interpretation in the present case that his CRNA pass-through regulation applies only to providers that are physically located in a rural area, or as excluding providers deemed rural under section 1886(d)(8)(E), imposes an additional restriction that is not contained in the statute, and is contrary to Congress's stated intent that providers deemed rural pursuant to section 1886(d)(8)(E) be treated as rural for all purposes and designations. The agency's interpretation is therefore arbitrary, capricious, and otherwise not in accordance with the law.  See Hernandez, 91 F.3d at 780.

As the case law makes clear, only when a statute is ambiguous does the court even reach the question as to the reasonableness of the Secretary's interpretation.  The many pages of discussion contained in the Secretary's Memo regarding the deference that should be paid to the Secretary's interpretation of his regulations are irrelevant.[9]  Secretary's Memo at 9, 12-16. Because the language of the statutes at issue is clear, under Chevron, this Court's inquiry ends at the statutory language and Congress's intent in passing that statute.

---

[9]    Ironically, the Secretary has not updated the definition of rural in his regulation at 42 C.F.R. § 412.62(f) (which contains the definition of "rural" for purposes of the CRNA pass-through payment) since the passage of the amendment to the Act adding section 1886(d)(8)(E).  His regulatory interpretation argument is therefore simply an attempted rationalization of an outdated and statutorily superseded regulation.  Indeed, his argument is undermined by his own words. The Secretary himself indicated in a formal rule-making statement that the definition of "rural" at 42 C.F.R. § 412.62(f) is intended to be the same definition contained in section 1886(d) of the Act, and recognized that this was the mandate of Congress.  See 57 Fed. Reg. at 33,882 and discussion in Part II.A.2, supra.

### C.    THE SECRETARY'S MEMO UNDERSCORES THE ARBITRARY AND CAPRICIOUS NATURE OF HIS APPLICATION OF THE CRNA PASS-THROUGH LAW

In general, the Secretary's position is that the Hospital is located in a rural area for purposes of obtaining the designation as a critical access hospital, but it is not located in a rural area for purposes of qualifying for CRNA pass-through payment.  For example, the Secretary argues that "the error Plaintiff repeatedly makes is believing that because it was able to use section [1886](d)(8)(E) for one purpose, it must necessarily be able to use it for other, or indeed all, purposes."  Secretary's Memo at 18.  This "error" by the Hospital is derived from nothing less that the explicit statements of Congress when it added section 1886(d)(8)(E) to the Act.  As mentioned above, Congress indicated that hospitals "qualifying under this section [1886(d)(8)(E)] shall be eligible to qualify for <u>all</u> categories and designations available to rural hospitals…"  H.R. Conf. Rep. No. 106-479 § 401.  In addition, the Hospital's "erroneous" belief was derived from the plain language of section 1886(d)(8)(E), which requires the Secretary to treat a hospital as rural "for purposes of section 1886(d)" if the hospital meets certain requirements (and there is no dispute that the Plaintiff met these requirements) and the plain language of the CRNA pass-through law, which required such payment to hospitals located in rural areas "for purposes of section 1886(d)."  In the administrative law context, there is no greater authority than the plain language of a statute and statements of Congress's intent at the time of rulemaking.  Thus, the only "error" that the Secretary can identify is that the Hospital's position is inconsistent with the current interpretation advanced by the Secretary in this litigation.

Indeed, when promulgating the relevant rules, the Secretary himself advanced a far different position than he does in the context of defending this litigation.  First, when the Secretary extended the CRNA pass-through reimbursement to critical access hospitals, the Secretary explained that:

14

some CAHs have pointed out that they are similar to the rural hospitals that are eligible for this payment, in that they also furnish low volumes of surgical procedures requiring anesthesia and could face the same problem of potentially inadequate payment for CRNA services if they are not allowed to qualify for the pass-through payment. <u>We share this concern</u>…The purpose of the pass-through legislation is to provide small rural hospitals with low surgical volumes with relief from the difficulties they might otherwise have in furnishing CRNA services for their patients. <u>CAHs are **by definition** limited service facilities located in rural areas</u> and, as such, they serve a population much like those served by hospitals eligible for the pass-through payments….Thus, in accordance with section 1861(e) of the Act and in light of the context of the pass-through legislation cited above, we consider CAHs to be "hospitals" for purposes of extending eligibility for the CRNA pass-through payments to them.

