UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| BAYSIDE COMMUNITY HOSPITAL, )<br>)<br>Plaintiff, )<br>)<br>v.                                                                    )<br>)<br>MICHAEL O. LEAVITT, Secretary, )<br>U.S. Department of Health               )<br>and Human Services,                        )<br>)<br>Defendant.             )<br>_____) | Case No. 1:07-CV-01562 (EGS) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff in this case is a hospital seeking additional payment from Medicare. Plaintiff challenges a final agency decision and statutory interpretations by the Secretary of the United States Department of Health and Human Services ("HHS"). Plaintiff contends that the Secretary's interpretation of the statutory provisions at issue conflicts with the plain and unambiguous language of the statutes, and asks the Court to adopt Plaintiff's alternative interpretation.

Under the final agency decision and statutory interpretations at issue, the Secretary denied Plaintiff's request for more favorable treatment regarding reimbursement to Plaintiff for its costs of furnishing certified registered nurse anesthetist ("CRNA") services to Medicare beneficiaries. The more favorable "pass-through" payments that Plaintiff seeks are available to hospitals located in rural areas as defined in applicable statutory provisions. It is undisputed that Plaintiff is physically located in an urban area. Under the Medicare statute, Plaintiff is treated as

if it were located in a rural area for certain limited purposes, but is not treated as if it were located in a rural area for purposes of CRNA pass-through payments. Plaintiff argues that, under the plain language of the relevant statutes, it is "rural" for purposes of CRNA pass-through payments and is entitled to the additional Medicare reimbursement.

On May 5, 2008, Plaintiff filed a Motion for Summary Judgment in the above-captioned case. See Pl.'s Mem. of Points & Authorities in Support of Pl.'s Mot. for Summ. J. ("Pl.'s Br."). Defendant, Michael O. Leavitt, Secretary of the United States Department of Health and Human Services ("the Secretary"), moved for summary judgment in this matter on June 16, 2008. See Def.'s Mem. of Points & Authorities in Support of Def.'s Mot. for Summ. J. & in Opp. to Pl.'s Mot. for Summ. J. ("Def.'s Br."). On July 28, 2008, Plaintiff filed a Response to Defendant's Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment. See Pl.'s Response to Def.'s Mot for Summ. J. & Reply in Support of Pl.'s Mot. for Summ. J. ("Plaintiff's Reply" or "Pl.'s Reply"). Defendant hereby replies to Plaintiff's Reply.

In his opening memorandum, Defendant established that he is entitled to summary judgment because (1) the applicable standard of review under the Administrative Procedure Act ("APA") is highly deferential; and (2) the Secretary's challenged decision and statutory interpretations were reasonable, consistent with congressional intent and HHS regulations, and not arbitrary or capricious. As an initial matter, the Secretary's final agency decision and statutory interpretations are consistent with, if not compelled by, the relevant statutes, which provide CRNA pass-through payments to hospitals "located in" an area that is a "rural area" as defined by applicable statutory provisions. Nothing in the plain language of the relevant statutes compels the conclusion that Plaintiff, a hospital physically located in an urban area, must be treated as if it were located in a rural area for purposes of CRNA pass-through payments.

Second, Plaintiff has advanced no cognizable argument to show that the final agency decision and statutory interpretations at issue are arbitrary and capricious. Plaintiff has identified no inconsistency in agency policy sufficient to overcome the broad deference to which the Secretary's decisions and statutory interpretations are entitled.

As discussed in more detail below, the arguments in Plaintiff's Reply lack merit and are not persuasive. In large measure, these assertions had previously been advanced by Plaintiff, and were rebutted by Defendant in his opening memorandum. For the most part, they amount to little more than a distraction from or obfuscation of the explicit language employed by Congress to define the term "rural" for various Medicare payment purposes. This Court should reject Plaintiff's request to substitute Plaintiff's interpretation of statutes governing Medicare payment for the Secretary's interpretations. Accordingly, for the reasons stated below and in his opening memorandum, the Secretary respectfully submits that Plaintiff's Motion for Summary Judgment should be denied and Defendant's Motion for Summary Judgment should be granted.

