**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                          )
BAYSIDE COMMUNITY HOSPITAL, )
                          )
            Plaintiff,    )
                          )   Civil Action No. 07-1562(EGS)
        v.                )
                          )
KATHLEEN SEBELIUS,¹ Secretary )
of the Department of Health )
and Human Services,       )
                          )
            Defendant.    )
_____)
```

<u>**MEMORANDUM OPINION**</u>

Plaintiff, Bayside Community Hospital ("plaintiff" or
"Hospital"), a critical access hospital ("CAH"), was denied
reimbursement by the Secretary of Health and Human Services
("defendant" or the "Secretary") for the costs of acquiring the
services of a certified registered nurse anesthetist ("CRNA")
during its fiscal years 2002, 2003, and 2004.  Plaintiff
challenges that denial pursuant to the Administrative Procedure
Act, 5 U.S.C. § 551 *et seq* (the "APA").  The parties agree that
there are no material facts in dispute and that this controversy
can be resolved on cross motions for summary judgment, which have
been filed and fully briefed.  This Court referred the motions to
Magistrate Judge Deborah A. Robinson for a Report and

_____

    ¹  Pursuant to Federal Rule of Civil Procedure 25(d),
Secretary Sebelius, in her official capacity as the Secretary of
the Department of Health and Human Services, is automatically
substituted as the named defendant.

Recommendation.  Now pending before the Court is the defendant's objection to the Report and Recommendation.  Upon careful consideration of the Report and Recommendation, the defendant's objection, the response and reply thereto, the cross motions for summary judgment, responses and replies thereto, the applicable law, the entire record herein, and for the reasons stated below, the Court adopts the Magistrate Judge's recommendations, **GRANTS** plaintiff's motion for summary judgment, and **DENIES** defendant's motion for summary judgment.

I.    **Statutory Framework**

In order to resolve the dispute in this case, the Court must review several statutory and regulatory provisions relating to (a) reimbursement for CRNA services; (b) the Medicare program's definition of "rural" hospital; and (c) the creation of CAHs.

A.    **Medicare Reimbursement and the Prospective Payment System**

The Medicare statute, 42 U.S.C. § 1395 *et seq*. ("Social Security Act" or "Act"), sets forth a federal health insurance program for the elderly and disabled.  A hospital participates in the Medicare program under a "provider agreement" with the Secretary.  42 U.S.C. § 1395cc.  In 1983, Congress enacted a Medicare reimbursement program known as the Prospective Payment System ("PPS"), which replaced the prior practice of reimbursing hospitals based on the "reasonable costs" of covered services. *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1008 (D.C. Cir.

1999), *cert. denied*, 530 U.S. 1204 (2000).  Under the PPS, Medicare pays hospitals for their inpatient operating costs on the basis of prospectively determined flat rates, set according to historic regional costs and patients' diagnoses, rather than on a reasonable cost basis. *Id.*

The Secretary has delegated much of the responsibility for administering the Medicare program to the Centers for Medicare and Medicaid Services ("CMS").  *See* 42 U.S.C. §§ 1395h, 1395u. The Secretary, through CMS, delegates many of Medicare's audit and payment functions to organizations known as fiscal intermediaries ("intermediaries"), which are typically private insurance companies.

When changing to the PPS system, Congress recognized that hospitals in different regions may not have the same cost structures; therefore, Congress required the Secretary to consider cost averages for each region and for hospitals located in urban or rural areas within each region.  *See* 42 U.S.C. § 1395ww(d)(2)(D).[2]

---

[2] Section 1886(d) of the Act is codified at 42 U.S.C. § 1395ww(d).  For ease of reference to the pleadings and to the Administrative Record ("AR"), citations to the Act shall be used to refer to the operative statutory provisions discussed in this opinion.  Citations will be provided to the codified version where appropriate.

B.    **CRNA Pass-Through Provision**

Congress has created certain exceptions to the PPS, including an exception that allows rural hospitals to obtain reasonable cost ("pass-through") reimbursement for the cost of obtaining CRNA services.  This exception was created when Congress passed the Family Support Act of 1988.  The Family Support Act extended the provision indefinitely by adding a new subsection (k) to section 9320 of the Omnibus Budget Reconciliation Act of 1986, which had originally authorized the continuation of pass-through payment status for CRNA services to hospitals "located in a rural area (as defined for purposes of section 1886(d) of the Social Security Act)."   Family Support Act of 1988, Pub. L. No. 100-485 (Oct. 13, 1988)("Family Support Act of 1988").[3]

CMS created 42 C.F.R. § 412.113(c) to implement the CRNA pass-through payment.  The regulation permits a hospital to receive pass-through payment for CRNA services if "the hospital or CAH is located in a rural area as defined in Sec. 412.62(f)."  42 C.F.R. § 412.113(c)(2)(i)(A).  Section 412.62(f) defines "rural area" as "any area outside an urban area."  42 C.F.R. § 412.62(f).  This definition tracks the language in Section

_____

[3] CMS later specified that, although CAHs are not technically "hospitals" under the Act's statutory definitions, it "consider[ed] CAHs to be 'hospitals' for purposes of extending eligibility for CRNA pass-through payments to them."  66 Fed. Reg. 39,922 (Aug. 1, 2001).

1886(d)(2)(D) of the Act, which also defines rural as "any area outside [an urban area]."   42 U.S.C. § 1395ww(d)(2)(D).