66 Fed. Reg. 22,646, 22,711 (May 4, 2001) (emphasis added), A.R. at 129. The Secretary

correctly recognized at that time that in order to become a critical access hospital, a hospital had

to be "rural" <u>by definition</u>; i.e., either located in a rural area as defined by section 1886(d)(2)(D)

or deemed to be located in a rural area as defined by section 1886(d)(2)(D) by virtue of section

1886(d)(8)(E).  Yet, in this litigation he would claim that the Hospital (a critical access hospital)

is not "by definition rural" but instead rural for only certain purposes.[10]

In attempting to defend this obvious shift in position, the Secretary claims that his

statement that "CAHs are by definition limited service facilities located in rural areas…" is "of

little moment."  Secretary's Memo at 16.  He explains that "under the Secretary's view section

---

[10] In paragraph 7 of the Secretary's Fact Response, the Secretary disputes the Hospital's statement that "Pursuant to the Family Support Act of 1988 and 42 C.F.R. § 412.113(c), CAHs are eligible for CRNA pass-through payments," arguing instead that "Critical Access Hospitals that are not actually located in rural areas area not eligible for Certified Registered Nurse Anesthetist pass-through payments."  Again, this "factual dispute" is more appropriately characterized as a key legal issue in this case.  As the Hospital explains in the argument above, the plain language of the CRNA pass-through law does not differentiate between hospitals redesignated as rural under section 1886(d)(8)(E) and hospitals physically located in rural areas. Rather, the CRNA pass-through law adopts the definition of rural at section 1886(d) of the Social Security Act.  A.R. at 126.  The Secretary's statement at paragraph 7 of the Secretary's Fact Response is contrary to both the plain language of the statute, and, as quoted above, the Secretary's own historical statements that CAHs are "by definition" rural providers and therefore are eligible for CRNA pass-through reimbursement.  A.R. at 129.

[1886](d)(8)(E) does not define "rural" for purposes of CRNA pass-through reimbursement, but rather pertains to 'reclassification from an urban to a rural area,' the overarching subject of the whole subsection 1886(d)(8)."  Id. (referencing 42 U.S.C. § 1395ww(d)(8)(A)).  Yet the Secretary cannot explain why any distinction should be made between a "reclassification" from urban to rural and the statutory mandate that the Secretary treat a hospital "as being located in a rural area (as defined in paragraph (2)(D))." 42 U.S.C. § 1395ww(d)(8)(E).  The reason he cannot make such a distinction is because none exists.

Indeed, a review of historical federal register discussions suggests that the Secretary himself also believed, prior to entering into this litigation, that reclassified hospitals ought to be treated consistently for all payment purposes.  In a 2000 Federal Register discussion regarding the "reclassification" provision of section 1886(d)(8)(E), the Secretary stated, "we are concerned that some hospitals might inappropriately seek to be treated as being located in a rural area for some purposes and as being located in an urban area for other purposes."  65 Fed. Reg. 26,281, 26,308 (May 5, 2000).  In fact, the Secretary even noted Congress's statement of intent in passing the rural reclassification statute at section 1886(d)(8)(E) ("hospitals qualifying under this section shall be eligible to qualify for all categories and designations available to rural hospitals").  Id.  It is apparent from this discussion that the Secretary's historical position on geographic reclassifications has been a preference for consistent treatment of reclassified hospitals; in other words, if an urban hospital is reclassified (or deemed) as rural under section 1886(d)(8)(E) (like the Provider in this case), it should not be treated as rural for some purposes but urban for others.