## ARGUMENT

I.  **THE PLAIN LANGUAGE OF THE MEDICARE STATUTE SUPPORTS THE SECRETARY'S STATUTORY INTERPRETATION, NOT PLAINTIFF'S, AND EVEN IF THE STATUTE IS AMBIGUOUS, THE SECRETARY'S DECISION TO DISALLOW CRNA PASS-THROUGH REIMBURSEMENT IN THIS CASE MUST BE UPHELD BECAUSE IT IS REASONABLE AND NOT ARBITRARY OR CAPRICIOUS**.

The issue in this case is whether Plaintiff, which is physically located in an urban area, must be treated as if it were located in a rural area for a specific purpose, namely, calculating Medicare payment to Plaintiff for CRNA services. Contrary to Plaintiff's assertions, nothing in the relevant statutory provisions – section 1886(d)(8)(E) of the Social Security Act (42 U.S.C. § 1395ww(d)(8)(E)) or section 608 of the Family Support Act of 1988 – compels the conclusion

that an urban hospital treated as if it were located in a rural area for certain purposes must also be treated as if it were located in a rural area for purposes of CRNA pass-through reimbursement. Congress has specified three purposes for which an urban hospital may be treated as a rural hospital and those purposes do not include CRNA pass-through reimbursement.

     1. The Secretary appropriately interpreted section 1886(d) of the Social Security Act, 42 U.S.C. § 1395ww(d), in denying CRNA pass-through reimbursement to Plaintiff. This Court "must give effect to the unambiguously expressed intent of Congress." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., et al., 467 U.S. 837, 843 (1984). Section 1886(d)(8)(E) states that, "[f]or purposes of [section 1886(d)]," if a hospital meets specified criteria, "the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located." 42 U.S.C. § 1395ww(d)(8)(E)(i). Under this provision, the statute directs the Secretary to treat an urban hospital as if it were located in a rural area "for purposes of [section 1886(d)]," that is, for purposes of Medicare payment under the prospective payment system ("PPS") for hospital inpatient services. As explained in Defendant's opening brief, Def.'s Br. at 5, when Congress enacted section 1886(d)(8)(E), it also made conforming changes under which urban hospitals deemed to be located in a rural area "for purposes of [section 1886(d)]" could also be deemed to be located in a rural area for purposes of (1) the Medicare outpatient PPS and (2) becoming a critical access hospital ("CAH"). See Pub. L. No. 106-113, §§ 401(c)(1), (2). Thus, the relevant statutory provisions specify three – and only three – purposes for which an urban hospital may be treated as a rural hospital. Nothing in section 1886(d)(8)(E) compels the conclusion that HHS must treat these urban hospitals as rural hospitals for other purposes not specified in the

statute. Thus, the plain language of section 1886(d)(8)(E) supports the Secretary's interpretation and undermines Plaintiff's interpretation.

2. Similarly, nothing in section 608 of the Family Support Act unambiguously mandates that, if the Secretary treats an urban hospital as a rural hospital under section 1886(d)(8)(E) of the Social Security Act, it must <u>also</u> treat the hospital as a rural hospital under section 608 of the Family Support Act.

Section 608 specifies that, in order to be entitled to CRNA pass-through payment, a hospital must be "located in a rural area (as defined for purposes of section 1886(d))" of the Social Security Act. Family Support Act of 1988, Pub. L. No. 100-485, § 608. As already thoroughly addressed by both Plaintiff and Defendant in their opening briefs, section 1886(d)(2)(D) of the Social Security Act explicitly defines a rural area as any area outside a metropolitan statistical area ("MSA"). 42 U.S.C. § 1395ww(d)(2)(D).[1] Pl.'s Br. at 19; Def.'s Br. at 12. This definition puts any confusion about the pivotal issue here to rest because it is undisputed that Plaintiff is <u>not</u> "located in" an area that meets the definition of "rural area" in section 1886(d)(2)(D).