## C.    Section 1886(d)

For purposes of the Medicare program, hospitals are defined as or deemed to be "rural" pursuant to Section 1886(d).  The crux of the dispute in this case centers on two paragraphs within Section 1886(d): specifically, Section 1886(d)(2)(D), which defines the terms "urban" and "rural" and was included in Section 1886(d) when Congress created the CRNA pass-through provision in 1988, and Section 1886(d)(8)(E), which was added by Congress to Section 1886(d) in 1999.[4]  Those provisions read as follows:

1886(d)(2)(D):

For purposes of this subsection, the term "region" means one of the nine census divisions, comprising the fifty States and the District of Columbia, established by the Bureau of the Census for statistical and reporting purposes; the term "urban area" means an area within a Metropolitan Statistical Area (as defined by the Office of Management and Budget) or within such similar area as the Secretary has recognized under subsection (a) of this section by regulation; the term "large urban area" means, with respect to a fiscal year, such an urban area which the Secretary determines (in the publications described in subsection (e)(5) of this section before the fiscal year) has a population of more than 1,000,000 (as determined by the Secretary based on the most recent available population data published by the Bureau of the Census); and the term

---

[4] 1886(d)(8)(E) is referred to as the "rural reclassification" provision and was added by Congress in the Balanced Budget Refinement Act of 1999 ("BBRA").  Pub. L. No. 106-113, Title IV § 401, 113 Stat 1501A-323, 1501A-369, (as codified at 42 U.S.C. § 1395ww(d)(8)(E) (2009)).  The Secretary incorporated this provision at 42 C.F.R. § 412.103.

"rural area" means any area outside such an area or
similar area...

42 U.S.C. § 1395ww(d)(2)(D)(ii).

1886(d)(8)(E):

(i) For purposes of this subsection, not later than 60 days
after the receipt of an application . . . from a subsection
(d) hospital described in clause (ii), the Secretary shall
treat the hospital as being located in the rural area (as
defined in paragraph (2)(D)) of the State in which the
hospital is located.

(ii) For purposes of clause (i), a subsection (d) hospital
described in this clause is a subsection (d) hosptial that
is located in an urban area (as defined in paragraph (2)(D))
and satisfies any of the following criteria:

    (I) The hospital is located in a rural census tract of
    a metropolitan statistical area . . .

42 U.S.C. § 1395ww(d)(8)(E).[5]

Thus, a hospital such as plaintiff that is located in a

rural census tract of a metropolitan statistical area ("MSA") is

not defined as a rural hospital pursuant to 1886(d)(2)(D), it is

deemed to be a rural hospital pursuant to 1886(d)(8)(E).  The

parties dispute whether plaintiff is considered "rural" for

purposes of CRNA pass-through reimbursement.  Plaintiff argues

that Congress, when referring to "section 1886(d)" for the

definition of rural for purposes of the CRNA pass-through

provision, referenced all portions of 1886(d), including Section

_____

    [5] The provision contains other circumstances under which a
hospital may be reclassified as rural; however, none of those are
at issue here.  42 U.S.C. § 1395(d)(8)(E).

1886(d)(8)(E).  Defendant, on the other hand, argues that only

the original definition in 1886(d)(2)(D) applies.

### D.  Critical Access Hospitals

In 1997, concerned that rural hospitals would be negatively

impacted by the PPS, Congress created the Medicare Rural Hospital

Flexibility Program.[6]  42 U.S.C. § 1395i-4(c)(2)(B).  Under that

program, States could designate certain hospitals as CAHs.  *Id.*[7]

Designation as a CAH allows a hospital to be exempt from the PPS

and reimbursed based on its reasonable rates.  *See* 42 U.S.C. §

1395l(a)(1).  The CAH statute states, in relevant part:

> A.  Criteria for designation as a critical access hospital
>     – A State may designate a facility as a critical access
>     hospital if the facility –
>
>     1.  is a hospital that is located in a county (or
>         equivalent unit of local government) in a rural
>         area (as defined in section 1395ww(d)(2)(D) of
>         this title) or is treated as being located in a
>         rural area pursuant to section 1395ww(d)(8)(E) of
>         this title. . .

42 U.S.C. § 1395i-4(c)(2)(B).

---

[6] This program expanded the existing Essential Access
Community Hospital Program.  *See* 58 Fed. Reg. 30,630, 30,665 (May
26, 1993); *see also* 62 Fed. Reg. 45,966 (Aug. 29, 1997).

[7] The original statute passed in 1997 utilized the
definition of "rural" at 1886(d)(2)(D).  42 U.S.C. § 1395i-
4(c)(2)(B).  The BBRA created the reclassification provision at
1886(d)(8)(E) and section 401(b)(2) of the BBRA made a conforming
change to the CAH criteria, adding the reclassification provision
to the definition of "rural."  Pub. L. No. 106-113, Title IV §
401, 113 Stat 1501A-323, 1501A-369, (as codified at 42 U.S.C. §
1395ww(d)(8)(E) (2009)).

Plaintiff is designated as a CAH because, though it is not located in a rural area pursuant to 42 U.S.C. § 1395(d)(2)(D), it is treated as being in a rural area pursuant to 42 U.S.C. § 1395(d)(8)(E) due to its location in a rural census tract of an MSA.