More importantly, as described above, the Secretary himself described how the "overarching subject" of reclassification in section 1886(d)(8) of the Act is to be applied for

purposes of the very same CRNA pass-through law that is at the center of this case. According to the Secretary:

> Under section 1886(d)(8)(B) of the Act, hospitals in certain rural counties adjacent to one or more [urban areas] are considered to be located in one of the adjacent [urban areas] if certain standards are met…Since for purposes of payment under section 1886(d) of the Act these hospitals are no longer classified as rural, we proposed that these hospitals also would not qualify as rural hospitals under section 9320(k) of Public Law 99-509 [i.e., the CRNA pass-through law] and would not be eligible to continue to receive payment on a reasonable cost basis for CRNA services…

57 Fed. Reg. at 33,882. In other words, a hospital that is "reclassified" from rural to urban does not meet the CRNA pass-through law definition of a hospital "located in a rural area (as defined for purposes of section 1886(d))" even though it is physically located in a rural area because the Secretary is required to treat such hospital as <u>urban</u> (regardless of physical location) due to the plain language of section 1886(d)(8)(B). Yet the Secretary takes the exact opposite position in this case, arguing that a hospital "reclassified" from urban to rural (such as the Hospital) does not meet the CRNA pass-through law definition of a hospital "located in a rural area (as defined for purposes of section 1886(d))" even though the Secretary is required to treat such hospital as rural based on the plain language of section 1886(d)(8)(E). The Secretary cannot have it both ways. Both Congress and the Secretary have clearly articulated the application of the CRNA pass-through law. The Secretary cannot "reinterpret" the law simply to avoid having to make payments required by Congress. See <u>Clark Regional</u>, 314 F.3d at 249.

Finally, in his desperation to defend his unreasonable interpretation, the Secretary responded to the Hospital's equal protection argument by revoking the CRNA pass-through payments his agency had approved for a similarly-situated critical access hospital located in California. This revocation was conducted <u>after</u> the litigation in this case had commenced and <u>after</u> the Hospital's counsel had notified the Secretary's counsel of the inconsistent application of

17

the CRNA pass-through law. Rather than carefully reviewing his historical policies (or awaiting this Court's decision on the controversy), the Secretary extended his misapplication of the CRNA pass-through law to the California hospital to solidify his "consistency" arguments. <u>See</u> Secretary's Memo at 19-20. As the Hospital has asserted throughout the Plaintiff's Memo and Plaintiff's Reply, there is no legal basis for the Secretary's denial of the CRNA pass-through payment to <u>either</u> hospital.

The Plaintiff and the California hospital are Medicare certified critical access hospitals, which, as the name suggests, provide critical sources of medical care for the remote communities they serve. Congress (and the Secretary) recognized the difficulties such small hospitals have in attracting CRNAs out to their remote areas due to their location and the low volume of surgeries that are performed by such facilities. <u>See</u> 66 Fed. Reg. 39,827, 39,992 (Aug. 1, 2001). The Secretary must not be permitted to undermine the ability of these critical access hospitals to provide necessary anesthesia services to the Medicare beneficiaries living in these remote areas.

## D.    THE COURT'S PATH IS DICTATED BY THE PLAIN LANGUAGE OF THE STATUTE

Congress has created a clear path for this Court to follow (a path that the Secretary himself has followed in the past) for deciding whether or not the Hospital is entitled to CRNA pass-through payments. The CRNA pass-through law states that CRNA pass-through payments are available to hospitals "located in a rural area (<u>as defined for purposes of section 1886(d)</u> of the Social Security Act.)" Family Support Act of 1988, Pub. L. No. 100-485 § 608. Using this standard as a guide, the next logical question is whether the hospital is "located in a rural area (as defined for purposes of section 1886(d) of the Social Security Act)."

According to section 1886(d)(8)(E), if an otherwise urban hospital meets certain requirements (all of which have been met by the Hospital), the "Secretary <u>shall</u> treat the hospital <u>as being located in the rural area</u> (as defined in paragraph [1886(d)] (2)(D)) of the State in which

18

the hospital is located."  42 U.S.C. § 1395ww(d)(8)(E).  In other words, the Secretary must "define" such a hospital as "being located in a rural area."  Again, there is no dispute in this case that the Hospital was determined to be located in a rural area pursuant to section 1886(d)(8)(E) and defined as being located in a rural area for purposes of subsection 1886(d)(2)(D).  Such a determination by the Secretary was necessary in order for the Secretary to grant the Hospital the designation as a critical access hospital.