Plaintiff repeatedly asserts that it is entitled to CRNA pass-through payment because it is rural "for purposes of section 1886(d)." <u>See, e.g.</u>, Pl.'s Reply at 3, 4. A careful reading of section 608 makes clear that Plaintiff's argument should be rejected because its analysis is fundamentally flawed and obfuscates the statute. Section 608 provides CRNA pass-through payment only if a hospital is "located in" an area that is a "rural area (as defined for purposes of

---

[1] Section 1886(d)(2)(D) provides that "[f]or purposes of this subsection, . . . the term 'urban area' means an area within a Metropolitan Statistical Area (as defined by the Office of Management and Budget) or within such similar area as the Secretary has recognized under subsection (a) of this section by regulation; . . . and the term 'rural area' means any area outside such an area or similar area." 42 U.S.C. § 1395ww(d)(2)(D).

section 1886(d))." Contrary to Plaintiff's framing of the issue, the question is not whether Plaintiff is a rural hospital for purposes of section 1886(d); instead, the question is whether Plaintiff is "located in" in an area that is a "rural area" as that term is defined "for purposes of section 1886(d)."

Plaintiff's fundamental error is that it assumes (in a conclusory manner) that section 1886(d)(8)(E) changes the definition of "rural area." But Plaintiff's interpretation is wrong, and certainly is not compelled by the statute. Section 1886(d)(8)(E) is framed in terms of how a hospital is treated "for purposes of [section 1886(d)]," it is not framed in terms of how the term "rural area" is defined. Put another way, section 1886(d)(8)(E) does not alter the definition of "rural area," but instead directs the Secretary to treat an urban hospital as if it were located in a rural area for a specific limited purpose notwithstanding the hospital's location in an area that is not a "rural area" (as defined in section 1886(d)(2)(D)). Thus, section 1886(d)(8)(E) is a deeming provision, not a definitional provision. An urban hospital (such as Plaintiff) that is deemed rural under section 1886(d)(8)(E) – and qualifies for special treatment for certain limited and specified purposes – is not "located in" a "rural area (as defined for purposes of section 1886(d)," and therefore is not entitled to CRNA pass-through payment under section 608 of the Family Support Act of 1988.

3. As it did in its opening brief, Plaintiff – in a continuing attempt to overcome the plain language of the relevant statutory provisions – reiterates its assertion that Congress intended that hospitals qualifying as rural for the purposes of becoming CAHs also qualify as rural for every other conceivable purpose. Pl.'s Reply at 6; Pl.'s Br. at 22-25. It contends that, because Congress is presumed to know about existing law when enacting legislation, see Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990), "the Court must presume that Congress intended hospitals

'treated as' rural under section 1886(d) by virtue of section 1886(d)(8)(E) would be eligible for CRNA pass-through payments available to rural hospitals according to the plain language of the CRNA pass-through law." Pl.'s Reply at 7-8. Plaintiff's conclusion does not follow from its premise. Plaintiff once again disregards that the statutory provision governing CRNA pass-through payments, section 608 of the Family Support Act of 1988, refers to "rural area (as defined for purposes of section 1886(d))." For purposes of section 1886(d), the term "rural area" is defined at section 1886(d)(2)(D) as any area outside of an MSA. 42 U.S.C. § 1395ww(d)(2)(D). As discussed above, section 1886(d)(8)(E) does not alter the definition of "rural area," but provides special treatment for certain urban hospitals for limited specific purposes notwithstanding the definition of "rural area" in section 1886(d)(2)(D).