### E.   Administrative and Judicial Review

At the close of a fiscal year, a provider of services must submit to its intermediary a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate share of those costs to be apportioned to Medicare.  42 C.F.R. § 413.24(f).  The intermediary is required to analyze and audit the cost report and inform the provider of a final determination of the amount of Medicare reimbursement through a notice of program reimbursement.  *Id.* § 405.1803.

Providers under Medicare are permitted to appeal fiscal intermediaries' final determinations to the Provider Reimbursement Review Board ("PRRB") pursuant to 42 U.S.C. § 1395oo(a) and 42 C.F.R. § 405.1835.  The PRRB is "an administrative review panel that has the power to conduct an evidentiary hearing and affirm, modify, or reverse the intermediary's [reimbursement] determination." *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 451 (1999). The CMS Administrator may reverse, affirm, or modify the decision issued by the PRRB.  42 U.S.C. § 1395oo(f).  A provider then has

the right to obtain judicial review of any final decision of the
PRRB, or any reversal, affirmance, or modification of the PRRB's
decision by the Secretary.  *Id*; 42 C.F.R. § 405.1877.  This Court
has jurisdiction to review a decision of the Administrator
pursuant to 42 U.S.C. § 1395oo(f) and the APA, 5 U.S.C. §§ 551-
559, 701-706.

## II.  Factual and Procedural Background

Plaintiff is a 14-bed acute care facility located in
Anahuac, Texas.  *See* Am. Compl. ¶¶ 5, 26.  Anahuac is located in
Chambers County, Texas, which is physically located within the
Houston, Texas metropolitan statistical area.  AR at 149.
Plaintiff was designated as a CAH in 2001 because of its location
in a rural census tract of an MSA, pursuant to Sections
1820(c)(2)(B) and 1886(d)(8)(E) of the Social Security Act.  Am.
Compl. ¶ 27; AR at 94; 42 U.S.C. §§ 1395i-4(c)(2)(B),
1395ww(d)(8)(E).

Plaintiff notified its intermediary of its request to
receive reasonable cost reimbursement for the services of CRNAs
obtained under arrangement for fiscal years 2002, 2003, and 2004,
pursuant to 42 C.F.R. § 412.113(c).  AR at 97, 150.  The
intermediary denied plaintiff's request on the basis that, while
deemed to be located in "a rural area for the purpose of
qualifying for the CAH designation," the Hospital is in fact
located in an urban area as defined in 42 C.F.R. §

412.113(c)(2)(A), and thus the CRNA exemption did not apply.  AR at 97.  The intermediary determined that designation as a CAH under 1886(d)(8)(E) has "no bearing on whether [hospitals] are 'rural' for purposes of § 412.113(c)[2](A) [the CRNA pass-through regulation]."  AR at 97.    Plaintiff timely appealed this denial to the PRRB, pursuant to 42 C.F.R. § 405.1835.  AR at 204.  The PRRB held a hearing on this issue, reversed the intermediary's denial, and concluded that the Hospital should be reimbursed for CRNA services pursuant to the pass-through methodology set forth at 42 C.F.R. § 412.113(c).  AR at 20-25.  The PRRB found that the term "rural" has the same meaning in the CRNA statute as it does in section 1886(d) of the Act, because the CRNA statute adopts the language in the Act.  *Id.*  The PRRB stated that "Congressional intent was that urban hospitals that are redesignated and treated as rural hospitals would receive 'all categories and designations available to rural hospitals' which would include pass-through payments for CRNA services" and that CMS's rationale for denial of pass-through reimbursement "would frustrate the intent of Congress as well as that expressed by CMS in its own regulations."  H.R. Rep. No. 106-479, at Title IV § 401 (1999)(Conf. Rep.); AR at 24, 121.

The CMS Administrator overturned the PRRB's decision, on the basis that the hospital is "not physically located in a rural

area as defined in the regulations at 42 C.F.R. § 412.62(f)."

Am. Compl. ¶ 30; AR at 4, 7-8.  The Administrator found that:

> while the Provider may have been allowed to become
> a CAH under section 1886(d)(8)(E) of the Act and
> the implementing regulations at 42 [§] CFR
> 412.103, neither the statute nor regulation
> specify that this designation for purposes of
> qualifying under section 1820 of the Act [the CAH
> provision] impacts the determination of its
> location for the purposes of receiving reasonable
> cost payment for CRNA services.

AR at 7.  The Administrator further held that "the CRNA
reasonable cost reimbursement payment provision is outside the
scope of section 1886(d) of the Act[,]" and that "hospitals
reclassified under 1886(d)(8)(E) are not considered rural for
purposes of the CRNA reasonable cost payment."  AR at 8.

Having exhausted its administrative remedies, plaintiff then
brought the instant action in accordance with its rights under 42
U.S.C. § 1395oo(f) and 42 C.F.R. § 405.1877.  The parties filed
cross-motions for summary judgment, which were referred to the
Magistrate Judge.  The Magistrate Judge concluded that the
Secretary's decision should be reversed and that plaintiff was
"rural" for purposes of CRNA reasonable cost reimbursement.
Defendant timely filed an objection to the Report and
Recommendation pursuant to Local Rule 72.3(b).

## III. Standard of Review

In her Report and Recommendation, the Magistrate Judge
concluded that plaintiff is "rural" for purposes of the CRNA

pass-through provision.  Accordingly, the Magistrate Judge
recommended that defendant's motion for summary judgment be
denied and plaintiff's motion for summary judgment be granted.