Thus, if CRNA pass-through payments are available to providers meeting the definition of rural "for purposes of section 1886(d) of the Social Security Act," and the Provider is treated as rural for purposes of 1886(d)(2)(D) by virtue of the requirement in section 1886(d)(8)(E), logic dictates that the Provider is eligible for CRNA pass-through reimbursement.  This simple conclusion is consistent with Congress's intent when it adopted section 1886(d)(8)(E), that "[h]ospitals qualifying under this section shall be eligible to qualify for <u>all categories and designations available to rural hospitals</u>…"  H.R. Conf. Rep. No. 106-479 § 401, A.R. at 121.  It also is consistent with the Secretary's historical interpretation of the CRNA pass-through law relating to, or as applied to, section 1886(d) of the Act.  Thus, the Court's path in this case is clear.  The plain language of the relevant statutes, together with Congress's statements of intent, lead to the logical and inescapable conclusion that the hospital is entitled to CRNA pass-through reimbursement.

## III.    CONCLUSION

For the forgoing reasons, the Plaintiff respectfully requests that this Court grant the Plaintiff's Motion for Summary Judgment and deny the Defendant's Motion for Summary Judgment.

Dated: July 28, 2008

Respectfully submitted,

By:_____/s/_____
      Frederick W. Chockley, III (366800)
      BAKER & HOSTETLER LLP
      1050 Connecticut Ave., N.W., Suite 1100
      Washington, D.C. 20036
      (202) 861-1680
      (202) 861-1783 Fax
      fchockley@bakerlaw.com

      Gregory N. Etzel
      D.C. Bar No: TX0039
      BAKER & HOSTETLER LLP
      1000 Louisiana, Suite 2000
      Houston, Texas 77002
      Telephone: 713.646.1316
      Fax: 713.751.1717
      getzel@bakerlaw.com

      Ambika J. Biggs (501225)
      BAKER & HOSTETLER LLP
      1050 Connecticut Ave., N.W., Suite 1100
      Washington, D.C. 20036
      (202) 861-1619
      (202) 861-1783 Fax
      abiggs@bakerlaw.com

      **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2008, the foregoing Plaintiff's Response to Defendant's

Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary

Judgment, Plaintiff's Rule 7(h) Statement of Genuine Issues of Fact as to Which it is Contended

There Exists a Genuine Issue Necessary to be Litigated, and Proposed Order Granting Plaintiff's

Motion for Summary Judgment were served via U.S. mail, postage prepaid, on the following:

> Jeffrey Taylor
> Office of the Attorney General
> 555 4th Street, NW
> Room 5806
> Washington, DC  20530

and an electronic copy of the foregoing will be served on Christopher Blake Harwood and

Linda L. Keyser via the Electronic Case Filing system of United States District Court for the

District of Columbia.

By:_____/s/_____
    Frederick W. Chockley, III

102457464.1

21

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **BAYSIDE COMMUNITY HOSPITAL** | § | |
| **200 Hospital Drive** | § | |
| **Anahuac, Texas 77574** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **File No.  1:07-CV-01562 (EGS)** |
| | § | |
| **MICHAEL O. LEAVITT, IN HIS** | § | |
| **CAPACITY AS SECRETARY OF THE** | § | |
| **DEPARTMENT OF HEALTH AND** | § | |
| **HUMAN SERVICES,** | § | |
| **200 Independence Avenue, S.W.** | § | |
| **Washington, D.C. 20201** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S RULE 7(h) STATEMENT OF GENUINE ISSUES OF FACT AS TO
WHICH IT IS CONTENDED THAT THERE EXISTS A GENUINE ISSUE NECESSARY
TO BE LITIGATED**

Plaintiff, Bayside Community Hospital ("Plaintiff"), hereby responds to the Defendant's

Statement of Material Facts As To Which There Is No Genuine Issue ("Defendant's Statement")

in accordance with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7(h).