Moreover, under Plaintiff's premise that Congress was presumed to know that rural hospitals qualify for CRNA pass-through payment when Congress enacted section 1886(d)(8)(E), it remains to be answered why Congress did not explicitly direct that urban hospitals deemed to be rural under section 1886(d)(8)(E) are entitled to CRNA pass-through reimbursement, either in section 1886(d)(8)(E) or through a conforming change to the CRNA payment provision similar to the conforming changes for outpatient PPS and CAHs. In fact, because the deeming provision of section 1886(d)(8)(E) applies only for limited, specified purposes, and because there was no conforming change to the statutory provision governing CRNA payment, it is just as reasonable to assume that Congress did not intend CRNA pass-through payment to be extended to urban hospitals, regardless of whether these facilities had been deemed rural for purposes of being designated CAHs. In stating that "the Court must presume" (Pl.'s Reply at 8) that Congress intended the result Plaintiff seeks, Plaintiff is asking the Court to ignore (1) the phrase "for purposes of [section 1886(d)]" in section 1886(d)(8)(E) of

7

the Social Security Act, (2) the lack of a reference to section 1886(d)(8)(E) in section 608 of the Family Support Act of 1988, and (3) the fact that Congress made conforming changes for outpatient PPS and CAHs but did not do so for CRNA pass-through payments.

In addition, Plaintiff urges that when Congress passed the Balanced Budget Refinement Act of 1999 ("BBRA"), which added section 1886(d)(8)(E), it indicated that hospitals qualifying under the section would be treated as rural for all categories and designations available to rural hospitals, including sole community, Medicare-dependent, critical access, and referral centers. See H.R. Conf. Rep. No. 106-479; Admin. Rec. ("A.R.") at 121. As Defendant explained in his opening brief (see Def.'s Br. at 18), this interpretation disregards the fact that Congress's intent in continuing pass-through reimbursement for CRNA services to hospitals located in rural areas could not have been to incorporate section 1886(d)(8)(E), because that section, enacted in 1999, was not in existence in 1988 when the Family Support Act continuing CRNA pass-through reimbursement was enacted. In addition, if Plaintiff's assertion were true, one of Congress's explicitly enumerated uses of section 1886(d)(8)(E), that of becoming a CAH under 42 U.S.C. § 1395i-4(c)(2)(B), would be unnecessary because deemed rural status would apply for all purposes, including becoming a CAH.

Plaintiff further contends that Congress's use of the phrase "located in a rural area" in the Family Support Act of 1988 is meaningless, urging that the Secretary has "conveniently ignore[d]" the follow-up phrase "(as defined for the purposes of section 1886(d))." Pl.'s Br. at 8. As discussed above, however, the Secretary's interpretation of the statute is faithful to the statutory language, if not compelled by it. Section 1886(d) includes section 1886(d)(2)(D), the very definition of "rural" that Congress directed the Secretary to apply for CRNA pass-through

reimbursement purposes.  Precise language does matter.  And even if the statute were ambiguous, the Secretary's interpretation of the statute is reasonable and must be upheld.

     4.  This Court must defer to the Secretary's interpretation of a statute unless that interpretation is unreasonable.  Kidney Ctr. of Hollywood v. Shalala, 133 F.3d 78, 86-87 (D.C. Cir. 1998).  Courts have consistently held that the APA, 5 U.S.C. § 701 et seq., establishes a narrow standard of review.  Under the arbitrary and capricious standard, an agency action may be invalidated only if it is "not rational and based on consideration of the relevant factors." F.C.C. v. Nat'l Citizens Committee for Broadcasting, 436 U.S. 775, 803 (1978).  See also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  In determining whether any agency action is arbitrary or capricious under the APA, and therefore unlawful, the Court must determine whether "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  Motor Vehicle Mfrs. Ass'n, 463 U.S. at 44.  Moreover, a reviewing court, may not "displace the . . . [Secretary's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951).  As the D.C. Circuit emphasized:

> If an agency in the course of an informal rulemaking does not attempt either to close itself off from informed opinion or to extend its reach beyond the scope of permissible authority, then it is [the court's] duty to accept that judgment if it is rational and not unreasonable. The fact that an agency's decision . . . rests on a set of evidentiary facts less desirable or complete than one which would exist in some regulatory utopia does not alter [the court's] role.