Defendant objects to the Report and Recommendation and argues
that the decision was within the discretion of the Secretary and
is in accordance with the relevant statutes.[8]

"When a party files written objections to any part of the
magistrate judge's recommendation with respect to a dispositive
motion, the Court considers *de novo* those portions of the
recommendation to which objections have been made, and 'may
accept, reject, or modify the recommended decision[.]'"  *Robinson
v. Winter*, 457 F. Supp. 2d 32, 33 (D.D.C. 2006) (quoting Fed. R.
Civ. P. 72(b)).

Judicial review of the Secretary's decision is governed by
the APA.  42 U.S.C. § 1395oo(f)(1); 5 U.S.C. § 706.  The Court
may set aside the Board's decision only if it is "'arbitrary,
capricious, an abuse of discretion, or otherwise not in
accordance with law,' or unsupported by substantial record
evidence."  *HCA Health Servs. of Oklahoma, Inc. v. Shalala*, 27
F.3d 614, 616 (D.C. Cir. 1994) (citing 5 U.S.C. § 706(2)(A) &
(E)).  "[T]o the extent [the Board's interpretation is] based ...

---

[8] The Court notes that defendant objects to the Report and
Recommendation in its entirety on the grounds that it fails to
adequately address the Secretary's contentions in support of its
summary judgment motion.  Because the Court considers defendant's
motion *de novo*, those contentions will be addressed fully herein.

12

on the language of the Medicare [statute] itself," the Court will examine the decision with the appropriate deference due to an agency that has been charged with administering the statute.  *Id.* at 617 (quoting *Marymount Hosp., Inc. v. Shalala*, 19 F.3d 658, 661 (D.C. Cir. 1994)).

As the D.C. Circuit has explained, "[i]n examining the Secretary's interpretation of a statute that she administers, the court applies the familiar methodology of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)." *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1229 (D.C. Cir. 1994).  The court's first question must be "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842.  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Id.* at 842-43.

The court moves to the second step of *Chevron* only "if the statute is silent or ambiguous with respect to the specific issue." *Id.* at 843.  Under those circumstances, the court must consider whether the agency's interpretation "is based on a permissible construction of the statute." *Id.*  If so, then the court "must defer to the Secretary's" interpretation. *Methodist Hosp. of Sacramento*, 38 F.3d at 1229.

13

_____Finally, "in framing the scope of review, the court takes special note of the tremendous complexity of the Medicare statute.  That complexity adds to the deference which is due to the Secretary's decision." *Id.* (giving heightened deference to the Secretary's policy of denying retroactive effect to a revised wage index); *see also Robert Wood Johnson Univ. Hosp. v. Thompson*, 297 F.3d 273, 282 (3d Cir. 2002) ("The broad deference of *Chevron* is even more appropriate in cases that involve a 'complex and highly technical regulatory program,' such as Medicare, which "require[s] significant expertise and entail[s] the exercise of judgment grounded in policy concerns.'" (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (additional citations omitted))).

## IV.  Analysis

The issue in this case is whether the Secretary was arbitrary and capricious in determining that plaintiff was not entitled to reasonable cost reimbursement pursuant to the CRNA pass-through provision.  Plaintiff argues that it is entitled to reasonable cost reimbursement for CRNA services because of: 1) the plain language of the statutes and evidence of Congressional intent; and 2) the Secretary's inconsistent statements and decisions relating to reasonable cost reimbursement under the CRNA statute.

14

####     1.     **The Plain Language of the Relevant Statutes and Evidence of Congressional Intent**

Pursuant to the language of the CRNA pass-through provision, "rural" is defined at Section 1886(d).  Family Support Act of 1988.  Plaintiff's position is that when Section 1886(d)(8)(E) was added to the Act, it expanded the definition of rural found at 1886(d)(2)(D).  42 U.S.C. § 1395ww(d)(8)(E).  Plaintiff argues that this expanded concept of rural applies to all purposes for which 1886(d) is used as the definition for "rural," including the CRNA pass-through provision, which states that rural will be considered "as defined in 1886(d)."  Family Support Act of 1988.

Defendant argues that, for purposes of the CRNA pass-through provision, the reference to rural "as defined in 1886(d)" refers only to the original definition at 1886(d)(2)(D), which was in place at the time the CRNA pass-through provision was passed. Based on the language in 1886(d)(8)(E) that the reclassification is "for purposes of *this* subsection," defendant contends that 1886(d)(8)(E) only applies within 1886(d) - in other words, hospitals in urban areas are only reclassified as rural for purposes of: 1) payment under inpatient PPS; 2) payment under the Medicare outpatient PPS; and 3) becoming a CAH.  Def.'s Mot. for Summ. J. ("Def.'s Mot.") 5 (citing 42 U.S.C. § 1395ww(d)(8)(E); 42 U.S.C. § 1395l(t)(16)(A); 42 U.S.C.  § 1395i-4(c)(2)(B)).[9]

_____

[9] Congress specifically incorporated Section 1886(d)(8)(E) into the statutes for payment under the Medicare outpatient PPS:

The third instance cited by defendant, however, is
1886(d)(8)(E) itself, which allows for certain hospitals to
qualify as rural for purposes of inpatient PPS (subsection
1886(d)).  As defendant concedes, in creating 1886(d)(8)(E),
Congress explicitly stated that it was to apply "for purposes of
this subsection [1886(d)]."  Def.'s Reply 4.  In the CRNA pass-
through provision, Congress stated its intent that rural be
applied "as defined in 1886(d)," which necessarily includes the
(d)(8)(E) expansion of subsection (d).  Family Support Act of
1988.