Responding specifically to the numbered paragraphs of Defendant's Statement and using the

same paragraph numbering, Plaintiff responds to the following assertions in the Defendant's

Statement:

1.      Disputed on the basis that the Plaintiff's rural redesignation was made pursuant to

section 1886(d)(8)(E) of the Social Security Act ("Act"), not section 1820(c)(2)(B), as stated by

the Defendant.  Section 1820(c)(2)(B) references hospitals that are treated as rural, but the actual

statutory redesignation mechanism is found at section 1886(d)(8)(E).  See A.R. at 108, 116.

2.      Not disputed.

3.      Disputed on the basis that the Defendant's Statement insinuates that the rural redesignation statute (section 1886(d)(8)(E) of the Act) specifies that the redesignation is only for the purpose of becoming a critical access hospital ("CAH").  In relevant part, the rural redesignation statute states, "…the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located."  42 U.S.C. § 1395ww(d)(8)(E), A.R. at 116.  There is nothing in section 1886(d)(8)(E) that limits the application of that statutory provision to "for the purposes of becoming a CAH," as the Defendant's Statement suggests.

4.      Disputed on the basis that the Defendant has misquoted the regulatory reference made by the fiscal intermediary in issuing its denial.  As set forth in the Stipulation Agreement, "The Provider's request for CRNA pass-through payments was denied by the Intermediary for the sole reason that its treatment as a rural hospital pursuant to Section 1886(d)(8)(E) of the Social Security Act has no bearing on whether the Provider is considered a 'rural' facility for purposes of the CRNA pass-through payment established by Public Law No. 100-485 and 42 C.F.R. § 412.113(c)(2)(A)."  A.R. at 151; see also A.R. at 22, 97.

5.      Not disputed.

6.      Not disputed.

7.      Not disputed.

8.      Not disputed.

9.      Not disputed.

10.      Not disputed.

DATED this 28th day of July, 2008.

Respectfully submitted,


By: _____/s/_____
      Frederick W. Chockley, III (366800)
      BAKER & HOSTETLER LLP
      1050 Connecticut Avenue, N.W., Suite 1100
      Washington, D.C. 20036
      (202) 861-1680
      (202) 861-1783 Fax
      fchockley@bakerlaw.com


      Gregory N. Etzel
      D.C. Bar No: TX0039
      BAKER & HOSTETLER LLP
      1000 Louisiana, Suite 2000
      Houston, Texas 77002
      Telephone: 713.646.1316
      Fax: 713.751.1717
      getzel@bakerlaw.com

      Ambika J. Biggs (501225)
      BAKER & HOSTETLER LLP
      1050 Connecticut Ave., N.W., Suite 1100
      Washington, D.C. 20036
      (202) 861-1619
      (202) 861-1783 Fax
      abiggs@bakerlaw.com

      ATTORNEYS FOR PLAINTIFF

102457501.1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **BAYSIDE COMMUNITY HOSPITAL** | § | |
| **200 Hospital Drive** | § | |
| **Anahuac, Texas 77574** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **File No.  1:07-CV-01562 (EGS)** |
| | § | |
| **MICHAEL O. LEAVITT, IN HIS** | § | |
| **CAPACITY AS SECRETARY OF THE** | § | |
| **DEPARTMENT OF HEALTH AND** | § | |
| **HUMAN SERVICES,** | § | |
| **200 Independence Avenue, S.W.** | § | |
| **Washington, D.C. 20201** | § | |
| | § | |
| **Defendant.** | § | |

<u>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

This matter came to the Court on cross motions for summary judgment.  Upon consideration of the parties' respective motions, memoranda, oppositions, reply papers, and the administrative record filed in this case, it is hereby:

ORDERED that the Plaintiff's motion for summary judgment is GRANTED and the Defendant's motion for summary judgment is DENIED.

ORDERED that summary judgment in favor of the Plaintiff is ENTERED and that the Defendant grant the Plaintiff's request for CRNA pass-through reimbursement eligibility in accordance with the Court's decision in this case, and reimburse the Plaintiff accordingly, including any amounts for interest as required by law.

Dated: _____       _____
                                                 Emmet G. Sullivan
                                                 United States District Judge