Nat'l Ass'n of Reg. Util. Comm'rs v. FCC, 737 F.2d 1095, 1140 (D.C. Cir. 1984), cert. denied, 469 U.S. 1227 (1985).

For the reasons discussed above, and as explained further below, Plaintiff has failed to demonstrate that the Secretary's final agency decision and statutory interpretations at issue, denying Plaintiff pass-through reimbursement for CRNA services, are arbitrary and capricious. As such, broad deference must be afforded to the Secretary's decision and interpretations. See Thomas Jefferson University v. Shalala, 512 U.S. 504, 512 (1994) (finding that such broad deference is all the more warranted where, as here, the regulation concerns "a complex and highly technical regulatory program") (citation omitted). Nothing in the relevant statutory provisions compels the Court to substitute Plaintiff's interpretation for that of the Secretary.

## II. THE SECRETARY'S DECISION TO DISALLOW CRNA PASS-THROUGH REIMBURSEMENT IN THIS CASE IS CONSISTENT WITH AGENCY PRACTICE AND THEREFORE ENTITLED TO BROAD DEFERENCE

Plaintiff fails in its attempt to show that the Secretary's decisions and application of the statute with regard to CRNA pass-through reimbursement have been arbitrary or capricious and that therefore his interpretation of the statute should not be afforded deference here. Pl.'s Br. at 9-11; see U.S. v. Mead, 533 U.S. 218, 228 (2001). Plaintiff urges that the Secretary's position as to whether a hospital must be physically located in a rural area to be considered rural is inconsistent with agency practice. Because the regulatory history shows that rural hospitals deemed urban for CAH purposes (the opposite situation from the one presented here) similarly do not qualify for CRNA pass-through payments, Plaintiff contends that the Secretary's decision in this case should not be assigned much weight. Pl.'s Br. at 9-11; see 57 Fed. Reg. 33,882 (July 31, 1992). This is incorrect.

At the outset, Defendant notes that Plaintiff has waived this argument because it failed to raise it in the administrative proceedings below or in its opening brief before this Court.  Pl.'s Reply at 9-11; see A.R. at 74-90; see generally Pl.'s Br.  It is generally inappropriate for courts reviewing appeals of agency decisions to consider arguments not raised before the agency in the administrative proceedings below.  See Pleasant Valley Hosp. v. Shalala, 32 F.3d 67, 70 (4th Cir. 1994).

>  A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action.

Unemployment Compensation Comm'n v. Aragon, 329 U.S. 143, 155 (1946); see also U.S. v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952).

Furthermore, Plaintiff has waived this argument because it failed to raise it during the notice and comment rulemaking process.  See Nat'l Wildlife Fed'n v. EPA, 286 F.3d 554, 562 (D.C. Cir. 2002).  When the Secretary promulgated the rule at issue, neither Plaintiff nor any other interested party commented on the issue of CRNA pass-through reimbursement to urban hospitals that have been deemed rural for the purposes of becoming a CAH, or on any similar issue.  See 57 Fed. Reg. 33,878 (July 31, 1992).  Plaintiff should not be permitted to challenge the Secretary's reliance on a "properly promulgated, although perhaps imperfect, agency rule. . . .  An agency seldom acts arbitrarily when it acts in conformity with its unchallenged rules." Natural Resources Defense Council, Inc. v. EPA, 25 F.3d 1063, 1073 (D.C. Cir. 1994); see also Parkview v. Shalala, 158 F.3d 146, 149 (D.C. Cir. 1998).  Thus, Plaintiff's ex post facto challenge to this rule should not be entertained.