Defendant questions why, if Congress intended for hospitals
under 1886(d)(8)(E) to qualify as rural for the CRNA pass-through
provision, it did not explicitly direct that such hospitals are
entitled to reimbursement, either in 1886(d)(8)(E) itself or
through a conforming change to the CRNA pass-through law, similar
to the conforming changes Congress made for outpatient PPS and
CAHs.  As plaintiff points out, however, such an explicit
direction was not necessary to make the CRNA pass-through
provision apply to hospitals reclassified under 1886(d)(8)(E),

---

"If a hospital is being treated as being located in a rural area
under section 1886(d)(8)(E), that hospital shall be treated under
this subsection as being located in that rural area."  42 U.S.C.
§ 1395l(t)(16)(A); and becoming a CAH: "A State may designate a
facility as a critical access hospital if the facility . . . is a
hospital that is located in a county . . . in a rural area (as
defined in section 1395ww(d)(2)(D) of this title) or is treated
as being located in a rural area pursuant to section
1395ww(d)(8)(E) of this title."  42 U.S.C. § 1395i-4(c)(2)(B).

because the reclassification provision is already incorporated in 1886(d).[10]   In contrast, outpatient PPS and CAHs do not base their definition on 1886(d) and thus, it was necessary to explicitly state that 1886(d)(8)(E) would apply to those provisions.

Defendant further argues that 1886(d)(8)(E) is a deeming provision, not a definitional one, and that Congress did not intend for it to alter the definition of rural in 1886(d)(2)(D). Defendant asserts that Congress only intended for the Secretary to treat a hospital qualifying under 1886(d)(8)(E) as rural for a "specific limited purpose." (That being for purposes of inpatient PPS under 1886(d) itself.)  Def.'s Reply 6.  Plaintiff notes that this would result in hospitals that are deemed rural being treated inconsistently: rural for the purpose of qualifying as a CAH, but urban for purposes of CRNA reimbursement.  Pl.'s Mot. for Summ. J. (Pl.'s Mot.) 31-32.

Defendant argues that a hospital qualifying under 1886(d)(8)(E) is only "treated" as if it were rural, but is still not physically located in a rural area.  Defendant's position is that the regulations at 42 C.F.R. § 412.113(c)(2)(A) limit the application of CRNA pass-through to a "hospital or CAH that is located in a rural area as defined in § 412.62(f)."  AR at 8

---

[10] As stated previously the CRNA pass-through provision considers hospitals rural "as defined in 1886(d);" therefore, all of 1886(d), including (d)(8)(E), is referenced in the provision. Family Support Act of 1988.

(quoting  C.F.R. § 412.113(c)(2)(A)).  Thus, defendant argues
that the actual physical location of the hospital is
determinative under the CRNA regulations.

It is true that the physical location of the hospital does
not change; however, Congress has directed that a hospital
qualifying under 1886(d)(8)(E) be *treated* as if it *were* in a
rural location.  The purpose of this is to overcome the actual
physical location and cause a hospital to qualify as rural.
Thus, the deeming provision does impact the definition of rural
at 1886(d).  A regulation does not override a clearly stated
statute.  *See ACLU v. FCC*, 823 F.2d 1554 (D.C. Cir. 1987); *see
also Aerolineas Argentinas v. U.S.*, 77 F.3d 1564, 1575 (Fed. Cir.
1996) ("[A] regulation can not override a clearly stated
statutory enactment.").

In *ACLU*, the court analyzed the FCC's adoption of a
definition of the term "basic cable service" that differed
materially from the definition provided by statute.  *ACLU*, 823
F.2d at 1565-67.  The FCC argued that, while the adopted
definition did contradict the plain language of the statute, it
effectuated Congressional intent more effectively than the
statutory definition.  *Id.*  The Court, however, held that the
agency definition was contrary to law and the original statutory
definition must be applied "in all circumstances."  *Id.* at 1569.

18

A similar reasoning applies here because the statute is clear and the regulation cannot overcome the statute.

Moreover, plaintiff's argument in the instant case is even stronger than in *ACLU*, because in *ACLU* there was some indication that the legislative history supported the defendant's alternative definition. *Id.* at 1567-68. The *ACLU* court declined to turn to the legislative history, reasoning that the clear language of the statute met the standards of the first step of *Chevron* and thus, there was no need to look to the legislative history for interpretation of Congressional intent. *Id.* (citing *Chevron*, 467 U.S. at 843). Similarly, the statutory language in the instant case is clear and unambiguous; therefore, the first step of *Chevron* is met and it is not necessary to delve into legislative history in order to interpret that meaning. In contrast to *ACLU*, however, the legislative history in the instant case only serves to bolster plaintiff's argument because Congress supported the statutory language with its statement that the reclassification provision was to apply "for all categories and designations." *See* H.R. Rep. No. 106-479, at Title IV § 401 (1999)(Conf. Rep.); AR at 121.

Defendant further contends that if plaintiff's assertions are true, "one of Congress's explicitly enumerated uses of section 1886(d)(8)(E), that of becoming a CAH under 42 U.S.C. § 1395i-4(c)(2)(B), would be unnecessary because deemed rural

19

status would apply for all purposes, including becoming a CAH."