Even if this Court were to countenance this belated argument, the Secretary's decision is entitled to deference and should be upheld.  The fact that a hospital physically located in a rural

11

area but treated as urban for CAH purposes is also considered urban for the purposes CRNA pass-through payment, even though the converse is not true, is perfectly consistent with the intent behind CRNA pass-through payment.  As both the Provider Reimbursement Review Board and the Administrator noted below, "the purpose of the pass-through legislation was to provide small rural hospitals with low surgical volumes with relief from the difficulties they might otherwise have in furnishing CRNA services for their patients."  A.R. at 3, 24.  It stands to reason, therefore, that urban hospitals that have been reclassified as rural for the purpose of designation as a CAH, such as is the case here, would not suffer from the usual difficulties that rurally-located facilities encounter in recruiting and retaining CRNAs simply by virtue of the fact that they are located in an MSA allowing them access to a larger pool of people.  Likewise, rural hospitals that have been reclassified for the purposes of CAH designation as urban will likely not encounter the same CRNA recruitment and retention issues since, while they are not physically located in an MSA, they have been reclassified as urban for CAH purposes because they are located in a county adjacent to one or more MSAs.  <u>See</u> 57 Fed. Reg. at 33,882.  In such instances, the CAH also would not suffer the difficulties of a hospital located in a more remote area because it can recruit from the large population in its adjoining area(s).  Thus the two approaches, while maybe at first glance appearing inconsistent, are perfectly in keeping with the policy behind the statute – that of facilitating CRNA services in hospitals with recruitment and retention difficulties.

     Moreover, Plaintiff's argument regarding inconsistency serves only to distract from the issue at hand:  whether Plaintiff, a hospital that is physically located in an urban area, must be treated as a rural hospital for purposes of CRNA pass-through reimbursement.  This case does <u>not</u> involve application of the policy relating to a hospital that is physically located in a rural area

but is treated as urban for certain purposes (and Plaintiff is not disadvantaged by that policy). To the extent that the policies appear inconsistent, the Court is not positioned to determine which policy is the incorrect one. The Court is charged only with determining whether this hospital, Bayside Community Hospital, must be treated as rural for the purposes of CRNA pass-through reimbursement. Nothing more is being asked of the Court.

Plaintiff makes much of the Secretary's statement in the May 4, 2001, Federal Register to the effect that "CAHs are by definition limited service facilities located in rural areas . . . ." Pl.'s Reply at 15; 66 Fed. Reg. 22,646 (May 4, 2001). In response to the Secretary's opening memorandum, Plaintiff asserts that "the Secretary cannot explain why there should be a distinction between a 'reclassification' from urban to rural and the statutory mandate that the Secretary treat a hospital 'as being located in a rural area (as defined in paragraph (2)(D)).'" Pl.'s Reply at 16. Plaintiff's formulation is not clear but, in any event, it is Congress, not the Secretary, that makes a distinction between physical location and deemed location – this distinction is reflected in the plain language of the statute, in the purposes specified by the statute, and in the conforming changes made (or not made) by Congress.

Plaintiff also asserts that an inconsistency is evidenced by the Secretary's statement in a May 2000 Federal Register document that "we are concerned that some hospitals might inappropriately seek to be treated as being located in a rural area for some purposes and as being located in an urban area for other purposes." Pl.'s Reply at 16; 65 Fed. Reg. 26,281 (May 5, 2000). But Plaintiff takes this statement out of context. The Federal Register states:

> We are concerned that section 1886(d)(8)(E) might create an opportunity for some urban hospitals to take advantage of the [Medicare Geographic Classification Review Board] process by first seeking to be reclassified as rural under section 1886(d)(8)(E) (and receiving benefits afforded to rural hospitals) and in turn seek reclassification under the [Medicare Geographic Reclassification Review Board] back to the urban area for

13

purposes of their standardized amount and wage index (and thus also receive the higher payments that might result from being treated as being located in an urban area).