Def.'s Reply 8.  This argument, however, does not acknowledge
that the CAH provision applies to a hospital that is "in a rural
area (as defined in section 1395ww(d)(2)(D) of this title) *or is
being treated* as being located in a rural area pursuant to
section 1395ww(d)(8)(E) of this title..."  42 U.S.C. § 1395i-
4(c)(2)(B).  Thus, unlike the CRNA provision, the CAH provision
specifically cites the definition of rural at 1886(d)(2)(D).[11]
It is, therefore, necessary for the CAH designation to also
specifically include the reclassification provision at
1886(d)(8)(E).  In other words, the CAH statute specifically
refers to (d)(2)(D), then adds (d)(8)(E), unlike CRNA, which
refers to (d) generally.  Congress's explicit clarification that
the CAH statute would apply to hospitals under both the original
definition of rural and the new one added by (d)(8)(E) does not
negate the fact that the CRNA provision continues to rely on the
overall subsection 1886(d) definition, which merely includes both
definitions captured by the CAH statute.

    In further support of its position, plaintiff points to the
legislative history of the reclassification provision, where
Congress stated that "hospitals qualifying under this section
shall be eligible to qualify for all categories and designations

---

    [11] As discussed *supra*, the CRNA provision relies on the
definition of rural at 1886(d) as a whole.

available to rural hospitals..." *See* H.R. Rep. No. 106-479, at
Title IV § 401 (1999)(Conf. Rep.); AR at 121.  While in the
Court's view the first step of *Chevron* deference is already met
because the language in the statute is clear, analysis of the
legislative history only serves to further support this
conclusion.

Defendant asserts that Congress could not have intended
for CRNA pass-through payments to apply to CAHs reclassified as
rural under 1886(d)(8)(E) because 1886(d)(8)(E) was passed in
1999, *after* Congress indefinitely extended CRNA pass-through
payments in 1988.  Congress, however, clearly stated its intent
that, for purposes of the pass-through provision, rural was to be
considered as defined in 1886(d).  Family Support Act of 1988.
Therefore, when Congress added 1886(d)(8)(E) to 1886(d), Congress
expressed its intent to include hospitals reclassified as rural
in the overall 1886(d) definition.  The Court "assumes Congress
is aware of existing law when it passes legislation." *Miles v.
Apex Marine Corp.*, 498 U.S. 19, 32 (1990).  Therefore, the Court
assumes that Congress was aware of the CRNA pass-through
provision when it added 1886(d)(8)(E) to the Act and the logical
effect that the reclassification provision would have on CRNA
pass-through reimbursement.

## 2.   The Secretary's Previous Statements and Decisions Relating to the CRNA Provision

As further support for its position that the Secretary's determination in this case is incorrect, plaintiff points to several instances in which the Secretary has taken a position that is inconsistent with defendant's position in this case that plaintiff is not entitled to reasonable cost reimbursement for CRNA services.

First, plaintiff points to a similarly situated hospital located in California.  Pl.'s Mot. 32.  Like the plaintiff hospital, this hospital is a CAH located in a rural census tract of an MSA.  *Id.*  The California hospital, however, was determined to be entitled to CRNA reasonable cost reimbursement.  *Id.*

Defendant acknowledges this inconsistency, but notes that it has since reversed that decision.  Def.'s Mot. 20; Ex. A. (stating that the fiscal intermediary "reversed its earlier decision, concluding that '[a]fter further review and consultation with CMS, we believe those approvals were made in error and are not consistent with the correct interpretation of the relevant regulations per 42 C.F.R. [§] 412.113'").[12]

---

[12] Plaintiff asserts that this treatment is a violation of its Equal Protection rights under the Fourteenth Amendment, requiring that "no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted).  Because the Court has determined that plaintiff is entitled to reasonable

Defendant relies in part on *Thomas Jefferson University* for the proposition that conflicting decisions by the Secretary do not require less deference.  512 U.S. at 517.  The court in *Thomas Jefferson University*, however, held that the decisions were, in fact, not contradictory, but noted that "an agency's interpretation of a statute or regulation that conflicts with a prior interpretation is 'entitled to considerably less deference' than a consistently held agency view."  *Id.* at 515 (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30 (1987) (additional quotations omitted)).  While defendant cites a statement made in dictum in response to the dissent that "even if petitioner could show that such allowance was approved by-or even brought to the attention of-the Secretary or her designate at the time, '[t]he Secretary is not estopped from changing a view she believes to have been grounded upon a mistaken legal interpretation."  *Id.* at 517 (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993)).  This statement indicates that the Secretary may not be estopped from making a conflicting decision; however, where, as here, the decision made was directly contradictory and only reversed as a result of litigation, that decision may be afforded less deference than a "consistently held view."  *Id.* at 515.

    Defendant also cites *Washington Hospital Center v. Bowen*, 795 F.2d 139, 144 n.5 (D.C. Cir. 1986) and *St. Francis Hospital*

---

cost reimbursement, there is no need to reach this argument.