65 Fed. Reg. 26,308. Here, the Secretary explains that his concern was with regard to hospitals jumping back and forth from urban to rural designations for purposes of receiving benefits, not instances where an urban hospital had been designated rural for the purposes of becoming a CAH. Thus, the Plaintiff's allegations about inconsistent positions here are unfounded.

At any rate, as noted in the Secretary's opening brief, conflicting direction from the agency does not conclusively establish an inconsistency in the Secretary's policy-making position. See Def.'s Br. at 20. "The Secretary is not estopped from changing a view [he] believes to have been grounded upon a mistaken legal interpretation." Thomas Jefferson, 512 U.S. at 515-17 (quoting Good Samaritan Hospital v. Shalala, 508 U.S. 402, 417 (1993)); see also Washington Hosp. Ctr. v. Bowen, 795 F.2d 139, 144 n.5 (D.C. Cir. 1986) (conflicting regulations need to be reconciled or rejected but do not represent a reversal in the Secretary's interpretation); St. Francis Hosp. v. Heckler, 714 F.2d 872, 874 (7th Cir. 1983) (deference to the Secretary's decision was appropriate where the Secretary reversed the PRRB). The same holds true in this case.

Finally, if the Court were to determine that the policies in question are inconsistent (and they are not), the proper remedy in such circumstances would be to simply remand the matter to the agency so that it may "consider the matter, make its ruling, and state the reasons for its action." See Unemployment Compensation Com'n, 329 U.S. at 155. This is especially true where, as here, Plaintiff failed to raise this issue for the agency to consider below. See County of Los Angeles v. Shalala, 192 F.3d 1005, 1023 (D.C. Cir. 1999) (where the record does not support the agency action, the proper course of action except in rare circumstances is to remand

to the agency for additional investigation or explanation).  Moreover, it would be proper in this instance for the Court to do so without vacating the challenged rule.[2]

## CONCLUSION

For the foregoing reasons and for those adduced in the Secretary's opening brief, the Secretary respectfully requests that this Court grant his motion for summary judgment and deny Plaintiff's motion for summary judgment.

Dated: September 2, 2008                    Respectfully submitted,

    /s/
JEFFREY A. TAYLOR
United States Attorney
D. C. Bar No. 498610


    /s/
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
N.Y. Reg. No. 4202982
United States Attorney's Office
Civil Division
Judiciary Center Building
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

---

[2] See generally Engine Manufacturers Assoc. v. EPA, 20 F.3d 1177, 1184 (D.C. Cir 1994) (court remanded without vacating, citing Int'l Union, UMV v. Mine Safety & Health Admin., 920 F.2d 960, 966-67 (D.C. Cir. 1990) ("We have commonly remanded without vacating an agency's rule or order where the failure lay in the lack of reasoned decisionmaking.")); Commonw. of Mass. v. U.S. Nuclear Regulatory Comm'n, 924 F.2d 311, 336 (D.C. Cir. 1991) ("In appropriate cases we will remand without vacating an agency's order, where the reason for the remand is lack of reasoned decisionmaking . . . ."); see generally Am. Forest & Paper Ass'n v. EPA, No. 93-cv-0694, slip op. at 6 (D. D.C. Sept. 4, 1996) (citing Checkosky v. SEC, 23 F.3d 452 (D.C. Cir. 1994) (per curium); United Dist. Cos. v. FERC, 88 F.3d 1105 (D.C. Cir. 1996); A.L. Pharma v. Shalala, 62 F.3d 1484, 1492 (D.C. Cir. 1995).

        /s/
LINDA KEYSER
Attorney
U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare & Medicaid Services Division
Room 5327D, Cohen Building
330 Independence Avenue, S.W.
Washington, D.C. 20201
202-205-8779
Facsimile: (202) 401-1405

Counsel for Defendant

<u>OF COUNSEL</u>:

THOMAS R. BARKER
Acting General Counsel

JANICE L. HOFFMAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General
    Counsel for Litigation

United States Department of
    Health and Human Services