23

*v. Heckler*, 714 F.2d 872, 874 (7th Cir. 1983), in support of her assertion that conflicting decisions by the Secretary do not require less deference.  In *Washington Hospital Center*, however, the inconsistency resulted from two different sets of regulations; thus the conflicting findings were not in direct opposition.  795 F.2d at 144 n.5.  In contrast, the decisions made by the Secretary in the instant case result in the exact opposite decision when applying the same statutory and regulatory framework to two identically situated hospitals.  Furthermore, *St. Francis Hospital* involved a reversal by the Secretary of the PRRB's decision.  714 F.2d at 874.  The *St. Francis Hospital* court rejected plaintiff's argument that the Secretary's decision was entitled to less deference because it contradicted the PRRB. *Id.*  That is not plaintiff's argument in this case.

While defendant may be correct that the Court should not find the Secretary's initial decision to be determinative of an inconsistency, the fact that the Secretary's decisions regarding these two hospitals are directly contradictory is troubling, particularly where it appears the decision with respect to the California hospital was only reversed after this litigation was commenced and plaintiff's counsel notified the defendant of the inconsistency.  Pl.'s Mot. 32-33; Def.'s Mot. 19-20.  Moreover, the fact that defendant initially reached the opposite decision in relation to the California hospital further supports

24

plaintiff's position that it is a "rural" hospital for purposes
of the CRNA pass-through provision and, therefore, that the
Secretary's decision regarding the plaintiff hospital is not in
accordance with law.

Second, plaintiff argues that the Secretary's treatment of
hospitals falling under the "deeming" provisions of 1886(d)(8) is
inconsistent with the defendant's position advanced in this case.
*See* Pl.'s Reply 9-10.[13]  In a final rule announcement revising
the CRNA fee schedule, the Secretary addressed the application of
CRNA pass-through payment to hospitals that are in the exact
opposite position as plaintiff: those that are *rural* hospitals
that have been reclassified as *urban* under 1886(d)(8)(B).[14]  The
Secretary stated that:

> [s]ince for purposes of payment under section 1886(d)
> of the Act, these [rural-to-urban] hospitals are no
> longer classified as rural, we proposed that these
> hospitals also would not qualify as rural hospitals
> under section 9320(k) of Public Law 99-509 [i.e., the

---

[13] Defendant asserts that this argument is moot because it
was not raised during administrative appeals or in the
plaintiff's moving brief.  *See* Def.'s Reply 11.  While the
Court's decision does not rest on this argument and, therefore,
the Court need not analyze the mootness argument, the Court does
find the discussion useful in analyzing the Secretary's position.

[14] Section 1886(d)(8)(B) of the Act contains a provision
allowing certain hospitals otherwise located in a rural area to
be considered located in an urban area for purposes of the
inpatient PPS.  42 U.S.C. § 1395ww(d)(8)(B).  This provision is
essentially the counter provision to the one at issue in this
case: hospitals that qualify under 1886(d)(8)(B) are physically
located in rural areas, but are treated as urban for payment
purposes. *Id.*

CRNA pass-through law] and would not be eligible to
continue to receive payment on a reasonable cost basis
for CRNA services...

57 Fed. Reg. at 33,882.

This conclusion by the Secretary reached essentially the
same conclusion as in the instant case: that the hospital is not
entitled to CRNA pass-through reimbursement.  That reasoning,
however, applies the exact opposite logic as the Secretary
applies in the instant case: that the *physical location* of a
hospital *is* overcome by qualification under the reclassification
provisions under 1886(d)(8).  Defendant counters that these
decisions, while applying opposite reasoning, are consistent with
the *intent* behind CRNA pass-through payment: to "provide small
rural hospitals with low surgical volumes with relief from the
difficulties they might otherwise have in furnishing CRNA
services for their patients."  Def.'s Reply 12; AR at 3, 24.  The
Court agrees with plaintiff that defendant's position is
inconsistent in that it takes a logically opposite position with
respect to the same statutory construction and results in
hospitals under both provisions being denied CRNA reimbursement.
These inconsistent approaches support plaintiff's argument that
the Secretary's decision was arbitrary and capricious.

Plaintiff also argues that the Secretary's current
interpretation of the CRNA pass-through provision is inconsistent
with the Secretary's past statements made about the provision.  A

26

court shall "defer to the Secretary's interpretation unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'" *Thomas Jefferson Univ.*, 512 U.S. at 512 (quoting *Gardebring v. Jenkins*, 485 U.S. 415, 430 (1988)).  The Secretary's current position is that the CRNA provisions only apply to a hospital or CAH located in a rural area as defined in § 412.62(f), but "[does] not include rural designations under § 412.103."[15]  AR at 8 (citing 42 C.F.R. § 412.113(c)(2)(A)).  The Secretary therefore contends that the original definition of rural at § 412.63(f) must be applied for purposes of determining CRNA status.

In a final rule statement discussing eligibility for CRNA pass-through reimbursement, however, the Secretary stated that "a rural area would be defined in the same way it is defined for purposes of the inpatient hospital prospective payment system (in accordance with section 1886(d) of the Act)..."  57 Fed. Reg. at 33,882.  The language of § 412.62(f) tracks the language of 1886(d); therefore, the Secretary acknowledged that the definition in the regulations is intended to be the same for both purposes.  The Secretary's statements indicate her intent that the term rural as defined in the regulations should conform to

---

[15] 42 C.F.R. § 412.103 was amended by the Secretary to incorporate the "deemed rural" provisions of section 1886(d)(8)(E) of the Act.

the definition found in 1886(d), which was expanded to include
1886(d)(8)(E).  This indication of the Secretary's intent at the
time the regulation was promulgated further supports the Court's
conclusion that the Secretary's decision to deny reasonable cost
reimbursement to plaintiff is not entitled to deference.

## V.   Conclusion

Congress passed the Family Support Act to allow rural
hospitals to be reimbursed for the costs associated with
attracting CRNAs to a rural location.  Family Support Act of 1988
§ 608.  In so doing, Congress stated that "rural" was to be
considered "as defined in 1886(d)."  *Id.*  CMS acknowledged this
when it stated that "[t]he purpose of the pass-through
legislation is to provide small rural hospitals with low surgical
volumes with relief from the difficulties they might otherwise
have in furnishing CRNA services for their patients."  66 Fed.
Reg. 39,922.  CMS went on to state that "CAHs are by definition
limited-service facilities located in rural areas and, as such,
they serve a population much like those served by hospitals
eligible for the pass-through payments."  *Id.*  As the PRRB
pointed out in its decision, no distinction was made between CAHs
that are located in rural areas and those that are being treated
as rural.  AR at 24.

When the CRNA pass-through law was passed in 1988, rural was
defined within 1886(d) at 1886(d)(2)(D) as "any area outside such

an area [urban or large urban] or a similar area."  42 U.S.C. §
1395ww(d)(2)(D).  In 1999, however, the BBRA added 1886(d)(8)(E)
to the Act.  Pub. L. No. 106-113, Title IV § 401, 113 Stat 1501A-
323, 1501A-369, (as codified at 42 U.S.C. § 1395ww(d)(8)(E)
(2009)).  In so doing, Congress crafted 1886(d)(8)(E) to state
that:

> [f]or purposes of this subsection [1886(d)], not
> later than 60 days after the receipt of an
> application . . . from a subsection (d) hospital .
> . . the Secretary shall treat the hospital as being
> located in the rural area (as defined in paragraph
> (2)(D)) of the State in which the hospital is
> located.

42 U.S.C. § 1395ww(d)(8)(E).

"This subsection" refers to subsection 1886(d), which
includes both the original definition at 1886(d)(2)(D) and the
expanded meaning at 1886(d)(8)(E).  Therefore, Congress intended
for rural hospitals eligible for CRNA pass-through to be those
hospitals defined as rural in 1886(d); Congress did not specify
the specific definition at subsection 1886(d)(2)(D).  Thus, when
1886(d) was expanded to include hospitals located in rural census
tracts of MSAs, the concept of "rural" under 1886(d) was expanded
to include hospitals such as the plaintiff.

Section 1886(d)(8)(E) directs that "the Secretary *shall*
treat the hospital as being located in the rural area" for
purposes of 1886(d).  42 U.S.C. § 1395ww(d)(8)(E).  Therefore,
because plaintiff hospital is qualified under 1886(d)(8)(E) it

*must* be treated as rural for *all* purposes to which 1886(d)
applies.  This includes CRNA pass-through reimbursement because
Congress relied on the definition of rural as stated in 1886(d)
when drafting the CRNA provisions.  To ignore the portion of
1886(d) added in 1886(d)(8)(E) would be contrary to Congress's
clear intent in creating it.  The D.C. Circuit has held that
"[i]n making the threshold determination under *Chevron*, 'a
reviewing court should not confine itself to examining a
particular statutory provision in isolation.'" *Cement Kiln
Recycling Coal. v. EPA*, 493 F.3d 207, 223 (D.C. Cir. 2007)
(quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120,
132 (2000)).  When examined as a whole, the statutory framework
clearly indicates that hospitals reclassified as rural under
1886(d)(8)(E) are included in the reimbursement provisions of the
CRNA pass-through law.

There is, therefore, no ambiguity: the statute clearly
states that, for purposes of CRNA pass-through payments, rural is
"as defined in 1886(d)."  Any potential ambiguity, however, was
further clarified by Congress in the legislative history of the
law when it stated that "hospitals qualifying under this section
shall be eligible to qualify for *all* categories and designations
available to rural hospitals..."  *See* H.R. Rep. No. 106-479, at
Title IV § 401 (1999)(Conf. Rep.); AR at 121 (emphasis added).
Thus, Congress has "directly spoken to the precise question at

issue." *Chevron*, 467 U.S. at 842.  The intent of Congress is

clear; both within the wording of the statue itself, and in the

legislative history of the statute.  As the Supreme Court stated

in *Chevron*,

> [t]he judiciary is the final authority on issues of
> statutory construction and must reject administrative
> constructions which are contrary to clear congressional
> intent.  If a court, employing traditional rules of
> statutory construction, ascertains that Congress had an
> intention on the precise question at issue, that
> intention is the law and must be given effect.

*Chevron*, 467 U.S. at 843 n.9 (internal citations omitted).

Congress's statements, along with the language of the

statutes at issue, indicate its intent that hospitals such as

plaintiff be considered rural under 1886(d) and this Court "must

give effect to the unambiguously expressed intent of Congress."

*Id.* at 843.  The Court, therefore, agrees with the Report and

Recommendation and concludes that plaintiff hospital is "rural"

for purposes of the CRNA pass-through provision and is entitled

to reasonable cost reimbursement.

Accordingly, for the reasons stated herein, the Court adopts the Report and Recommendation, **GRANTS** plaintiff's motion for summary judgment, and **DENIES** defendant's motion for summary judgment.  An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **September 30, 2009**